UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE; CHARLES HOOKS; PEGGY FECHTER; JON MAIER; SECOND AMENDMENT FOUNDATION, INC.; and ILLINOIS CARRY, | ) ) ) ) ) | |
| | ) | Case No. 3:11-cv-3134 |
| Plaintiffs, | ) ) | |
| -against- | ) ) | |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; and HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF A**
**PRELIMINARY AND/OR PERMANENT INJUNCTION**

David D. Jensen
*david@djensenpllc.com*
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615

David G. Sigale
*dsigale@sigalelaw.com*
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel:  630.452.4547

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     THERE ARE NO ISSUES OF FACT ........................................................3

III.    THE SCOPE OF THE RIGHT "TO KEEP AND BEAR ARMS" DETERMINES THIS
        PRELIMINARY INJUNCTION MOTION.................................................4

IV.     SUCCESS ON THE MERITS:  THE RIGHT TO BEAR ARMS IS THE RIGHT TO
        CARRY GUNS ................................................................................................5

V.      THERE IS NO ADEQUATE REMEDY AT LAW, AND IRREPARABLE INJURY
        RESULTS IN THE ABSENCE OF AN INJUNCTION.................................9

VI.     THE BALANCE OF EQUITIES MANDATES RELIEF ............................10

VII.    THE COURT CAN, AND SHOULD, RULE ON THE MERITS....................14

VIII.   CONCLUSION .................................................................................................15

### TABLE OF AUTHORITIES

**CASES**

Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6 (7th Cir. 1992)................................................. 14

Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569 (1987)...................................... 12

Chathas v. Local 134 IBEW, 233 F.3d 508 (7th Cir. 2000) ........................................................ 14

Christian Legal Soc'y v. Walker, 453 F.3d 853 (7th Cir. 2006)..................................................... 9

Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679
   (7th Cir. 1998)........................................................................................................................... 3

Curtis 1000, Inc. v. Suess, 24 F.3d 941 (7th Cir. 1994) ........................................................ 11, 15

Diginet, Inc. v. W. Union ATS, Inc., 958 F.2d 1388 (7th Cir. 1992).......................................... 11

District of Columbia v. Heller, 554 U.S. 570 (2008).......................................................... *passim*

Doe v. Mundy, 514 F.2d 1179 (7th Cir. 1975) .......................................................................... 10

Elrod v. Burns, 427 U.S. 347 (1976) ......................................................................................... 9

Ezell v. Chicago, no. 10-3525, slip op. (7th Cir. Jul. 6, 2011) ........................................ *passim*

Gateway E. Ry. Co. v. Term. R.R. Ass'n, 35 F.3d 1134 (7th Cir. 1994) ....................................... 9

Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.,
   549 F.3d 1079 (7th Cir. 2008) .......................................................................................... 4, 5, 11

Grossbaum v. Indianapolis-Mariom County Bldg. Auth., 63 F.3d 581 (7th Cir. 1995)................. 5

Hamlyn v. Rock Island Metro. Mass Transit Dist., 960 F. Supp. 160 (C.D. Ill. 1997) ............... 10

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977)............................................... 3

In re McIntyre, 552 A.2d 500 (Del. Super. 1988).......................................................................... 8

Joelner v. Wash. Park, 378 F.3d 613 (7th Cir. 2004) ......................................................... 5, 9, 12

Kendall-Jackson Winery, Ltd. v. Branson, 82 F. Supp. 2d 844, 878 (N.D. Ill.),
   appeal dismissed 212 F.3d 995 (7th Cir. 2000) .......................................................................... 10

Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429 (7th Cir. 1986)............................................... 4

Libertarian Party v. Packard, 741 F.2d 981 (7th Cir. 1984) .............................................. 5, 11

McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020 (2010) ...................................................... 1

Milwaukee County Pavers Ass'n v. Fiedler, 707 F. Supp 1016 (W.D. Wis. 1989) ..................... 10

Nat'l Socialist Party of America v. Skokie, 432 U.S. 43 (1977) ................................................. 13

Nunn v. State, 1 Ga. 243 (1846) ................................................................................................. 8

Nuxoll v. India Prarie Sch. Dist. No. 204, 523 F.3d 668 (7th Cir. 2008) ...................................... 9

Palmer v. Chicago, 755 F.2d 560 (7th Cir. 1985)........................................................................ 10

Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007), aff'd sub nom.
  District of Columbia v. Heller, 554 U.S. 570 (2008)....................................................6

Peruta v. County of San Diego, 678 F. Supp. 2d 1046 (S.D. Cal. 2010)........................................8

Peruta v. County of San Diego, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878
  (S.D. Cal. Dec. 10, 2010)....................................................................................8

Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380 (7th Cir. 1984).................................9, 11

Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075 (7th Cir. 1986)..............................................6

Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996) .......................................................6

Skokie v. Nat'l Socialist Party, 373 N.E.2d 21, 69 Ill. 2d 605 (Ill. 1978)..................................13

State v. Chandler, 5 La. Ann. 489 (1850) ....................................................................8

Ty, Inc. v. Jones Group Inc., 237 F.3d 891 (7th Cir. 2001)................................................4, 11

United Church Med. Ctr. v. Med. Ctr. Comm'n, 689 F.2d 693 (7th Cir. 1982)...................................10

United States v. Bloom, 149 F.3d 649 (7th Cir. 1998) .....................................................6, 7

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010).......................................................7

Walters v. Thompson, 615 F. Supp. 330 (N.D. Ill. 1985), aff'd sub nom.
  Walters v. Edgar, 163 F.3d 430 (7th Cir. 1998) ............................................................10

## STATUTES

42 U.S.C. § 1983 ...........................................................................................4

15 ILCS 205/4..............................................................................................4

20 ILCS 2610/2.............................................................................................4

20 ILCS 2610/16............................................................................................4

430 ILCS 65/2..............................................................................................2

720 ILCS 5/24-1 .........................................................................................2, 3

720 ILCS 5/24-1.6 .......................................................................................2, 4

720 ILCS 5/24-2 ...........................................................................................4

Ala. Code § 13A-11-75......................................................................................1

Ark. Code § 5-73-309 ......................................................................................1

Cal. Penal Code § 12050 ...................................................................................1

Colo. Rev. Stat. § 18-12-203 ..............................................................................1

Conn. Gen. Stat. § 29-28...................................................................................1

Conn. Gen. Stat. § 29-35...................................................................................1

Del. Code tit. 11 § 1441 ..................................................................................1

Fla. Stat. § 790.06 .......................................................................................1

Ga. Code § 16-11-129 ....................................................................................................1

Haw. Rev. Stat. § 134-1-9 .............................................................................................1

Idaho Code § 18-3302 ..................................................................................................1

Ind. Code § 35-47-2-3 ..................................................................................................1

Iowa Code § 724.7 .......................................................................................................1

Kan. Stat. § 75-7c03 .....................................................................................................1

Ky. Rev. Stat. § 237.110 ...............................................................................................1

La. Rev. Stat. § 40:1379 ...............................................................................................1

Mass. Gen. Laws ch. 140, § 131 ...................................................................................1

Md. Code, Pub. Safety § 5-306 .....................................................................................1

Me. Rev. Stat. tit. 25, § 2003 ........................................................................................1

Mich. Comp. Laws § 28.422 .........................................................................................1

Minn. Stat. § 624.714 ...................................................................................................1

Miss. Code § 45-9-101 ..................................................................................................1

Mo. Stat. § 571.101 ......................................................................................................1

Mont. Code § 45-8-321 .................................................................................................1

N.C. Gen. Stat. § 14-415.11 ..........................................................................................1

N.D. Cent. Code § 62.1-04-03 .......................................................................................1

N.H. Rev. Stat. § 159.6 .................................................................................................1

N.J. Stat. § 2C:58-4 ......................................................................................................1

N.M. Stat. § 29-19-4 .....................................................................................................1

N.Y. Penal Law § 400.00 ..............................................................................................1

Neb. Rev. Stat. § 28-1202 .............................................................................................1

Nev. Rev. Stat. § 202.3657 ...........................................................................................1

Ohio Rev. Code § 2923.125 ..........................................................................................1

Okla. Stat. tit. 21, § 1290.12 .........................................................................................1

Or. Rev. Stat. § 166.291 ...............................................................................................1

18 Pa. Cons. Stat. § 6109 ..............................................................................................2

R.I. Gen. Laws § 11-47-11 ............................................................................................2

S.C. Code § 23-31-215 ..................................................................................................2

S.D. Codified Laws § 23-7-7 .........................................................................................2

Tenn. Code § 39-17-1351 ..............................................................................................2

Tex. Gov't Code § 411.177 ...........................................................................................2

Utah Code § 53-5-704 ....................................................................................... 2

Va. Code § 18.2-308 ......................................................................................... 2

W. Va. Code § 61-7-4 ........................................................................................ 2

Wash. Rev. Code § 9.41.070 .............................................................................. 2

Wis. Stat. § 941.23 ............................................................................................ 2

**OTHER AUTHORITIES**

2 James Kent, Commentaries on American Law (O. Holmes ed. 1873) ........................ 8

David B. Kopel, The Licensing of Concealed Handguns for Lawful Protection:  Support from Five State Supreme Courts, 68 Alb. L. Rev. 305 (2005) ................................... 8

The American Students' Blackstone (G. Chase ed. 1884) ........................................... 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend II ........................................................................................... 1, 5

## I.   **INTRODUCTION**

The Second Amendment protects "the right of the people to keep *and bear* Arms," U.S. Const. amend II (emphasis added).   Three years ago, the Supreme Court ruled that the words of the Second Amendment "guarantee the right to possess *and carry* weapons in case of confrontation," District of Columbia v. Heller, 554 U.S. 570, 592 (2008) (emphasis added), and a year ago the Court incorporated the right "fully" against the States, McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 3026 (2010).   Nevertheless, Illinois continues to stand alone as the only U.S. State that *completely prohibits* its citizens from carrying firearms to protect themselves.   To be sure, other States *regulate* the carry of firearms – for example, with training and qualification requirements, requirements that guns be carried in particular manners, and restrictions on carrying firearms in sensitive areas such as schools – but Illinois is the only State that flatly prohibits the activity.[1]

---

[1] Forty-four States issue licenses to carry handguns.   See Ala. Code § 13A-11-75; Ark. Code § 5-73-309(a); Cal. Penal Code § 12050; Colo. Rev. Stat. § 18-12-203(1); Conn. Gen. Stat. §§ 29-28(b), 29-35(a); Del. Code tit. 11 § 1441; Fla. Stat. § 790.06(2); Ga. Code § 16-11-129; Haw. Rev. Stat. § 134-1-9; Idaho Code § 18-3302(1); Ind. Code § 35-47-2-3(e), Iowa Code § 724.7; Kan. Stat. § 75-7c03; Ky. Rev. Stat. § 237.110(2); La. Rev. Stat. § 40:1379(A)(1); Md. Code, Pub. Safety § 5-306; Mass. Gen. Laws ch. 140, § 131(d); Me. Rev. Stat. tit. 25, § 2003; Mich. Comp. Laws § 28.422(3); Minn. Stat. § 624.714, subdiv. (2)(b); Miss. Code § 45-9-101(2); Mo. Stat. § 571.101; Mont. Code § 45-8-321(1); Neb. Rev. Stat. § 28-1202; Nev. Rev. Stat. § 202.3657(2); N.H. Rev. Stat. § 159.6; N.J. Stat. § 2C:58-4; N.M. Stat. § 29-19-4; N.Y. Penal Law § 400.00(1), (3)(a); N.C. Gen. Stat. § 14-415.11(b); N.D. Cent. Code § 62.1-04-03; Ohio Rev. Code § 2923.125(D)(1); Okla. Stat. tit. 21, § 1290.12(A); Or. Rev. Stat. § 166.291; 18 Pa.

Since Plaintiffs initiated this action, the Court of Appeals for the Seventh Circuit has recognized that "infringements of [the Second Amendment] right cannot be compensated by damages." Ezell v. Chicago, no. 10-3525, slip op. p. 24 (7th Cir. Jul. 6, 2011). Because the present case presents no significant factual issues, the result of this ruling is to make it clear that Plaintiffs are entitled to a preliminary injunction against continued enforcement of any State law that significantly burdens the right of armed self-defense. Because the Second Amendment protects a general right to bear, or carry, firearms, the continued operation of the State laws at issue is an irreparable injury for which there is no adequate remedy at law.

The State laws at issue are the statutes prohibiting Unlawful Use of Weapons, 720 ILCS 5/24-1 ("UUW"), and Aggravated Unlawful Use of Weapons, 720 ILCS 5/24-1.6, ("AUUW"). The UUW statute prohibits people from carrying guns in public (a Class A misdemeanor), and the AUUW statute makes the act a Class 4 felony if the gun is loaded. Plaintiffs challenge these prohibitions only as they are applied to individuals who hold valid Firearms Owner Identification Cards, which is the basic requirement for firearms possession in Illinois. See 430 ILCS 65/2.

Because both this Motion and Plaintiffs' underlying lawsuit hinge on a purely legal question, the Court has the opportunity to streamline proceedings by consolidating the hearing of this Motion with trial on the merits pursuant to Rule 65(a)(2). The Court should accept the opportunity, as a prompt resolution of the core legal claim will serve the interests of all involved.

---

Cons. Stat. § 6109(e); R.I. Gen. Laws § 11-47-11(a); S.C. Code § 23-31-215(A); S.D. Codified Laws § 23-7-7; Tenn. Code § 39-17-1351(b); Tex. Gov't Code § 411.177(a); Utah Code § 53-5-704(1)(a); Va. Code § 18.2-308(D); Wash. Rev. Code § 9.41.070(1); W. Va. Code § 61-7-4(f). Wisconsin prohibits concealed carry, but allows the carry of guns in open view. See Wis. Stat. § 941.23. Alaska, Arizona, Vermont, and Wyoming allow people to carry guns without license.

## II.   THERE ARE NO ISSUES OF FACT

There is no room for dispute regarding the basic and relevant facts – Plaintiffs seek to carry guns; State laws prohibits the activity; and Defendants enforce the State laws.

The Declarations submitted herewith as Exhibits 1-6 establish that the four individual Plaintiffs – Michael Moore, Charles Hooks, Peggy Fechter, and Jon Maier – would carry loaded and operable ("functional") handguns for self-defense, but that they fear arrest and prosecution for violating the UUW and AUUW statutes.  Each of these individual Plaintiffs is qualified to possess firearms in Illinois, and it is only the UUW and AUUW statutes that prevent them from carrying.  These Plaintiffs plainly have standing.  See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 687 (7th Cir. 1998).  The Declarations also establish that the two organizational Plaintiffs – the Second Amendment Foundation and Illinois Carry – are dedicated to protecting and supporting Second Amendment rights, and particularly the right to bear personal firearms for self-defense.  Both organizations have constituent members who would carry firearms in Illinois but for the UUW and AUUW prohibitions.  These organizations also have standing.  See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); see also Ezell, slip op. at 17 (the Second Amendment Foundation and Illinois State Rifle Association "easily meet the requirements for associational standing").

There is no dispute that State law flatly prohibits private citizens from carrying firearms in public.  A person who "*Carries or possesses* [a firearm] in any vehicle or concealed on or about his person," or "on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town," commits the crime of Unlawful Use of Weapons ("UUW"), in violation of 720 ILCS 5/24-1(a)(4), (10).  A first offense is a Class A misdemeanor.  Id. 5/24-1(b).  A person commits the crime of Aggravated Unlawful

Use of Weapons ("AUUW") if the gun is loaded or if ammunition is "immediately accessible," see id. 5/24-1.6(a), which is a Class 4 felony, id. 5/24-1.6(d)(1).

Illinois allows some people – like police officers and security guards – to carry firearms. To achieve this result, a separate statute exempts these classes of people from the operation of the UUW and AUUW prohibitions.   See id. 5/24-2(a).  There is no exemption available for individuals who seek to protect themselves.  See id.  For example, Plaintiff Michael Moore could previously carry a gun as a Cook County Deputy Sheriff, but as a civilian employee of the Champaign Jail he no longer qualifies for any exemption.

There is also no dispute that the Defendants threaten to enforce the UUW and AUUW statutes against Plaintiffs and are accordingly subject to liability under 42 U.S.C. § 1983. Defendant Hiram Grau manages and controls the State Police, the duties of which include enforcing the criminal laws of Illinois.  See 20 ILCS 2610/2, 16.  Defendant Lisa Madigan is the Attorney General of Illinois, whose statutory duties include assisting State's Attorneys in the investigation and prosecution of violations of State law and advising other State actors regarding Illinois' criminal laws.  See 15 ILCS 205/4.  The official duties of both Defendants create an imminent and credible threat of prosecution.

## III. THE SCOPE OF THE RIGHT "TO KEEP AND BEAR ARMS" DETERMINES THIS PRELIMINARY INJUNCTION MOTION

Under the Seventh Circuit's two-part preliminary injunction test, Plaintiffs must first establish:  (1) some probability of success on the merits; (2) lack of an adequate legal remedy; and (3) irreparable injury in the absence of an injunction.  See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008); Ty, Inc. v. Jones Group Inc., 237 F.3d 891, 895 (7th Cir. 2001); Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1433 (7th Cir. 1986).  Once this "threshold" is met, the court conducts a

"balancing phase" in which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." <u>Girl Scouts</u>, 549 F.3d at 1086.

In this case, the application of these factors turns entirely on Plaintiffs' *legal* claim that the Second Amendment right "to keep and bear Arms" protects a general right to carry guns. The Seventh Circuit has previously observed that when constitutional rights are at stake, "the merits of a dispute often are intertwined with the other three factors to be considered in the decision to issue or deny a preliminary injunction." <u>Libertarian Party v. Packard</u>, 741 F.2d 981, 985 (7th Cir. 1984). Indeed, "the likelihood of success on the merits will often be the determinative factor." <u>Joelner v. Wash. Park</u>, 378 F.3d 613, 620 (7th Cir. 2004). This is certainly the case here: If the Second Amendment protects the right to carry guns, then Plaintiffs are likely to succeed on the merits, money damages are inadequate, the ongoing deprivation is irreparable, and interest-balancing must cede to the explicit constitutional protection. <u>See generally id.</u> Thus, analysis should begin by assessing the merits of Plaintiffs' claim. <u>See, e.g.</u>, <u>Grossbaum v. Indianapolis-Mariom County Bldg. Auth.</u>, 63 F.3d 581, 586 (7th Cir. 1995).

## IV.   SUCCESS ON THE MERITS: THE RIGHT TO BEAR ARMS IS THE RIGHT TO CARRY GUNS

The Second Amendment protects "the right of the people to keep *and bear* Arms." U.S. Const. amend. II (emphasis added). In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the Supreme Court interpreted this protection for the first time in modern jurisprudence and concluded that its terms "guarantee the right to possess *and carry* weapons in case of confrontation." <u>Id.</u> at 592 (emphasis added).

Although the plaintiff in <u>Heller</u> confined his claim to the right to keep and use a handgun in his home, the Court could not decide the controversy without construing the meaning of the

phrase "keep and bear Arms."  This issue was central to the <u>Heller</u> litigation, as the District Court had concluded that "bear" was a military term involving no right to arms that was not connected to military service, and the Court of Appeals had reversed this (specific) conclusion in a 2-1 decision.  See <u>Parker v. District of Columbia</u>, 478 F.3d 370, 374, 384-86 (D.C. Cir. 2007), <u>aff'd sub nom.</u> <u>Heller</u>, 554 U.S. 570.  The Court dedicated 8 pages of its decision to the meaning of this phrase, see <u>Heller</u>, 554 U.S. at 584-92, and ultimately concluded that the right to "bear Arms" is the right to carry weapons in case of confrontation:

> At the time of the founding, as now, to "bear" meant to "carry." When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose – confrontation. . . . Although the phrase implies that the carrying of the weapon is for the purpose of "offensive or defensive action," it in no way connotes participation in a structured military organization.

<u>Id.</u> at 584.

It is well established that the holdings of a Supreme Court decision reach "not only the result but also those portions of the opinion necessary to that result."  <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 67 (1996).  Thus, a statement that "explains the court's rationale . . . is part of the holding."  <u>United States v. Bloom</u>, 149 F.3d 649, 653 (7th Cir. 1998).  The operative consideration is whether the statement "could have been deleted without seriously impairing the analytical foundations of the holding."  <u>Sarnoff v. Am. Home Prods. Corp.</u>, 798 F.2d 1075, 1084 (7th Cir. 1986).  The Court's conclusion that the right to "bear Arms" is the right to "carry weapons in case of confrontation" was essential to its resolution of <u>Heller</u> – and accordingly, it is part of <u>Heller</u>'s holding.

Any doubt that the Supreme Court recognized a general right to *possess* and *carry* guns dissolves when one considers the Court's dictum regarding carry.  The Seventh Circuit has counseled careful review of the Supreme Court's "considered dicta," which the Court "uses . . .

to influence other[ cases] for which there is no room on the docket."  <u>Bloom</u>, 149 F.3d at 653.

Courts should strive for the outcome that "the Supreme Court would be likely to reach were the

case heard there."  <u>Id.</u>

The only *carry* restriction that the <u>Heller</u> decision identified as "presumptively lawful"

was a restriction on carry "in sensitive places":

> [N]othing in our opinion should be taken to cast doubt on
> longstanding prohibitions on the possession of firearms by felons
> and the mentally ill, or laws forbidding the carrying of firearms *in*
> *sensitive places such as schools and government buildings*, or laws
> imposing conditions and qualifications on the commercial sale of
> arms.

<u>Heller</u>, 554 U.S. at 626-27 (emphasis added); <u>see also</u> <u>id.</u> at 627 n.26 ("presumptively lawful").

This passage implicitly recognizes a *general* right to carry guns – just as it implicitly

recognizes that guns cannot be banned from all people, as opposed to just those who fall in

specified prohibited categories.  The Court would have had no reason to include its cautionary

statement on "sensitive places" if it had thought that it was *not* recognizing a general right to

carry guns.  And, the Seventh Circuit has expressly ruled that the <u>Heller</u> Court's discussion of

"presumptively lawful" restrictions "is the sort of message that, whether or not technically

dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through

its opinions as well as through its technical holdings."  <u>United States v. Skoien</u>, 614 F.3d 638,

641 (7th Cir. 2010) (en banc).

<u>Heller</u>'s discussion of the historical validity of *regulations* on the carry of firearms

further shows that the Court understood that the right "to keep and bear Arms" includes a general

right to carry guns in public.  The Court explained that:

> From Blackstone through the 19th-century cases, commentators
> and courts routinely explained that the right was not a right to keep

and carry any weapon whatsoever in any manner whatsoever and
for whatever purpose.

Heller, 554 U.S. at 626.  This analysis presupposes the existence of a general right to keep and
carry at least some weapons, in at least some manners, and for at least some purposes.

And finally, the Court's discussion of the historical validity of bans on the *concealed*
carry of firearms also shows that the Court understood it was recognizing the existence of a
general right to carry guns.  The Court observed that "the majority of the 19th-century courts to
consider the question held that prohibitions on carrying *concealed* weapons were lawful under
the Second Amendment or state analogues." Id. (emphasis added).  "Concealed" gun laws either
prohibit or (more commonly) license the act of carrying a firearm that is *concealed* from view,
while leaving people free to carry firearms that are exposed to view.  See generally David B.
Kopel, The Licensing of Concealed Handguns for Lawful Protection:  Support from Five State
Supreme Courts, 68 Alb. L. Rev. 305, 305 (2005).

The Nineteenth Century authorities that the Court relied upon had all reasoned that States
could ban the *concealed* carry of guns so long as people remained free to carry guns openly.[2]
See Peruta v. County of San Diego, 678 F. Supp. 2d 1046, 1052-53 (S.D. Cal. 2010); cf. In re
McIntyre, 552 A.2d 500, 501 n.1 (Del. Super. 1988) ("'the right to keep and bear arms' does not
of necessity require that such arms may be kept concealed").  Again, this line of reasoning
necessarily presupposes the existence of a general right to carry guns – in some manner.  Peruta
v. County of San Diego, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *18 (S.D. Cal. Dec. 10,
2010) ("not *all* concealed weapons bans are presumptively lawful").

_____

[2] See State v. Chandler, 5 La. Ann. 489, 489-490 (1850); Nunn v. State, 1 Ga. 243, 251 (1846);
The American Students' Blackstone, 84 n.11 (G. Chase ed. 1884); 2 James Kent, Commentaries
on American Law *340 n. 2 (O. Holmes ed. 1873).

## V.    THERE IS NO ADEQUATE REMEDY AT LAW, AND IRREPARABLE INJURY RESULTS IN THE ABSENCE OF AN INJUNCTION

The other two "threshold" factors – lack of an adequate remedy at law, and irreparable injury in the absence of an injunction – operate as corollaries here because the interest at stake is the right to exercise a fundamental constitutional right.  Legal remedies are inadequate because money damages do not compensate for the inability to engage in conduct that the Constitution protects.  See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984); see also Gateway E. Ry. Co. v. Term. R.R. Ass'n, 35 F.3d 1134, 1140 (7th Cir. 1994).  Just the same, irreparable injury will exist in the absence of an injunction because Plaintiffs "will suffer irreparable harm *in the interim* – that is, harm that cannot be prevented or fully rectified by the final judgment after trial."  Roland Mach., 749 F.2d at 386 (emphasis added).

Seventh Circuit courts have repeatedly recognized that there is no adequate remedy at law for the deprivation of conduct that the Constitution affirmatively protects, and that these types of constitutional deprivations are accordingly irreparable.  The Seventh Circuit considers the deprivation of First Amendment rights to be irreparable *per se*, and it has often quoted Justice Brennan's statement in Elrod v. Burns, 427 U.S. 347 (1976), that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  E.g., Nuxoll v. India Prarie Sch. Dist. No. 204, 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting Elrod, 427 U.S. at 373 (plurality op.)); accord Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006); Joelner v. Wash. Park, 378 F.3d 613, 620 (7th Cir. 2004).  In Ezell v. Chicago, no. 10-3525, slip op. (7th Cir. Jul. 6, 2011), the Seventh Circuit recognized that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment.  Id. at 24.  As such, the Seventh Circuit found that "[i]nfringements of this right *cannot be compensated by money damages*."  Id. (emphasis added).

The Seventh Circuit's ruling in Ezell is hardly surprising, as the law has long deemed injuries to constitutional protections to be irreparable, so long as the interest at stake is not just the right to receive monetary compensation.  For example, Seventh Circuit courts have found irreparable injury where laws or policies substantially interfered with the ability to obtain an abortion, see Doe v. Mundy, 514 F.2d 1179, 1183 (7th Cir. 1975), required a party to submit to a biased tribunal, see United Church Medical Center v. Medical Center Commission, 689 F.2d 693, 701 (7th Cir. 1982), threatened the destruction of exculpatory evidence, see Palmer v. Chicago, 755 F.2d 560, 577 (7th Cir. 1985), endangered the right to access the courts, see Walters v. Thompson, 615 F. Supp. 330, 341 (N.D. Ill. 1985), aff'd sub nom. Walters v. Edgar, 163 F.3d 430 (7th Cir. 1998), or interfered with the protections of the dormant Commerce Clause and the Contracts Clause, see Kendall-Jackson Winery, Ltd. v. Branson, 82 F. Supp. 2d 844, 878 (N.D. Ill.), appeal dismissed 212 F.3d 995 (7th Cir. 2000).  Judge McDade of this Court has helpfully explained that constitutional deprivations generally present claims of irreparable injury for which there is no adequate remedy at law – so long as the injury at issue "cannot be compensated by monetary damages alone."  See Hamlyn v. Rock Island Metro. Mass Transit Dist., 960 F. Supp. 160, 162-63 (C.D. Ill. 1997); see also Milwaukee County Pavers Ass'n v. Fiedler, 707 F. Supp 1016, 1032 (W.D. Wis. 1989) ("if more than merely money is at stake").

The Seventh Circuit's Ezell decision resolves any remaining doubt.  Because money damages are inadequate, ipso facto Plaintiffs will suffer irreparable harm in the absence of an injunction.  See Ezell, slip op. at 22 ("If they're right, then the range ban was unconstitutional when enacted and violates their Second Amendment rights every day it remains on the books.").

## VI.   THE BALANCE OF EQUITIES MANDATES RELIEF

Once the "threshold" factors have been met, the decision to grant or deny an injunction turns on the balance of equities.  See Ty, Inc. v. Jones Group Inc., 237 F.3d 891, 895 (7th Cir.

2001).  The court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief" in light of the probable merit of the claim, and also considers the injunction's impact on non-parties (the "public interest").  See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008).  The merits are intrinsic to this analysis because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."  Roland Mach., 749 F.2d at 387; accord Girl Scouts, 549 F.3d at 1086; see also Libertarian Party v. Packard, 741 F.2d 981, 985 (7th Cir. 1984).

Three considerations govern the balance of equities in this case.  The first is that the balance of equities considers the risk of error only to the extent that the *facts* are unclear.  See Curtis 1000, Inc. v. Suess, 24 F.3d 941, 945 (7th Cir. 1994) ("Only if the final outcome will depend on facts presented at trial, so that there is genuine uncertainty at the preliminary-injunction stage concerning what that outcome will be, should the judge go through the balancing process that we have described."); see also Diginet, Inc. v. W. Union ATS, Inc., 958 F.2d 1388, 1393 (7th Cir. 1992).  There is no factual issue here – only the *legal* question of whether a State may completely *ban* the carry of functional firearms consistent with the Second Amendment's protection of "the right of the people to keep and bear Arms."

The second consideration is that the balance of equities considers the harm that will result if the activity is allowed in a "properly regulated" manner.  In Ezell, the City of Chicago objected that the balance of equities weighed against injunctive relief (in the form of an order requiring the city to allow gun ranges) because there were no regulations in place that would govern the operation of ranges in the city.  See Ezell, slip op. at 48.  The court rejected this

argument, explaining that "*Properly regulated* firing ranges . . . should not pose significant threats to public health and safety."  Id. at 48 (emphasis added).  The (claimed) need for additional laws and regulations is no basis for denying an injunction, for legislative bodies retain the ability to adopt such regulations.  See id. at 50.  The very fact that *every other State* allows people to carry guns under some set of conditions shows that proper regulations can mitigate public safety concerns.

The final consideration is that the "injury" here is the preclusion of an act that the Constitution affirmatively and explicitly protects.  This weighs significantly on the balance of equities because "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute," and the public interest always weighs in favor of protecting constitutional rights.  See Joelner v. Wash. Park, 378 F.3d 613, 620 (7th Cir. 2004).  Stated differently (and perhaps more accurately), any "harm" that necessarily results from allowing protected conduct to take place is the necessary price of protecting civil rights – rather than a consideration weighing against equitable relief.

The Court's resolution of Heller shows that a *ban* on "core" activities is simply impermissible.  The Court did not resort to any particular rule of scrutiny, explaining instead that the handgun ban was invalid "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights."   Heller, 554 U.S. at 635.   When the Court rules a law unconstitutional without regard to the standard of scrutiny, it necessarily rules that people have a right to actually engage in the activity at issue.  The restriction is invalid because it prohibits something that may not be prohibited – the exercise of constitutional rights deemed fundamental.  For example, in Board of Airport Commissioners v. Jews for Jesus, Inc., 482 U.S. 569 (1987), the Court struck down an LAX airport policy that prohibited (literally) all "First Amendment

-12-

activities" on LAX property.  See id. at 575.  The unanimous Court declined to address the standard of review, explaining simply that "no conceivable governmental interest would justify such an absolute prohibition of speech."  Id.  It is impermissible to ban things that the Constitution affirmatively protects, and hence, laws that simply *preclude* protected activities do not require resort to any standard of review.

A key aspect of the Heller ruling was the Court's *rejection* of the District of Columbia's claim that it could permissibly ban "core" Second Amendment activities so long as it asserted sufficiently important societal interests.  In dissent, Justice Breyer relied on various statistics and other social science observations to conclude that the District's ban was "a proportionate, not a disproportionate, response to [ ] compelling concerns."  Heller, 554 U.S. at 722 (Breyer, J., dissenting).  The Court's majority explicitly rejected the approach:

> We know of no other enumerated constitutional right whose *core protection* has been subjected to a freestanding "interest-balancing" approach.  *The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon.*  A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

Heller, 554 U.S. at 634-35 (emphasis added).

The Court then referenced its decision in National Socialist Party of America v. Skokie, 432 U.S. 43 (1977), see Heller, 554 U.S. at 635, which had concerned a (substantially Jewish) town that had prevented a neo-Nazi group from parading in uniform, displaying swastikas, and distributing literature.  See Skokie v. Nat'l Socialist Party, 373 N.E.2d 21, 22, 69 Ill. 2d 605, 609-11 (Ill. 1978).  The Supreme Court resolved the Skokie dispute with a short decision ordering Illinois courts to immediately hear the neo-Nazis' claim.  See Nat'l Socialist Party, 432 U.S. at 44.  The essential attribute of the Court's summary decision in Skokie was its refusal to

temper the protections of the First Amendment with the societal interests articulated by the town

of Skokie – for no one denied that it was costly, and offensive, for the town to accommodate the

protesting neo-Nazis.  The <u>Heller</u> Court explained:

> We would not apply an "interest-balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie.  The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views.  *The Second Amendment is no different.*

<u>Heller</u>, 554 U.S. at 635 (emphasis added).

The rationale is that the express protections of the First and Second Amendments are a

*preexisting* balance of equities that favors the protection of these activities, notwithstanding any

social costs that necessarily result.  Indeed, this theme re-emerged in the concluding paragraph of

<u>Heller</u>, where the Court observed that the criminal misuse of firearms is a serious problem, and

that there could be some merit to arguments offered in favor of a handgun ban.  <u>See id.</u> at 636.

The Court explained that "the enshrinement of constitutional rights necessarily *takes certain*

*policy choices off the table*."  <u>Id.</u> (emphasis added).  The Second Amendment protects not just

the right to *keep* arms, but also the right to *bear* them – and Illinois' *complete ban* on bearing

handguns is a policy choice that the Constitution likewise disallows.

## VII.    <u>The Court Can, and Should, Rule on the Merits</u>

The distinction between preliminary and permanent injunctions turns on the existence of

issues of fact – a court considering a preliminary injunction assesses the likelihood that a party

will be able to establish its claim on the merits, while a court considering a permanent injunction

addresses the actual merits.  <u>See</u> <u>Chathas v. Local 134 IBEW</u>, 233 F.3d 508, 513 (7th Cir. 2000);

<u>see also</u> <u>Abbott Labs. v. Mead Johnson & Co.</u>, 971 F.2d 6, 12 n.2 (7th Cir. 1992).  As indicated

in <u>*supra*</u> Point VI, the preliminary injunction test focuses on *factual* uncertainty, and it applies

-14-

"[o]nly if the final outcome will depend on facts presented at trial."  Curtis 1000, Inc. v. Suess, 24 F.3d 941, 945 (7th Cir. 1994).

Where – as here – there are no factual issues, but only legal ones, the Federal Rules expressly authorize the Court to "advance the trial on the merits and consolidate it with the [preliminary injunction] hearing."  Fed. R. Civ. P. 65(a)(2).  Indeed, the Seventh Circuit has instructed that "when the eventual outcome on the merits is plain at the preliminary injunction stage, the judge *should*, after due notice to the parties, merge the stages and enter a final judgment."  Curtis 1000, 24 F.3d at 945 (emphasis added).  Plaintiffs respectfully submit that the Court should accept this opportunity to maximize judicial economy.

## VIII.  CONCLUSION

All of the issues presented in this Motion – and also in this lawsuit – rise or fall on one legal question:  Does the Second Amendment right "to keep and bear Arms" protect the right to carry functional firearms for the purpose of protecting one's self and family?  If the Second Amendment protects a general right to carry firearms – as the language of Heller plainly states, and as its dictum contemplates – then the State of Illinois' *complete ban* on the activity cannot survive review "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights," Heller, 554 U.S. at 628, the very nature of Plaintiffs' injury is irreparable, Ezell, slip op. at 24, and the balance of equities must account for the balance struck by the express language of the Second Amendment itself.  While the State certainly maintains the ability to regulate the carry of firearms within constitutional parameters, its current attempt to *ban* the activity is a policy choice that the Constitution takes off the table.

Dated: July 7, 2011

By: _____

David D. Jensen
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2011, I presented the foregoing Motion, Memorandum of Law, and exhibits to the Clerk of the Court for filing and uploading to the CM/ECF system.

On this same date, I transmitted a copy of the foregoing to a process server for personal service on Defendants Lisa Madigan and Hiram Grau.  I also transmitted a copy of the foregoing to the following persons by e-mail and U.S. Mail, who I understand are counsel for Defendants:

Terence Corrigan [tcorrigan@atg.state.il.us]
Karen L. McNaught [kmcnaught@atg.state.il.us]
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62706

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: July 7, 2011

David D. Jensen