UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL MOORE; CHARLES HOOKS; PEGGY FECHTER; JON MAIER; SECOND AMENDMENT FOUNDATION, INC.; and ILLINOIS CARRY, | ) ) ) ) |
| Plaintiffs, | ) Case No. 3:11-cv-3134 ) |
| -against- | ) ) |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; and HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, | ) ) ) ) ) |
| Defendants. | ) |

## RESPONSE TO AMICUS CURIAE BRADY CENTER TO PREVENT GUN VIOLENCE

David D. Jensen
*david@djensenpllc.com*
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615

David G. Sigale
*dsigale@sigalelaw.com*
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel:  630.452.4547

-i-

# TABLE OF CONTENTS

I.    THE SECOND AMENDMENT IS NOT CONFINED TO THE HOME ............................................ 2

II.   HISTORICAL AUTHORITIES DO NOT SUPPORT A COMPLETE BAN ON BEARING ARMS IN PUBLIC ................................................................................................................. 6

III.  CONCLUSION .................................................................................................................. 8

The Supreme Court did not "limit" the right to keep and bear arms to the home, and Amicus' argument to the contrary merely confuses the facts presented in District of Columbia v. Heller, 554 U.S. 570 (2008), with the issues that the Court actually and necessarily decided in the case. The issue of whether the right to "bear arms" protects a general right to "carry guns" was central to Heller and had been outcome-dispositive at all levels of the litigation. As such, the conclusion that the right to "bear arms" is the right to "carry guns" is part of Heller's holding. Amicus' claim that historical authorities support a *complete ban* on the carry of firearms is likewise unfounded. The authorities Amicus cites uphold only non-preclusive *regulations* on the carry of firearms, not complete bans. The Supreme Court has already found that Nineteenth Century American authorities generally recognized the right to "bear arms" as a personal right to carry weapons for protection – not merely a right to keep and carry them in the home.

As a preliminary manner, Amicus devotes much of its brief to its attempt to overturn the Court of Appeals for the Seventh Circuit's decision in Ezell v. Chicago, no. 10-3525, 2011 U.S. App. LEXIS 14108 (7th Cir. Jul. 6, 2011). See Amicus Br. pp. 13-18. Amicus' suggestion that the Court apply its proposed "reasonable regulation" and "undue burden" tests – arguments the State wisely ignores – requires little response. The Seventh Circuit has already rejected these approaches in favor of First Amendment principles of review:

> The City urges us to import the "undue burden" test from the Court's abortion cases, but we decline the invitation. Both Heller and McDonald suggest that First Amendment analogues are more appropriate, and on the strength of that suggestion, we and other circuits have already begun to adapt First Amendment doctrine to the Second Amendment context.

Ezell, 2011 U.S. App. LEXIS 14108 at *55; see also Nordyke v. King, no. 07-15763, 2011 U.S. App. LEXIS 8906, *30-37 (9th Cir. May 2, 2011) (explicitly rejecting "reasonableness" test).

I.     THE SECOND AMENDMENT IS NOT CONFINED TO THE HOME

Both Heller and McDonald concerned claims for relief that were expressly confined to the home. Plaintiffs showed in their moving papers that these Supreme Court decisions nevertheless reach far beyond the home because they rely upon the conclusion that the Second Amendment right "to keep and bear Arms" protects the general right "to possess and carry weapons" for personal self-protection, rather than to perform military duties. See Plfs. Br. pp. 5-6. Amicus responds by claiming that the Supreme Court *limited* its holdings to the home, but the response is unfounded – no matter how many times Amicus repeats it. See Amicus Br. pp. 1-10.

The Supreme Court included *no* language that "limited" the Heller ruling to the home, nor to the facts presented. This omission is telling, as the Court has spoken clearly when limiting the reach of its decisions in the past. See, e.g., First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 321 (1987) ("We limit our holding to the facts presented"). Amicus hangs its claim that the Supreme Court "*limited*" its ruling to the home on the paragraph of Heller in which the Court summarized the relief it was granting to the plaintiff-:

> In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, *the District must permit him to register his handgun and must issue him a license to carry it in the home*.

Heller, 554 U.S. at 635 (emphasis added); see Amicus Br. p. 5.

Using this language to suggest a home *limitation* is seriously misleading. The plaintiff in Heller challenged, among other provisions, former D.C. Code § 22-4504(a) (2008), which had criminalized the carry of handguns inside the home without a permit as a misdemeanor. Plaintiff Heller did *not* seek a permit to carry a handgun in public. See Parker v. District of Columbia, 478 F.3d 370, 400 (D.C. Cir. 2007), aff'd sub nom. Heller, 554 U.S. 570 (2008). The reference

to an *in-home* carry permit merely tracked Heller's prayer for relief.  Heller, 554 U.S. at 630-31. Amicus' argument that this language *limits* the sweep of the Court's ruling simply ignores that the Court had no power to order relief that went beyond the question presented.  See generally Yee v. Escondido, 503 U.S. 519, 535 (1992).  Indeed, the Seventh Circuit made this express observation in Ezell:

> The Court said [the D.C. handgun] laws were unconstitutional "[u]nder any . . . standard[] of scrutiny" because "the inherent right of self-defense has been central to the Second Amendment right" and the District's restrictions "extend[] . . . to the home, where the need for defense of self, family, and property is most acute."  *That was enough to decide the case.*

Ezell, 2011 U.S. App. LEXIS 14108 at *37 (quoting Heller, 554 U.S. at 628-29) (alternations in source; emphasis added).

Plaintiffs already explained that "holdings" include the analytic underpinnings of decisions and often reach well beyond the facts presented in a specific case.  See Plfs. Br. pp. 6-7 (citing and discussing United States v. Bloom, 149 F.3d 649 (7th Cir. 1998), and Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075 (7th Cir. 1986)).  Apparently recognizing that *stare decisis* principles are fatal to its "limited ruling" argument, Amicus omits any discussion of this point.

In any event, Heller's discussion of the primacy of the home simply does not support Amicus' claim that the Court *limited* its holding to the home.  The Court explained:

> The prohibition extends, moreover, to the home, where the need for defense of self, family, and property *is most acute*. . . .
>
> And *whatever else* [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

Heller, 554 U.S. at 628, 635 (emphasis added).  In McDonald, the Court reiterated that the "central holding in Heller [is] that the Second Amendment protects a personal right to keep and

-3-

bear arms for lawful purposes, *most notably* for self-defense within the home." McDonald v. Chicago, 130 S.Ct. 3020, 3044 (2010) (emphasis added).  These statements recognize that the Second Amendment has its zenith in the home – but they do not *confine* the right to the home.

Nor is any such "home limitation" to be found in Ezell, which (again) concerned a variety of Chicago laws that effectively banned shooting ranges within the City of Chicago.  Ezell, 2011 U.S. App. LEXIS 14108 at *3.  The plaintiffs in Ezell asserted both that the Second Amendment protected "the right to maintain proficiency in firearm use," and also, that the range ban "impermissibly burden[ed] the core Second Amendment right to possess firearms at home" because live-fire training was required to obtain a license.  Id. at *29.  The court concluded that strict scrutiny applied because the ban on firing ranges was "a severe burden on *the core Second Amendment right of armed self-defense*."  Id. at *59 (emphasis added).  The burden on possession in the home was merely "an *additional* reason to closely scrutinize the range ban." Id. at *60 (emphasis added).  The court enjoined several Chicago ordinances, including one that "prohibit[ed] the possession of handguns outside the home."  Id. at *66.

Of course, if the Second Amendment did not protect conduct occurring outside the home – as Amicus contends – then the Seventh Circuit would have ruled that the laws at issue raised no Second Amendment concerns.  Obviously, firing ranges are not located in people's homes.  The court certainly would not have enjoined a law prohibiting possession outside the home.

Recognizing that Ezell refutes its "limited to the home" argument, Amicus attempts to characterize Ezell as concerning *only* the right to possess guns in the home.  Amicus cites Judge Rovner's concurrence and argues that the range ban raised constitutional concerns only because Chicago law required residents to complete live-fire training in order to obtain handgun licenses, thus making the range ban tantamount to a ban on possession in the home.  See Amicus Br. p. 8.

-4-

Amicus ignores that Judge Rovner did not concur, but rather, *concurred in the judgment*. Ezell, 2011 U.S. App. LEXIS 14108 at *69 (Rovner, J., concurring in the judgment). Judge Rovner reasoned – in contrast to the majority – that the only issue was the range ban's burden on "the right to use a firearm *in the home* for self-defense." Id. at *71 (emphasis added). However, the majority's approach did not square with Amicus' characterization of the right:

> Heller held that the Amendment secures an individual right to keep and bear arms, the core component of which is the right to possess operable firearms—handguns included—for self-defense, *most notably* in the home. . . .
>
> The Court emphasized in both cases that the "central component" of the Second Amendment is the right to keep and bear arms for defense of *self, family, and home*.

Ezell, 2011 U.S. App. LEXIS 14108 at *2, 47 (emphasis added). While the Second Amendment rights have a special primacy in the home, the Seventh Circuit has pointedly *not* limited the right to keep and bear arms to the home.

Finally, the Court's discussion of "presumptively lawful restrictions" also shows that the Court understood it was recognizing a general right to carry guns – and one that is not confined to the home. The Court explained that it did not intend to "cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," Heller, 554 U.S. at 626-27, and obviously, schools and government buildings are not located within people's homes. Amicus responds that the Court's discussion shows that a *complete ban* on bearing arms in public is permissible, Amicus Br. pp. 5 & n.2, but this is sophistry. If the Court had *limited* the right to keep and bear arms to the home, then it would have had no reason to include this qualification, and could have instead explained that it did not intend to cast doubt on "laws forbidding the carrying of firearms in public." However, courts are not free to disregard the Supreme Court's "considered dicta," see United States v. Bloom, 149 F.3d 649, 653 (7th Cir.

1998); see also Plfs. Br. pp. 6-7, and the Seventh Circuit has explained that Heller's presumptively lawful restrictions are "illustrative," Ezell, 2011 U.S. App. LEXIS 14108 at *39. Amicus' view disregards the Court's illustrative statement as being poorly thought-out.

## II. HISTORICAL AUTHORITIES DO NOT SUPPORT A COMPLETE BAN ON BEARING ARMS IN PUBLIC

In order to determine whether the right to "bear arms" was a personal right to "carry guns," the Supreme Court considered a number of Nineteenth Century authorities that discussed the validity of bans on *concealed* carry. See Heller, 554 U.S. at 613-14, 618, 629. As Plaintiffs explained in their moving papers, the Court ultimately concluded that these and other Nineteenth Century authorities showed that there was a general right to carry guns, and that concealed gun bans had generally been upheld so long as people were allowed to carry guns openly. See id. at 618, 629; see also Plfs. Br. pp. 5-6, 8.

Amicus responds by attempting to confuse the issue. Amicus cites historical authorities that upheld *non-preclusive restrictions* on carry, and then claims that these authorities show that States can *completely ban* the carry of firearms. See Amicus Br. p. 9. Of course, the Supreme Court has *already* concluded that the historical authorities recognized the right to bear arms a general right to carry guns, and there is no need for this Court to ponder Amicus' attempted re-characterization of the cases. In any event, to the extent the Court finds the matter pertinent,[1] the historical authorities contravene Amicus' position.

The court in Aymette v. State, 21 Tenn. 154 (1840), concluded only (according to the Supreme Court) that the "right to 'bear' arms did not prohibit the banning of *concealed*

---

[1] The State – not the Plaintiffs – bears the burden of establishing that activities were categorically excluded at the time the States ratified the Fourteenth Amendment. See Ezell, 2011 U.S. App. LEXIS 14108 at *43, 54.

-6-

weapons." Heller, 554 U.S. at 613 (emphasis added).  The Court explained that Tennessee authorities otherwise established the existence of a general right to carry guns. See id. at 613-14. Likewise, State v. Buzzard, 4 Ark. 18 (1842), concerned a State law that prohibited concealed weapons. Id. at 18.  The court reasoned that there was no violation of the right to bear arms because the law "inhibits only the wearing of certain arms concealed. This is simply a regulation as to the manner of bearing such arms as are specified." Id. at 27. Ex Parte Thomas, 97 P. 260 (Okla. 1908), and State v. Jumel, 13 La. Ann. 399 (1858), also concerned bans on the concealed carry of guns, rather than complete bans on carry.

Other decisions cited by Amicus show only that non-preclusive regulations on the carry of guns can be valid. Hill v. State, 53 Ga. 472 (1872), upheld a statute that prohibited the carry of firearms in courtrooms. See id. at 474. Fife v. State, 31 Ark. 455 (1876), adopted a novel approach that upheld a ban on carrying "pocket" pistols (open or concealed), but upheld the right to carry full-size pistols deemed useful for military purposes. See id. at 461. State v. Workman, 14 S.E. 9 (W. Va. 1891), upheld a conviction for carrying a revolver, but observed that under the law "acquittal is mandatory in favor of persons who prove good character, and that they were in good faith armed only for self-defence." Id. at 11. English v. State, 35 Tex. 473 (1872), upheld a ban on carrying pistols, but did so on the rationale (rejected by Heller) that pistols are not "arms" within the meaning of the Second Amendment. See id. at 474, 476.

These cases may support the proposition that States can *regulate* the carry of firearms in various manners, but they do not support the much broader proposition advanced by Amicus – that States can *completely ban* the carry of firearms. See Amicus Br. p. 9. In Ezell the Seventh Circuit emphasized that historical decisions upholding time, place, and manner restrictions on the use of firearms did not show that *bans* on Second Amendment activities were valid. See Ezell,

-7-

2011 U.S. App. LEXIS 14108 at *51 ("'time, place, and manner' regulations do not support the City's position that target practice is categorically unprotected").

### III. CONCLUSION

Amicus' arguments show that the merits of the present controversy hang entirely on a single legal question – whether "the right of the people to keep and bear Arms" is *limited* to the home. If it is not, then the State of Illinois' complete ban on the act of carrying guns in public contravenes the express protection of the Second Amendment, without regard to the standard of scrutiny. The Supreme Court made no such limitation in its Heller and McDonald decisions, and Amicus does not identify any actual "limitation" in its brief. On the contrary, the Court's decisions plainly reflect that the right to bear arms is the general right to carry guns for protection, an activity that that takes place well beyond the home.

Dated: August 3, 2011

By: _____
David D. Jensen
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

*Attorneys for Plaintiffs*

-8-

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2011, I presented the foregoing Motion, Memorandum of Law, and exhibits to the Clerk of the Court for filing and uploading to the CM/ECF system.

On this same date, I transmitted a copy of the foregoing to the following persons by e-mail:

Terence Corrigan [tcorrigan@atg.state.il.us]
Karen L. McNaught [kmcnaught@atg.state.il.us]
Illinois Attorney General's Office - Springfield

Robert J. Harris [rharris@harriswinick.com]
Harris Winick LLP

Jonathan L. Diesenhaus [jonathan.diesenhaus@hoganlovells.com]
S. Chartey Quarcoo [chartey.quarcoo@hoganlovells.com]
Matthew C. Sullivan [matthew.sullivan@hoganlovells.com]
Hogan Lovells LLP

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: August 3, 2011

David D. Jensen