**E-FILED**
Monday, 15 August, 2011  03:04:26 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE; CHARLES HOOKS; PEGGY FECHTER; JON MAIER; SECOND AMENDMENT FOUNDATION, INC.; and ILLINOIS CARRY, | ) ) ) ) ) | |
| | ) | Case No. 3:11-cv-3134 |
| Plaintiffs, | ) ) | |
| -against- | ) ) | |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; and HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

David D. Jensen
*david@djensenpllc.com*
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615

David G. Sigale
*dsigale@sigalelaw.com*
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel:  630.452.4547

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     PERTINENT HISTORICAL AUTHORITIES RECOGNIZE THE RIGHT
        TO CARRY FIREARMS FOR PROTECTION ........................................................... 1

III.    THE SUPREME COURT DID NOT CONFINE THE RIGHT TO KEEP
        AND BEAR ARMS TO THE HOME ...................................................................... 7

IV.     THE ISSUE IS PRECLUSION, NOT REGULATION, AND INTERMEDIATE
        SCRUTINY DOES NOT APPLY ........................................................................... 8

V.      THE BALANCE OF EQUITIES AND PROPER REGULATION ................................. 13

VI.     CONCLUSION ................................................................................................. 15

### TABLE OF AUTHORITIES

**CASES**

Andrews v. State, 50 Tenn. 165 (1871) ................................................................. 5

Ashcroft v. ACLU, 542 U.S. 656 (2004) ............................................................... 11

Aymette v. State, 21 Tenn. 154 (1840) .................................................................. 2

Bell v. United States, 265 F. 1007 (D.C. 1920) .................................................... 4

State v. Buzzard, 4 Ark. 18 (1842) ....................................................................... 2

State v. Chandler, 5 La. Ann. 489 (1850) ............................................................ 5

Christian v. State, 289 S.W. 54, 105 Tex. Crim. 562 (Ct. Crim. App. 1926) ................................ 3

Citizens United v. FEC, 130 S. Ct. 876 (2010) ................................................... 15

People v. Dawson, 403 Ill. App. 3d 499, 934 N.E.2d 598 (Ill. App. Ct. 1st Dist. 2010) ............. 7-8

District of Columbia v. Heller, 554 U.S. 570 (2008) ..................................... *passim*

Doe v. Reed, 130 S. Ct. 2811 (2010) .................................................................. 15

Eads v. State, 101 P. 946, 17 Wyo. 490 (1919) .................................................... 4

Ex Parte Young, 209 U.S. 123 (1908) ................................................................ 13

Ezell v. Chicago, no. 10-3525, 2011 U.S. App. LEXIS 14108 (7th Cir. Jul. 6, 2011) .......... *passim*

GeorgiaCarry.Org, Inc. v. Georgia, 764 F. Supp. 2d 1306 (M.D. Ga. 2011) ............... 12

United States v. Hall, no. 2:08-00006, 2008 U.S. Dist. LEXIS 59641
  (S.D.W. Va. Aug. 4, 2008) ............................................................................ 8

Marbury v. Madison, 5 U.S. (1 Cranch.) 137 (1803) ......................................... 13

United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2009) ............................ 10, 13

United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011) ......................... 7, 12

Maxwell v. State, 38 Tex. 170 (1873) ................................................................... 3

McDonald v. Chicago, 130 S. Ct. 3020 (2010). ............................................. 10-11

Mechikalski v. Office of the Attorney Gen., 2 P.3d 1039 (Wyo. 2000) ..................... 4

Nunn v. State, 1 Ga. 243 (1846) ........................................................................... 5

Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007) ........................... 10

Peruta v. County of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010) ................. 12

United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000) ....................... 10

United States v. Pritchett, 470 F.2d 455 (D.C. Cir. 1972) ..................................... 4

State v. Reid, 1 Ala. 612 (1840) ............................................................................ 5

United States v. Salerno, 481 U.S. 739 (1987) ............................................ 1, 13-14

Silveira v. Lockyer, 328 F.3d 567 (9th Cir. 2003)........................................................5-6

Sims v. United States, 963 A.2d 147 (D.C. 2008)............................................................ 8

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010)............................................. 12-13

United States v. Williams, 616 F.3d 685 (7th Cir. 2010) ......................................... 12-13

Williams v. State, 10 A.3d 1167, 417 Md. 479 (2011)..................................................... 8

People v. Yarborough, 169 Cal. App. 4th 303 (Cal. Ct. App. 2008)............................... 8

Younger v. Harris, 401 U.S. 37 (1971)................................................................... 13-14

## STATUTES

Act of Jul. 13, 1892, 27 Stat. 116, ch. 159.................................................................... 4

Act of Nov. 18, 1858, Corporation Laws of the City of Washington............................. 4

D.C. Code § 7-2507.02 (2008)...................................................................................... 12

430 ILCS 65/2............................................................................................................... 15

720 ILCS 5/24-1 ....................................................................................................... 9, 14

720 ILCS 5/24-1.6 .................................................................................................... 9, 14

Tex. Act of Apr. 11, 1871, ch. 34, § 1 .......................................................................... 3

1876 Wyo. Comp. Laws ch. 52...................................................................................... 3

1890 Wyo. Territorial Sess. Laws, Ch. 73 § 96 ............................................................ 4

## OTHER AUTHORITIES

David B. Kopel, It Isn't About Duck Hunting:  The British Origins of the Right to Arms, 93
     Mich. L. Rev. 1333 (1995).................................................................................... 6

Jack Skaggs, Have Gun, Will Travel? The Hopelessly Confusing Journey of the Traveling
     Exception to the Unlawful Carrying Weapons Statute, 57 Baylor L. Rev. 507 (2005)............. 3

Sir John Knight's Case, [1686] 87 Eng. Rep. 75 (KB)................................................... 6

Statute of Northampton, 2 Edw. 3, c. 3 (1328) (Eng.).................................................... 5

William Blackstone 4 Commentaries on the Laws of England (1769) ......................... 6

Wyo. Const. art. 1, § 24 ................................................................................................ 4

## I.   <u>INTRODUCTION</u>

If the right to bear arms exists outside the home, then the State's motion fails.  If the right is homebound, then Plaintiffs are not entitled to relief.  Everything turns on this one question.

<u>Heller</u>'s analysis of the historical understanding of the right "to keep and bear arms" resolves the issue of whether the Second Amendment protects the right to carry weapons for confrontation.  Nevertheless, Plaintiffs respond to the State's historical contentions in Part II.

Since <u>Heller</u>, no court has addressed the constitutionality of a *broad prohibition* on carrying guns, as applied to the law-abiding citizens who are at the core of the Second Amendment's protections.  Part III shows that the post-<u>Heller</u> cases that the State cites do not support denying relief on the circumstances presented.

*Regardless* of how the Court resolves the "home" issue, Part IV shows that intermediate scrutiny will not apply.  If the right to bear arms exists in public, then a *ban* is impermissible without regard to the standard of scrutiny.  Even if construed as a "burden," strict scrutiny would apply because the issue is a nearly complete preclusion on a core activity.  But if the right does not apply outside the home, then the State's ban on carry in public imposes no burden at all.

If the right applies in public, then the State's remaining objections also must fail.  Point V explains that equitable factors mandate relief against ongoing deprivations of constitutional rights, and also responds to the State's mis-use of <u>United States v. Salerno</u>, 481 U.S. 739 (1987).

## II.   <span style="font-variant: small-caps">Pertinent Historical Authorities Recognize</span><br><u><span style="font-variant: small-caps">the Right to Carry Firearms for Protection</span></u>

The Second Amendment explicitly protects "the right of the people to *keep* and *bear* Arms," U.S. Const. amend. II (emphasis added), and <u>Heller</u> concludes that these terms "guarantee the right to *possess* and *carry* weapons in case of confrontation," <u>District of Columbia v. Heller</u>, 554 U.S. 570, 592 (2008) (emphasis added).  An essential part of <u>Heller</u>'s

conclusion was the Court's extensive analysis of *historical* authorities construing the scope of the right to arms. See id. at 582-92, 600-19. In Ezell v. Chicago, no. 10-3525, 2011 U.S. App. LEXIS 14108 (7th Cir. Jul. 6, 2011), a case that concerned a ban on shooting ranges, the Seventh Circuit explained that the scope of the right depends upon "the terms of the right as publicly understood" in 1868 (for State laws), and that the State bears the burden of showing that the historic understanding "categorically excluded" any particular activity. Id. at *42-43.

The State's appeal to apply an historical approach here is flawed. State Br.[1] pp. 2-4, 8-11. The Second Amendment does not explicitly protect "shooting ranges," and it was in this context that the Ezell court found it necessary to consult historical understanding in the first place. See id. at *39-43. This case concerns the State's ban on bearing firearms, a right the Second Amendment indisputably protects – making resort to secondary sources unnecessary. Heller *concludes* that Eighteenth and Nineteenth Century authorities generally recognized the right to "bear arms" as the right to carry guns for protection. See Heller, 554 U.S. at 584 ("From our review of founding-era sources, we conclude that this natural meaning [for the purpose of 'offensive or defensive action'] was also the meaning that 'bear arms' had in the 18th century.") & 605 ("virtually all interpreters of the Second Amendment in the century after its enactment interpreted the Amendment as we do").

The State attempts to show – notwithstanding Heller – that the 1868 public understanding of the right did *not* include a general right to carry arms, and cites Aymette v. State, 21 Tenn. 154 (1840), and State v. Buzzard, 4 Ark. 18 (1842). See State Br. pp. 8-9. However, neither decision supports the validity of a *complete ban* on carrying firearms for protection. The Supreme Court analyzed the Aymette decision in Heller and concluded that the case stood for the

---

[1] Memorandum of Law in Support of Motion to Dismiss (Doc. No. 25).

proposition that the "right to 'bear' arms did not prohibit the banning of *concealed* weapons" – and the Court also observed that Tennessee law otherwise recognized a general right to carry guns.  See Heller, 554 U.S. at 613-14 (emphasis added).  Buzzard likewise concerned a State law that prohibited *concealed* weapons.  Buzzard, 4 Ark. at 18.  The court reasoned that there was no violation of the right because the law "inhibits only the wearing of certain arms concealed.  This is simply a regulation as to the manner of bearing such arms as are specified." Id. at 27.

It is true that the State of Texas prohibited the carry of firearms in 1871 (State Br. p. 8), but the Supreme Court of Texas upheld this restriction on the rationale that handguns were not "arms" within the Second Amendment's protection.  See Amicus Response[2] p. 7.  Furthermore, this prohibition was subject to a codified exception for any person who "has reasonable grounds for fearing an unlawful attack on his person."  Tex. Act of Apr. 11, 1871, ch. 34, § 1.  And finally, the reach of this statute was limited and did not "prevent persons traveling in buggies or carriages upon the public highway from placing arms in their vehicles for self-defense, or even from carrying them from place to place for an innocent purpose." Maxwell v. State, 38 Tex. 170, 171 (1873); see also Christian v. State, 289 S.W. 54, 54, 105 Tex. Crim. 562, 563 (Ct. Crim. App. 1926) (person carrying gun in car from Houston to Austin).[3]

Wyoming's 1876 prohibition on carrying firearms in "any city, town or village" (1876 Wyo. Comp. Laws ch. 52, § 1; State Br. p. 8) had limited reach – as there were *very few* cities, towns, and villages in Wyoming in 1876.  The prohibition was also short-lived, for Wyoming adopted a State constitution protecting "The right of citizens to bear arms in defense of

---

[2] Plfs. Response to Amicus Brief (Doc. No. 29)

[3] See generally Jack Skaggs, Have Gun, Will Travel? The Hopelessly Confusing Journey of the Traveling Exception to the Unlawful Carrying Weapons Statute, 57 Baylor L. Rev. 507 (2005).

themselves and of the state" in 1889, and revised its carry law to prohibit *concealed* carry in 1890.  <u>See</u> Wyo. Const. art. 1, § 24; 1890 Wyo. Territorial Sess. Laws, Ch. 73 § 96 (11th Legislative Assembly); <u>Eads v. State</u>, 101 P. 946, 952, 17 Wyo. 490, 505 (1919) ("it is lawful to carry an unconcealed weapon for a lawful purpose"); <u>see also</u> <u>Mechikalski v. Office of the Attorney Gen.</u>, 2 P.3d 1039, 1040-41 (Wyo. 2000) (history of concealed carry restrictions).

Finally, the 1858 District of Columbia law that the State cites was a *concealed* carry restriction, not a complete prohibition on carry, as the law made it unlawful to "carry or have *concealed*" a handgun.  Act of Nov. 18, 1858, <u>Corporation Laws of the City of Washington</u>, at 114 (emphasis added).  The D.C. law's historical application to concealed carry is confirmed by the 1892 law that superseded it and provided (in more explicit terms) that it was unlawful for one "to have *concealed* about their person any deadly or dangerous weapons," while prohibiting the open carry of firearms only "with intent to unlawfully use the same."  Act of Jul. 13, 1892, 27 Stat. 116, ch. 159, §§ 1-2 (emphasis added); <u>see also</u> <u>United States v. Pritchett</u>, 470 F.2d 455, 457 & n.4 (D.C. Cir. 1972) (summarizing statutory history); <u>Bell v. United States</u>, 265 F. 1007, 1008 (D.C. 1920) (discussing the 1901 codification of the 1892 law).

The Texas and Wyoming laws that the State cites certainly do *not* establish that the 1868 public understanding of "right to keep and bear arms" *categorically excluded* any right to carry arms in public for protection.  Aside from the basic fact that these (1871 and 1873) laws *post*-date the Fourteenth Amendment's ratification, the Seventh Circuit's <u>Ezell</u> decision teaches that citation to only a small number of historical enactments "falls far short of establishing" that an activity is outside the scope of the Second Amendment's protection.  See <u>Ezell</u>, 2011 U.S. App. LEXIS 14108, *52-53.  The paucity of the State's proffered historical support only shows the

extent to which American jurisprudence embraces the right to "bear arms" as the right of people to carry arms for self-protection.

Ultimately, the State all but concedes that the 1868 public understanding of the right to keep and bear arms recognized a general right to carry guns.  See State Br. p. 14 (citing State v. Chandler, 5 La. Ann. 489 (1850), and Nunn v. State, 1 Ga. 243 (1846)).  And certainly, there is ample authority beyond Chandler and Nunn.  See State v. Reid, 1 Ala. 612, 616-17 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional"); Andrews v. State, 50 Tenn. 165, 172 (1871) (statute that forbid open or concealed carry of firearms violated the Second Amendment); Amicus Response p. 7.

The State instead argues that the Seventh Circuit was "mistaken" when it directed courts to look to the "publicly understood" meaning that existed in 1868.  See State Br. p. 14.  The State claims that this Court should disregard Ezell and instead look to the pre-Revolution common law of England as "the original history of the Second Amendment."  Id.  The State claims that the Statute of Northampton, 2 Edw. 3, c. 3 (1328) (Eng.), "demonstrates [there was] no right to carry weapons for self-defense outside the home."  State Br. p. 14; see also id. pp. 8-11.

Even if this Court were free to disregard a precedential ruling from the Seventh Circuit, the State's focus on the 1328 Statute of Northampton ignores significant developments that took place following 1328, and also takes the Second Amendment out of its proper context.  An essential grievance of the English Revolution was the Crown's varied attempts to disarm the people.  See Silveira v. Lockyer, 328 F.3d 567, 582-83 (9th Cir. 2003).  In the wake of the Revolution, the King's Bench limited the reach of the Statute of Northampton in Sir John Knight's Case, [1686] 87 Eng. Rep. 75 (KB), to apply only "to punish people who go armed to

terrify the King's subjects." Id.; see also Silveira, 328 F.3d at 583; David B. Kopel, It Isn't About Duck Hunting:  The British Origins of the Right to Arms, 93 Mich. L. Rev. 1333, 1347 (1995).  The State's claim that Sir John Knight's Case stands for the proposition that "English courts upheld the continuing vitality of this law [as prohibiting the carry of arms], even hundreds of years later," State Br. p. 9, is therefore quite inaccurate.  Three years after Sir John Knight, the English Declaration of Rights established that "the subjects which are protestants, may have arms for their defence suitable to their conditions, and as allowed by law."  Heller, 554 U.S. at 593 (quoting 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441); see also Silveira, 328 F.3d at 583.  Thus, "[b]y the time of the founding, the right to have arms had become fundamental for English subjects."  Heller, 554 U.S. at 593 (emphasis added).  The Second Amendment sought to prevent "what had occurred in England."  Id. at 598.  Hence, the State's proposal to look to the Statute of Northampton to establish the boundaries of the Second Amendment ignores significant aspects of English legal history, and also ignores the context of the Second Amendment itself.

The State's citation to Blackstone's Commentaries on the Laws of England is inapposite, State Br. pp. 10-11, for Blackstone wrote only that the common law upheld laws "prohibiting the carry of 'dangerous and unusual weapons.'"  Heller, 554 U.S. at 627 (quoting William Blackstone 4 Commentaries on the Laws of England *148-49 (1769)) (emphasis added).  The Supreme Court relied (in part) on Blackstone when it counseled that the Second Amendment does not protect "dangerous and unusual weapons" such as machineguns.  See id. at 627-28.  But Blackstone's statement certainly does not support the proposition that States can completely ban the bearing of commonly used arms such as handguns.

### III.   THE SUPREME COURT DID NOT CONFINE THE RIGHT TO KEEP AND BEAR ARMS TO THE HOME

The Supreme Court did not "limit" the Heller and McDonald rulings to the home, and in the interest of brevity, Plaintiffs respectfully refer the Court to their Amicus Response brief at pages 2-6.  Plaintiffs respond here to the State's use of post-Heller decisions to argue that the right to keep and bear arms ends at the threshold of one's home.  See State Br. pp. 6-8.

The criminal appeal reported at United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011), concerned a Parks Service regulation that prohibited loaded firearms in vehicles in the National Parks.  See id. at 459.  Thus, the case did *not* concern a complete ban on the carry of firearms in all public places – but rather, the validity of a "time, place, and manner" restriction imposed in a specific place.  The Court of Appeals for the Fourth Circuit found "no reason to expound on where the Heller right may or may not apply outside the home because . . . intermediate scrutiny of any burden on the alleged right would plainly lead the court to uphold the National Park Service regulation."  Id. at 475.  It was in this context that the Fourth Circuit made the statement (quoted by the State) that the Court "ha[d] no idea" what specific places the Second Amendment might protect. *See* id. at 475; State Br. p. 6.  Masciandaro does not support the proposition that the Second Amendment is affirmatively *limited* to the home, and it does not support avoiding the issue in a case – such as the present one – that concerns a *complete ban* on carrying firearms in public, rather than a restriction imposed in a specific place.

In contrast, People v. Dawson, 403 Ill. App. 3d 499, 934 N.E.2d 598 (Ill. App. Ct. 1st Dist. 2010), supports the State's position, as the Dawson court found that Heller "ultimately *limited* its holding to the question presented."  Id. at 508, 934 N.E.2d at 605 (emphasis added).  Plaintiffs respectfully submit that Dawson's conclusion of a "limited" holding was erroneous.  It is also significant that Dawson concerned criminal convictions that arose out of an alleyway

-7-

shooting, see id. at 501, 934 N.E.2d at 600, but that it is "'*law-abiding, responsible citizens*' whose Second Amendment rights are entitled to full solicitude," Ezell, 2011 U.S. App. LEXIS 14108 at *60 (quoting Heller, 554 U.S. at 635) (emphasis added).

The State's other three cases concern convictions for the *unlicensed* carry of firearms – and they accordingly do not present the same issue of *preclusion* that this case raises.  In all three cases, the criminal defendant did not hold a license and had not applied for a license.  See Williams v. State, 10 A.3d 1167, 1169, 417 Md. 479, 481-82 (2011) (qualifying that the court was not addressing the constitutionality of the carry-permit system itself); Sims v. United States, 963 A.2d 147, 150 (D.C. 2008) (finding no "plain error" in conviction and observing that the criminal defendant had not applied for a license); People v. Yarborough, 169 Cal. App. 4th 303, 314 (Cal. Ct. App. 2008) ("in the aftermath of Heller the prohibition 'on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment'" (quoting United States v. Hall, no. 2:08-00006, 2008 U.S. Dist. LEXIS 59641, *3 (S.D.W. Va. Aug. 4, 2008))).  None of these cases concern a *flat ban* on carry.

## IV. THE ISSUE IS PRECLUSION, NOT REGULATION, AND INTERMEDIATE SCRUTINY DOES NOT APPLY

The parties agree that the standard of scrutiny "depend[s] on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." Ezell, 2011 U.S. App. LEXIS 14108, *44; State Br. pp. 4-5.  Intermediate scrutiny applies "to firearm laws regulating non-core activities," State Br. p. 5, while strict scrutiny applies to laws imposing "a severe burden on the core Second Amendment right of armed self-defense.'"  Ezell, 2011 U.S. App. LEXIS 14108, *59); see also State Br. p. 5.

-8-

Therefore, to determine the standard of scrutiny to apply, the Court needs to first evaluate the burdens at issue.  The UUW statute prohibits "carr[ying] or possess[ing]" a gun:

1. "in any vehicle," 720 ILCS 5/24-1(a)(4); or

2. "concealed on or about [one's] person," id.; or

3. "upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town," 720 ILCS 5/24-1(a)(10).

The AUUW statute applies when a person carries a gun that is loaded, or when a person carries an unloaded gun with ammunition "immediately accessible":

1. "in any vehicle," 720 ILCS 5/24-1.6(a)(1); or

2. "on or about [one's] person," id.; or

3. "upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town," 720 ILCS 5/24-1.6(a)(2).

These prohibitions do not apply in a person's home or business, on their own land, or on the private property of another consenting person.  See 720 ILCS 5/24-1(a)(4), (10), 720 ILCS 5/24-1.6(a)(1), (2).  However, outside of this "private property" exemption, a person who seeks to "carry" a firearm "on or about [one's] person" violates both the UUW and AUUW prohibitions if the gun is loaded (or if ammunition is accessible).  Reflecting the intent to completely prohibit the carry of firearms for defensive purposes, the statutes exempt the *transportation* of guns only where they are unloaded and broken down, inaccessible, and/or cased.  See 720 ILCS 5/24-1(a)(4), (10); 720 ILCS 5/24-1.6(c).

The State claims that these UUW and AUUW prohibitions are mere "restrictions."  See State Br. p. 3; see also Response to Preliminary Injunction (Doc. No. 26) pp. 11, 14.  Articulated as a restriction, the UUW and AUUW prohibitions might be "a law limiting the bearing of arms to private property," or perhaps, "a law requiring arms borne in public to be completely inoperable."  Of course, almost any law can be characterized as a non-preclusive restriction.  A

law that effectively prohibits the exercise of a constitutional right does not trigger a lower level of scrutiny merely because some quantum of protected conduct remains theoretically available. See United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 812 (2000) ("It is of no moment that the statute does not impose a complete prohibition.  The distinction between laws burdening and laws banning speech is but a matter of degree."); see also United States v. Marzzarella, 614 F.3d 85, 94 (3d Cir. 2009) ("infringements on protected rights can be, depending on the facts, as constitutionally suspect as outright bans").

Heller and McDonald provide significant guidance on how to construe laws that impose broad – but not necessarily "complete" – prohibitions on the right to arms.  The D.C. handgun law that Heller primarily addressed did not *completely* ban handguns, but rather, banned handguns not registered before 1976.  See Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007), aff'd sub nom. Heller, 554 U.S. 570.  The Court did not construe this as a *burden* (*e.g.* "restricting the possession of handguns to those registered prior to 1976"), but instead as a law that "*generally prohibits* the possession of handguns."  Heller, 554 U.S. at 574 (emphasis added).  The Chicago laws at issue in McDonald also did not completely prohibit handguns, but instead prohibited handguns that had not been lawfully registered.  See McDonald v. Chicago, 130 S. Ct. 3020, 3026 (2010).  The City had most recently allowed residents to register handguns during a "window" that had begun on June 11, 2008.[4]  The Court construed the laws as "effectively banning handgun possession by almost all private citizens who reside in the City," id. at 3026, and invalidated them without invoking a standard of scrutiny, see id. at 3036.

---

[4] See Chicago City Clerk Document SO2008-2626, Ordinance of June 11, 2008, available at http://www.chicityclerk.com/legislation/passedlegislation/june_11_08/June 11, 2008/SO2008 2626.pdf (last visited Aug. 13, 2011).

As Plaintiffs have explained, laws that *prohibit* the exercise of constitutional rights – rather than *burdening* them – do not require resort to any standard of review.  See Plaintiffs' Br. for Preliminary Injunction (Doc. No. 14) pp. 12-14.  The Court did not resort to any particular rule of scrutiny to decide Heller because a *ban* is invalid "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights."  Heller, 554 U.S. at 635; see also Ezell, 2011 U.S. App. LEXIS 14108, *44 ("broadly prohibitory laws restricting the core . . . are categorically unconstitutional").

The UUW and AUUW provisions are best characterized as prohibitions, rather than regulations, because they foreclose such a broad swath of activity – *any* practical ability to carry a firearm for protection while in public.  Even if the Court found it appropriate to apply "burden" analysis – presumably on the rationale that the prohibitions are not a *complete* ban on the bearing of arms – it would be manifestly inappropriate to apply intermediate scrutiny.  See State Br. pp. 5, 11.  The "strict scrutiny" approach would apply because the UUW and AUUW laws at issue impose a substantial (complete or near-complete) preclusion on the "core" Second Amendment activity of bearing arms – and one that applies without regard to conditions or circumstances.

Framing the general prohibition on carry as a *burden* – a law "restricting the bearing of arms to private property" or "restricting the bearing of arms from public places" – is really no different than asking whether the right to bear arms is the right to carry guns, and whether that right extends beyond the home.  A nearly complete ban on carrying firearms cannot survive strict-scrutiny burden analysis because the existence of *less restrictive approaches* is fatal.  See, e.g., Ashcroft v. ACLU, 542 U.S. 656, 666 (2004); Reno v. ACLU, 521 U.S. 844, 874 (1997). Every other State in the Union allows its citizens to carry firearms in public for self-protection under some set of conditions, so plainly, less restrictive approaches are available.

Framing the UUW and AUUW prohibitions as regulations that burden the right to keep and bear arms by "requiring arms to be kept completely inoperable in public" also would not change the outcome.  (And that question also would not substantively change the overarching question – whether there is a general right to *carry* arms.)  Aside from the handgun ban, Heller also addressed a D.C. ordinance that required people to keep firearms "unloaded and disassembled or bound by a trigger lock."  Heller, 554 U.S. at 630 (quoting former D.C. Code § 7-2507.02 (2008)).  The Court did *not* characterize this law as a burden ("a restriction that arms be kept inoperable"),[5] but instead found simply that the law "makes it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and is hence unconstitutional."  Id.

While Second Amendment caselaw remains in its infancy, the decisions reached in the wake of Heller and McDonald show that it would be inappropriate to apply intermediate scrutiny to the preclusions at issue here.  Consistent with Ezell's approach, the vast majority of courts to consider the question have applied intermediate scrutiny to laws that impose *non-preclusive burdens* on the ability of people to possess and carry firearms.  Thus, courts have applied intermediate scrutiny to laws prohibiting the carry of firearms in specific places like National Parks and churches, and also to laws concerning the issuance of *concealed* carry permits.  See United States v. Masciandaro, 638 F.3d 458, 471 (4th Cir. 2011); GeorgiaCarry.Org, Inc. v. Georgia, 764 F. Supp. 2d 1306, 1317 (M.D. Ga. 2011); Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1115-16 (S.D. Cal. 2010).  Courts have applied intermediate scrutiny to laws that disqualify people from having guns on the basis of their past criminal acts.  See, e.g., United States v. Williams, 616 F.3d 685, 692-93 (7th Cir. 2010); United States v. Skoien, 614 F.3d 638,

_____

[5] However, the District of Columbia argued that the law functioned as a burden because someone who needed to load a gun could invoke the defense of necessity.  See Heller, 554 U.S. at 630.

641-42 (7th Cir. 2010).   And, courts have applied intermediate scrutiny to a federal law prohibiting the possession of guns with obliterated serial numbers.   See United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010) (reasoning that the law "leaves a person free to possess any otherwise lawful firearm he chooses—so long as it bears its original serial number"). *None* of these decisions concerned complete (or near-complete) preclusions of the right of law-abiding citizens "to keep and bear Arms," and they do not support intermediate scrutiny here.

## V.    THE BALANCE OF EQUITIES AND PROPER REGULATION

Plaintiffs are entitled to relief because the UUW and AUUW statutes prohibit conduct that the Second Amendment affirmatively protects – the ability to bear arms for self-protection. The Court's duty in this case – running ultimately from Marbury v. Madison, 5 U.S. (1 Cranch.) 137 (1803) – is to review the State's legislative choices under the dictates of the Constitution, to declare that impermissible laws are unconstitutional, and to enjoin their future enforcement.   See Younger v. Harris, 401 U.S. 37, 52 (1971); Ex Parte Young, 209 U.S. 123, 152 (1908).

The State argues that Plaintiffs are not entitled to injunctive relief because the State might impose different or additional requirements on the carry of firearms in public, and that some people with FOID cards might not be allowed to carry guns – were the State to enact laws regulating the practice.   See State Br. pp. 15-17.   Citing United States v. Salerno, 481 U.S. 739 (1987), the State asserts that Plaintiffs' claim must fail because the challenged UUW and AUUW provisions are "valid as applied to certain persons, locations, and weapons."   State Br. p. 17. This (surprising) argument is mis-conceived in at least three respects.

First, this action challenges only the Criminal Code provisions that prohibit the general act of carrying operational firearms in public – not the provisions that specifically prohibit firearms from delimited places (such as bars and certain public gatherings), and not the provisions that prohibit certain conduct while armed.   See, e.g., 720 ILCS 5/24-1(a)(8), (9).   An

injunction against enforcement of the general prohibitions in 720 ILCS 5/24-1(a)(4), (10) and 720 ILCS 5/24-1.6 will not prevent the State from enforcing statutory restrictions on the carry of firearms in specified areas or in specified manners.

At a more "big picture" level, the State's argument is a mis-apprehension of basic principles of federal jurisdiction and equity. This Court's role is to review the constitutionality of the discrete and enforceable State laws that Plaintiffs have called into question – it is *not* to implement alternative State laws, nor is it to opine about what the contours of a permissible replacement law might be. See Younger, 401 U.S. at 52. In Ezell, the Seventh Circuit rejected the City of Chicago's claim that enjoining the ordinances at issue there would violate the balance of hardship because of a resulting "regulatory vacuum" by explaining simply that "[t]he City may promulgate zoning and safety regulations governing the operation of ranges not inconsistent with the Second Amendment rights of its citizens." Ezell, 2011 U.S. App. LEXIS 14108, *68.

Finally, the State misconstrues Salerno when it cites the Court's statement that a facial challenge cannot succeed unless "no set of circumstances exists under which the [law] would be valid." See Salerno, 481 U.S. at 745; State Br. p. 15. Salerno actually stands for the proposition that a law is not facially invalid merely because it "might operate unconstitutionally under some conceivable set of circumstances." Salerno, 481 U.S. at 745. The fact that *some* people who hold FOID cards might be properly prevented from carrying guns does not change the fact that the very terms of the UUW and AUUW prohibitions represent a constitutionally impermissible legislative choice – not a legislative choice that is only impermissible in particular contexts. By the State's rationale, a law that *by its terms* disenfranchised a racial group from voting would be "facially" valid so long as there was at least one individual member of the racial group who was otherwise disqualified from voting. But plainly, this is not the case.

More fundamentally, the State's argument misconceives the distinction between facial and as-applied challenges.  A statute is invalid "as-applied" if it is invalid in a plaintiff's specific circumstances, and it is "facially" invalid if the deficiencies go beyond the circumstances presented.  See Doe v. Reed, 130 S. Ct. 2811, 2817 (2010).  The terms "facial" and "as-applied" are not pleading requirements, but instead relate to the breadth of relief.  See Citizens United v. FEC, 130 S. Ct. 876, 893 (2010).   The State requires a Firearms Owners Identification ("FOID") in order to possess firearms in Illinois.  See generally 430 ILCS 65/2.  This action does not challenge this requirement.  Hence, this case is "as-applied" in the sense that it does not seek a declaration that the UUW and AUUW prohibitions at issue can *never* be applied, but it is "facial" in that it seeks relief beyond the circumstances presented.  See Doe, 130 S. Ct. at 2817; Citizens United, 130 S. Ct. at 893.  "The label is not what matters."  Doe, 130 S. Ct. at 2817.

## VI.   CONCLUSION

This Court will (apparently) be the *first* court to rule on the constitutionality of a law that broadly prohibits the carry of firearms in public – as applied to the law-abiding citizens who lie at the heart of the Second Amendment's protections – since the Supreme Court handed down its seminal decision in Heller.  Apparently recognizing this, the State attempts to confuse the issue by inviting the Court to revisit Heller's core conclusions, by analogizing the State's carry ban to restrictions on the concealment of firearms, and by mis-characterizing the showing needed to invalidate a statute.  But these are all red herrings.

The only real question is whether the right to possess and carry weapons for confrontation applies outside the home.  Plaintiffs submit that after Heller, the answer to this question is "written on the wall."  A law that prohibits conduct that the Constitution affirmatively protects is (by definition) unconstitutional.

Dated: August 15, 2011

By: _____

David D. Jensen
DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2011, I presented the foregoing Motion, Memorandum of Law, and exhibits to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the following:

> Terence Corrigan [tcorrigan@atg.state.il.us]
> Karen L. McNaught [kmcnaught@atg.state.il.us]
> David A. Simpson [dsimpson@atg.state.il.us]
> Illinois Attorney General's Office - Springfield
> 500 South Second Street
> Springfield, IL 62706

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: August 15, 2011

David D. Jensen