IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS CARRY, <br><br> Plaintiffs, <br><br> v. <br><br> LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois and HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, <br><br> Defendants. | Case No. 3:11-CV-3134 |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CASE AS MOOT**

COME NOW the Plaintiffs, MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS CARRY, and submit their Response to the Defendant's Motion to Dismiss Plaintiffs' Case as Moot.

## INTRODUCTION

This action is by no means moot, because the Seventh Circuit has remanded this case for appropriate relief, and Plaintiffs' claim for attorney's fees under 42 U.S.C. § 1988 is still live and pending. Therefore, Defendant's Motion to Dismiss this matter as moot must be denied.

## STATEMENT OF FACTS

1.    On May 12, 2011, Plaintiffs filed the instant suit challenging the constitutionality of 720 ILCS 5/24-1 (Unlawful Use of Weapons) and 720 ILCS 5/24-1.6 (Aggravated Unlawful Use of Weapons) (Docket #1, as amended by Docket #5, dated May 19, 2011). Plaintiffs sought a declaration of unconstitutionality of the challenged statutes, injunctive relief against the

challenged statutes, and "such other and further relief, including further injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable." (Docket #5, pp.10-11).

2. Plaintiffs also requested attorney's fees pursuant to 42 U.S.C. § 1988 (Docket #5, p.11).

3. On December 11, 2012, the Seventh Circuit Court of Appeals reversed the District Court's decision and Order and remanded as follows:

> The Supreme Court's interpretation of the Second Amendment therefore compels us to reverse the decisions in the two cases before us and remand them to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions. Nevertheless we order our mandate stayed for 180 days to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public.

*Moore v. Madigan*, 702 F.3d 933, 942 (2012). This was exactly the substantive relief Plaintiffs had sought in their Complaint. The Seventh Circuit left all remaining issues, including attorney's fees, for resolution on remand.

4. Upon the State's request (and over Plaintiffs' objection) on June 4, 2013 the mandate was stayed for an additional 30 days until July 9, 2013.

5. On July 9, 2013, the State passed the Firearms Concealed Carry Act, which was a hotly-contested response to the Seventh Circuit's ruling. On the same day, the Seventh Circuit's mandate issued.

**ARGUMENT**

**I. CIVIL RIGHTS PLAINTIFFS OBTAINING A JUDICIALLY SANCTIONED CHANGE IN THE PARTIES' LEGAL RELATIONSHIP ARE ENTITLED TO RECOVER ATTORNEY FEES AND EXPENSES.**

Federal law provides for the award of attorney's fees to the "prevailing party" in an action under 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1988(b).  Indeed, over 100 federal fee-shifting statutes provide successful plaintiffs attorney fee reimbursement.  *See March v. Chesney*, 473 U.S. 1, 43-51 (1985) (listing federal statutes authorizing awards of attorneys' fees).  Congress' logic in promulgating fee-shifting provisions like Section 1988 is clear.  Sentimental idealism aside, the law will not be effectively enforced in our market economy unless someone pays attorneys their market rates to enforce it. The House and Senate Reports regarding Section 1988 observed as much plainly.

> If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S. Rep. 1011, 94th Cong., 2d Sess. 5 (1976).  "The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens."  H.R. Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976).

> The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S. Rep. No. 1011, supra, at 2.[1]

"If private citizens are to be able to assert their civil rights . . . then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Kay v. Ehrler*, 499 U.S. 432, 436 n.8 (1991) (quoting S. Rep. No. 1011, supra, at 2). Particularly in cases where only prospective relief is sought or "the amount of damages at stake would not otherwise make it feasible [for plaintiffs to enforce civil rights laws]," fee and expense recovery is imperative because no damage award can offset the financial loss to the plaintiff. *See City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986).

Fees to cover the cost of law enforcement are most equitably collected from violators, a principle vindicated in our legal system's pervasive imposition of court costs against violators.

> [T]he plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority. . . when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978) (citation and internal quotation marks omitted).

Private enforcement mechanisms may not be perfect, to be sure—but Congress was entitled to choose such a system for the enforcement of basic civil rights, and the courts must implement the system Congress designed in a realistic manner faithful to its design, as reflected in the plain, unambiguous text of 42 U.S.C. § 1988.

---

[1] In the absence of a private enforcement mechanism for federal civil rights, the federal government would be expected to take on a greater role of enforcing these laws, causing federal taxpayers to effectively subsidize the bad behavior of local governmental actors (to say nothing of the relative inefficiency of a governmental substitute for a market-provided service).

To determine the meaning of "prevailing party," a Court ". . . begin[s] by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose. We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010) (citations and internal punctuation marks omitted).  A successful civil rights plaintiff "cross[es] the 'statutory threshold' for recovering attorney fees and expenses by coming within Section 1988's definition of a "prevailing party." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).  "Prevail" means "to gain the victory." WEBSTER'S UNABRIDGED DICTIONARY 1426 (2d ed. 1979).  Attorney fees and expenses are recovered in cases comprising "the stuff of which legal victories are made." *Buckhannon Board & Care Home, Inc .v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001) (citations omitted).

"The touchstone of the prevailing party inquiry. . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-793). "[T]he phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits." H. R. Rep. 1558, supra, at 7.  "[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief."  S. Rep. No. 1011, supra, at 5.

Accordingly, "[u]nder our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citations and internal quotation marks omitted). "[A]

5

'prevailing party' is one who has been awarded some relief by the court. . ." *Buckhannon*, 532 U.S. at 603. Judgments on the merits, including nominal awards, and court-ordered consent decrees qualify as prevailing, *id*. at 604.

But this list is not exhaustive. "[T]he *Buckhannon* Court did not have reason to address how formal a judgment must be." *Citizens for Better Forestry v. United States Dept of Agric.*, 567 F.3d 1128, 1131 (9th Cir. 2009). A declaratory judgment, for example, "will constitute relief, for purposes of Section 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (*per curiam*). And "[c]ases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality." *Zessar v. Keith*, 536 F.3d 788, 798 (7th Cir. 2008).

Applying these principles, and reviewing other law on the subject, it becomes readily apparent that the Plaintiffs prevailed in multiple ways.

**II. THE SEVENTH CIRCUIT'S JUDGMENT IN THIS CASE DRAMATICALLY ALTERED THE LEGAL RELATIONSHIP AMONG THE PARTIES BY MANDATING THAT DEFENDANTS RESPECT PLAINTIFFS' FUNDAMENTAL SECOND AMENDMENT RIGHTS.**

It is simply wrong when Defendants suggest that the case became moot when the State enacted a firearms carry-licensing law, as Defendants' argument ignores that it was the Seventh Circuit's decision in this case that struck down the public carrying ban in the first place.

The Seventh Circuit reiterated that the Second Amendment forbade the ban on the public carrying of firearms for lawful purposes, and applied the Second Amendment fully against Defendants. In so doing, the Seventh Circuit rejected Defendants' pleas to administer a

6

diluted form of Second Amendment rights that would tolerate carrying bans. And the Seventh Circuit acknowledged that the Second Amendment secures the rights of law-abiding people by securing the right to carry firearms.

And, of course, it again bears repeating that in the wake of the Seventh Circuit's opinion, the State Legislature stated publicly and often that its members knew they had to enact a concealed carry to meet the June 9, 2013 (or July 9, 2013, depending on the timing of the comments) deadline imposed by the Seventh Circuit. Absent is any hint that the State reconsidered the firearms carrying ban as a matter of public policy. Indeed, a concealed carry bill failed in the Legislature just prior to the Plaintiffs filing the instant lawsuit.

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 38 (1950). If Defendants want to vacate the Seventh Circuit's decision, then they must seek relief from the Seventh Circuit – not this Court.

The Seventh Circuit does not issue advisory, inconsequential opinions, and there is no dispute that the Seventh Circuit decided a live case or controversy when it issued its opinion on December 11, 2012. Its opinion in this case was not a mere positive statement of law in the course of a losing case for the Plaintiffs, or a moral victory that did not benefit the Plaintiffs at the time it was issued. Plaintiffs, along with every individual in Illinois (as well as Wisconsin and

7

Indiana), benefit from the Seventh Circuit's opinion. As of December 11, 2012, a new constitutional order respecting a fundamental enumerated right prevailed throughout the Seventh Circuit. Defendants are no longer free to enforce a complete prohibition on bearing arms against the law-abiding gun owners of Illinois.

This very meaningful and profound alteration in the legal relationship between the people of Illinois and their State officials was precisely what the Plaintiffs sought in litigation. Obtaining judicial protection of Second Amendment rights against State infringement constitutes "succe[ss] on [a] significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar*, 506 U.S. at 109. It constitutes, by any measure, a material alteration in the legal relationship among the parties, bearing the Seventh Circuit's imprimatur.

Plaintiffs obtained the highest form of the declaratory relief sought in their Complaint. As the record indicates, the Seventh Circuit's opinion forced the State to enact an entirely new set of firearms statutes in a manner consistent with the new legal reality. Namely, Illinois was forced to become the last State in the nation to allow the public carrying of firearms as a result of the Seventh Circuit's ruling. As a result, Plaintiffs are plainly the "prevailing parties" in this litigation.

The current situation is materially indistinguishable from that presented in *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004). In *Palmetto*, a party prevailed where it obtained a partial judgment that the defendant's zoning ordinance was unconstitutional, resulting in the defendant's subsequent repeal of the law. The Seventh Circuit specifically rejected any suggestion that because the judgment supporting the plaintiff was

never made final or enforceable before the case was dismissed as moot, the plaintiff did not prevail.

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance— Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id.* at 550.  Contrasting *Buckhannon*, where the offending statute was repealed before any judicial ruling on the merits and was deemed voluntary, the Seventh Circuit found that

> not only did the district court make a substantive determination as to essentially all the constitutional claims save one, the County repealed the ordinance only after that determination had been made and presumably because of it.  To be sure, the Defendants were free to moot the case before the summary-judgment ruling, in which case the action would have been voluntary.  They did not.  Hence, their action is most persuasively construed as involuntary—indeed exhibiting judicial imprimatur.

*Id*. (emphasis in original).

Also instructive is the Seventh Circuit's decision in *Southworth v. Board of Regents*, 376 F.3d 757, 768 (7th Cir. 2004), holding that plaintiffs who successfully challenged a university fee system were prevailing parties, notwithstanding the university's immediate alteration of the challenged system. The plaintiffs had "obtain [ed] the protection they sought in their amended complaint—a mandatory fee system that satisfied the requirements of viewpoint neutrality—and this change resulted from a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'" *Id.* (citations omitted).

Finally, in a pre-*Buckhannon* case, the ruling of which has since been confirmed as consistent with *Buckhannon*, *see Dupuy v. Samuels*, 423 F.3d 714, 720, 723 (7th Cir. 2005), the

Seventh Circuit found that the City of Chicago improperly acted to moot litigation over an unconstitutional speech restraint in an attempt to deny the plaintiffs' status as a "prevailing party." *Young v. City of Chicago*, 202 F.3d 1000, 1000-01 (7th Cir. 2000). In *Young*, plaintiffs obtained an injunction against the City, securing their right to demonstrate. The City waited to appeal that injunction until after the event occurred, thus mooting the case before the merits could be determined. *Id.* at 1000. The Court held that "[a] defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party." *Id.* at 1000-01.

Defendant may have logically desired to clean an unconstitutional law off its books. But claiming that action undermined the status of Plaintiffs' victory, which forced Defendants' conduct in the first place, is no less gimmicky than the claim this Court rejected in *Young*.

There was nothing voluntary about the firearms carrying ban repeal—the Defendants extensively litigated the State's carrying ban before the Seventh Circuit, arguing to the Court that the Second Amendment does not prevent the State from being the only one in the United States to maintain a public firearms carrying ban. Then, the Defendants sought *en banc* review and a stay of the Seventh Circuit's mandate. Yet, Defendants characterize their actions as voluntary, as though they may be free to ban the public carrying of firearms at any time in the future. For precisely this reason, *Buckhannon* observed:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

*Buckhannon*, 532 U.S. at 608-09 (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (footnote and internal quotation marks omitted); *Palmetto*, 375 F.3d at 550.

The Seventh Circuit's decision to award Plaintiffs costs also confirms that they are "prevailing parties." Generally, "if a judgment is reversed, costs are taxed against the appellee." F.R.App.P. 39(a)(3). "[I]n general, a litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs." *Id*. (citing *Tunison v. Continental Airlines Corp., Inc.*, 162 F.3d 1187, 1189-90 (D.C. Cir. 1998); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1180 n.1 (Fed. Cir. 1996); *Farrar*, 506 U.S. at 119-20 (O'Connor, J., concurring)); *see also Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (awarding attorney fees in copyright litigation to party that obtained costs, as "[o]nly the prevailing party is entitled to costs."); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835-36 (6th Cir. 2005); *Miles v. California*, 320 F.3d 986, 989 (9th Cir. 2003); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 926 (3d Cir. 1985); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 132 (5th Cir. 1983). In awarding costs to Plaintiffs, the Seventh Circuit clearly recognized Plaintiffs are the "prevailing parties" in this litigation.

Ultimately, this situation is extremely similar to what the Seventh Circuit faced in litigation following the *McDonald* decision, which rendered the City of Chicago's handgun ban unenforceable. After the Supreme Court issued its ruling, the City repealed its handgun ban before the Seventh Circuit could enter the order compelling it to do so, and then attempted to argue plaintiffs were not prevailing parties even though it was obvious its handgun ban had

11

been struck down. *See NRA of America, Inc. v. City of Chicago*, 646 F.3d 992, 994 (7th Cir. 2011) ("After the Supreme Court held that the Second Amendment applies to the municipalities' ordinances, defendants' position was untenable"). The Seventh Circuit rejected the argument, explaining that "[w]hen the Supreme Court rendered its decision, the controversy was live." *Id.* at 993. The Court further stated:

> A litigant that surrenders or settles after a judgment is not entitled to vacatur. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994); *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299 (7th Cir. 1988). Many a defendant gives up after a district court's final decision and does not appeal; some other parties settle to avoid the risk of reversal. If a cessation of hostilities after a district court's decision does not deprive the victor of prevailing-party status, why should conceding defeat after a decision by the Supreme Court do so?

*Id.* at 992.

The Seventh Circuit found the State's ban unconstitutional, reversed the District Courts' orders to the contrary, and remanded for appropriate declaratory and injunctive relief. The State's obligation to comply with the Seventh Circuit's ruling was not voluntary, and neither was the Firearms Concealed Carry Act. The Defendants cannot moot the case simply by complying with the Seventh Circuit's ruling. Rather, the Seventh Circuit plainly had jurisdiction over a live case or controversy, and this Court retains jurisdiction to both enter any declaratory or injunctive relief that is necessary to effectuate the Seventh Circuit's judgment, and to award Plaintiffs attorney's fees as prevailing parties

## CONCLUSION

The case is not moot, and Plaintiffs' claim for attorney's fees - requested in the Complaint from the beginning of this litigation – is live and pending. Defendants' passing of a

carry-licensing act does not moot the case because the Seventh Circuit's ruling of the challenged statutes' unconstitutionality came first.  Under all Section 1988 jurisprudence, Plaintiffs are prevailing parties in this litigation, and their fee claim must be allowed to be heard.

WHEREFORE, the Plaintiffs, MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS CARRY, respectfully request this Honorable Court to deny Defendants' Motion in its entirety, and to grant Plaintiffs any and all relief deemed just and proper, including 42 U.S.C. § 1988 attorney fees.

    Respectfully submitted,

      /s/ David G. Sigale
    One of the Attorneys for Plaintiffs

DAVID JENSEN PLLC
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615
david@djensenpllc.com
Admitted *pro hac vice*

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

    1.    On July 15, 2013, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

    2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                           /s/ David G. Sigale
                              One of the Attorneys for Plaintiffs