**E-FILED**
Monday, 16 December, 2013  11:58:17 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, <br><br> Plaintiffs, <br><br> v. <br><br> LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, <br><br> Defendants. | Case No. 3:11-CV-3134 |

_____

DECLARATION OF ALAN GURA

I, Alan Gura, am competent to state and declare the following based on my personal knowledge.

1.      I earned my Juris Doctor degree from Georgetown University in 1995, the year in which I was first admitted to practice law. I earned my Bachelor of Arts degree from Cornell University in 1992. I am an active member in good standing of the California, District of Columbia, and Virginia bars. I am also admitted to practice before the United States Supreme Court, all but one of the federal appellate courts, and numerous federal district courts throughout the country.

2.      Upon graduation from law school, I clerked for the Hon. Terrence W. Boyle, United States District Judge for the Eastern District of North Carolina. Subsequently, I served as a Deputy Attorney General for the State of California, in the Civil Division of the California Department of Justice. Based in the Los Angeles office, I covered courts throughout southern and central

California. I was tasked with first-chair responsibility for representing the state and its employees in a broad array of matters, in trial and on appeal. I handled dozens of cases, ranging from aviation to privacy rights, but the heaviest component of my workload consisted of civil rights work under Section 1983.

4.        3.        From 1998 to 2000, I worked at the Washington, D.C. offices of Sidley & Austin as an associate, where I continued working on civil rights cases in addition to various commercial litigation matters. From early 2000 through early 2001, I served as Counsel to the United States Senate Judiciary Committee, Subcommittee on Criminal Justice Oversight.

4.        I first opened my own practice in 2001. Shortly thereafter, I founded Gura & Day, PLLC, half of which became my current firm, Gura & Possessky, PLLC, in October, 2005. My practice has always focused in large part on constitutional law and civil rights litigation, in trial and on appeal. I have significant experience and expertise in the Second Amendment field.

5.        I have twice argued, and won, before the United States Supreme Court. *District of Columbia* v. *Heller*, 554 U.S. 570 (2008); *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). I also acted as lead counsel throughout the conduct of those cases, including the successful argument in *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007). Among other cases, I organized, helped litigate in District Court, and argued successfully on appeal in *Ezell* v. *City of Chicago*, 651 F.3d 684 (7th Cir. 2011). I also briefed the fee appeal in *McDonald*, which we won without argument in *NRA* v. *City of Chicago*, 646 F.3d 992 (7th Cir. 2011). I have argued, as counsel for appellant, appellee, or amicus curiae, before the First, Second, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and District of Columbia Circuits.

6.        Earlier this year, the *National Law Journal* named me among the "100 Most Influential Lawyers in America."  In 2010, *Legal Times* named me one of Washington, D.C.'s Top

40 Lawyers Under 40, and a "Champion of Justice."

7.      I have been published in various legal and general interest publications, including the *UCLA Law Review, Texas Review of Law and Politics, The Cato Supreme Court Review*, *Los Angeles Daily Journal, Legal Times, The American Enterprise,* and *Washington Jewish Week*. I teach bar-sponsored continuing legal education courses throughout the United States, and regularly lecture and debate on law school campuses.

8.      Last year, I set my standard hourly rate, under which I billed and collected, at $600/hour. That rate is increasing to $640/hour effective January 1, 2014, and I am currently engaged to provide legal services at that rate. Where appropriate, I also work on flat fee, blended, or contingency bases, and in those cases my effective recovered rate has at times greatly exceeded my standard hourly rates.

9.      My standard hourly rate is consistent with fees awarded me in similar cases dating to times when I did not have a set hourly rate. For example, in *McDonald*, in 2011, the Northern District of Illinois awarded me fees, on an *agreed* motion, at an hourly rate of $539/hour. See Exhibit A. In *Heller*, also in 2011, the District Court for the District of Columbia awarded me fees at an hourly rate of $435. However, in so doing, *Heller* was bound by the D.C. Circuit's "Laffey Matrix" methodology, which the Seventh Circuit and various district courts within it question. *See Pickett* v. *Sheridan Health Care Ctr.*, 664 F.3d 632, 649-50 (7th Cir. 2011).[1]

_____

[1]The *Heller* fee opinion's reference to a $420 hourly rate was a clerical error that the district court corrected on an uncontested Rule 60 motion. See *Parker* v. *Dist. of Columbia*, D.D.C. No. 03-213, Dkt. Nos. 89 & 90. Respectfully, that court also erred in its application of *Laffey*, by selecting the U.S. Attorney's version of the Laffey Matrix, which utilizes an older rate survey and employs the generalized CPI for Washington, D.C. rather than the index for legal services employed by other accepted versions of the Laffey Matrix. See generally www.laffeymatrix.com (last visited Dec. 11, 2013). It is a matter of public record that the *Heller* fee dispute settled on appeal for an amount approximately 25% higher than the district court awarded. In any event, my requested rate

10.     My standard hourly rate is also consistent with the standard hourly rates of counsel in related cases. Just as the NRA sponsored a companion case to this litigation, *Shepard* v. *Madigan*, it sponsored a case parallel to *McDonald*, called *NRA* v. *City of Chicago*, utilizing several of the same attorneys as were utilized in *Shepard*. *NRA* counsel's rates are found in Exhibit B, at 2-4. The Northern District approved of all but two of these rates (Halbrook and Kolodziej). Seven of *NRA* counsel's 2011 court-approved hourly rates met or exceeded my 2014 rate: Stephen Poss ($850), Kevin Martin ($675), Paul Clement ($1020), Daryl Joseffer ($710), Jeffrey Bucholtz ($640), H. Christopher Bartolomucci ($950), and Charles Cooper ($815).[2]

11.     My standard hourly rate is also competitive with those charged by other attorneys of similar experience and background who handle complex federal litigation in the relevant community. See 2012 National Law Journal Billing Rate Survey, Dec. 17, 2012, attached hereto as Exhibits C (partners), D (firmwide), and E (associates). In particular, my rate stands well-within the market range for partners, especially when considering our firm's greater efficiency.

12.     I offer public interest discounts to my standard rates, but always with the understanding that fee rights are assigned to my firm and that I can recover a market rate under fee shifting provisions such as 42 U.S.C. § 1988. This case utilized such an arrangement for four reasons: (1) I believe strongly that Second Amendment rights in particular should be protected; (2) I believe it is critical that states not be allowed to prohibit wholesale the exercise of fundamental

---

is consistent with the updated Laffey Matrix utilizing the legal services CPI, and having since established and collected under an hourly rate, I am no longer subject to the *Laffey* methodology even within the D.C. Circuit.

[2] Notably, the Supreme Court granted the more comprehensive *McDonald* petition for certiorari over NRA's. Our preservation of all available arguments for relief was necessary to prevail. See, e.g., David S. Cohen, THE PARADOX OF MCDONALD V. CITY OF CHICAGO, 79 Geo. Wash. L. Rev. 823 (2011).

rights; (3) I believe that it is the role of attorneys to ensure that the government follows

constitutional requirements; and (4) the Second Amendment Foundation's valuable public service

depends in large part on donations from its individual members, and I want the Foundation to

maximize its good work. However, without the prospect of recovering a market rate, I would take

substantially less public interest work. I would not have undertaken this representation absent the

prospect of a Section 1988 recovery because there is a limit as to how much time I am willing to

work for below-market rates without hope of recovering the value of my time. I am familiar with the

market for legal services, including that market in the civil rights field. I can confidently state that

absent Section 1988 and similar fee shifting provisions, the public's access to justice would be

greatly limited, as lawyers qualified to handle complex federal litigation would take far fewer civil

rights and employment cases.

13.     I have kept contemporaneous time records throughout my participation in this case.

Exhibit F contains my record of time spent working on this matter, which was necessary to

accomplish the result we achieved in this case. I have taken care to eliminate the notation of any

time not actually essential to the litigation's achievements. As noted, I charged travel at half. I am

claiming a total of 88.1 hours at my updated rate and 5.4 hours at the travel rate for a total of

$58,112.00 in attorney fees

14.     Exhibit F also lists my ordinary expenses necessarily incurred in the course of

litigating this matter that were not otherwise recovered by way of our cost bill in the Seventh Circuit.

Exhibit G is a true and correct copy of the receipts. These expenses relate to my travel to Chicago

for the Seventh Circuit argument, including coach airfare, one standard room night at the Hilton

near the court house, cab fare to the hotel (Mr. Sigale gave me a ride back to the airport), and

miscellaneous food and beverage, in part shared with Mr. Sigale as we discussed the case.

I declare under penalty of perjury that the foregoing is true and correct.

This the 16th day of December, 2013.


/s/ Alan Gura
Alan Gura