**E-FILED**
Tuesday, 17 December, 2013  12:00:27 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE; et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Case No. 3:11-cv-3134 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF DAVID D. JENSEN, ESQ.

I, David D. Jensen, declare as follows:

1.      I am a member of the bar of this Court.  I am over 18 years of age and am competent to testify on my own behalf.  I submit this Declaration in support of Plaintiffs' motion for attorney's fees pursuant to 42 U.S.C. § 1988.

2.      I earned my Juris Doctor degree at Washington and Lee University School of Law in Lexington, Virginia, where I graduated *cum laude* in 2003.  While in law school, I was lead articles editor of *Washington and Lee Law Review*.  I completed my undergraduate degree in economics at Brigham Young University in 1998.

3.      I was first admitted to practice in the State of New Jersey in 2003, and the State of New York admitted me in 2004.  I remain a member in good standing of these state bars, and I am also admitted to practice and in good standing before:  the United States District Courts for the Central District of Illinois, the District of New Jersey, and the Southern, Western, Eastern, and Northern Districts of New York; the United States Courts of Appeals for the Second, Third, and Seventh Circuits; and the United States Supreme Court.  Beyond this, I have appeared *pro hac vice* in the United States District Courts for the Southern District of Florida, the Central and Northern Districts of Illinois, the District of Kansas, the District of Massachusetts, and the

Western District of Washington, and also in the Delaware Chancery Court.  I have never been disciplined or sanctioned by any court or bar.

4.      I have published articles in the *Washington and Lee Law Review*, the *New York State Bar Association Government, Law and Policy Journal*, and *Environmental Law News* (a publication of the Virginia State Bar).  I am the author of a chapter on charter-parties in the treatise *Benedict's on Admiralty*.  I was substantially involved in preparing the current versions of the treatises *Voyage Charters* and *Time Charters* and am cited in the acknowledgements.  I am also acknowledged in the book *Defending Against Pirates:  The International Law of Small Arms, Armed Guards and Privateers*.

5.      After law school, from 2003 through 2004, I served as a law clerk to the Hon. David A. Faber, who was then Chief Judge of the United States District Court for the Southern District of West Virginia (and who has since assumed senior status).

6.      In 2004, after my clerkship ended, I began working at Healy & Baillie LLP in New York.  At the time, Healy & Baillie was the largest maritime law firm in the United States. In 2006 Healy & Baillie merged with Blank Rome LLP, and I was an associate attorney in the "corporate litigation" department at Blank Rome from 2006 until 2010.  My practice focused on civil litigation, including cases that concerned the international sale and/or shipment of goods, general commercial law, constitutional law, intellectual property law, and insurance coverage. Approximately 90% of my cases were in federal court.  When I left Blank Rome in 2010, my standard billing rate was $435 per hour.  I know that clients paid this rate for my services.

7.      After Blank Rome, I was associated with Duane Morris LLP in Newark, New Jersey for about one year, where I also practiced civil litigation, but primarily in the areas of insurance coverage and tort defense.  My standard hourly rate at Duane Morris was $325.  By

my understanding, this rate was lower than my rate had been at Blank Rome because:  (1) most of the retentions were made pursuant to contracts with insurance companies that provided discounted rates; (2) market billing rates are less in New Jersey than they are in Manhattan; and (3) many of the cases I handled at Duane Morris concerned less complex areas of the law.

8.      In early 2011 I left Duane Morris and organized my own firm, David Jensen PLLC. Two of my motivations for doing so were my desires to move my law practice back to New York, and to move my practice back in the direction of handling more complex matters.  My firm's primary practice areas are constitutional law, commercial law, and shipping law.  Almost all of my representations involve either litigation in federal court or arbitration.  Although many of my cases are located in New York and New Jersey, many other cases are located outside this geographic area.  I most commonly handle cases on an hourly fee basis.  However, in appropriate cases I also use both contingent and flat-fee arrangements.  I charge the same hourly rates regardless of a case's venue.

9.      When I first organized my practice in 2011, I determined that the market value of my services was at least $450 per hour, based on both my prior billing rate in Blank Rome's New York office ($435) and my own independent knowledge of prevailing legal rates in New York.  However, I was also motivated to set rates at a level that would both attract new business and reflect market conditions.  As such, I adopted a two-tiered rate system that I continue to use today.  I set my hourly rate at $450 per hour for complex litigation matters and at $350 per hour for less-complex, general commercial matters.  My rationale in offering a lower fee for less-complex matters is that that the legal marketplace becomes increasingly competitive as the sophistication and complexity of a legal dispute decreases.

10.     A third reason for my decision to organize David Jensen PLLC in 2011 was my desire to support the right to keep and bear arms and the development of Second Amendment jurisprudence.  While I understand the topic is a controversial one about which reasonable minds may differ, I have always regarded the right to bear arms as an important civil right, and I became interested in handling Second Amendment litigation after the Supreme Court decided McDonald v. Chicago in the summer of 2010.

11.     My first Second Amendment case was a challenge to New Jersey's restrictive standard for issuing permits to carry handguns.   In that case, the Second Amendment Foundation, Inc. ("SAF," a plaintiff herein) retained my services at Duane Morris in the latter part of 2010.  One issue that arose from the outset was that SAF (like many other non-profit member organizations) had limited funds available to finance litigation, and it could not afford to pay standard, market-based rates.  We had "worked around" this issue with my first SAF case by using a flat-fee arrangement, but it was clear that I would need to provide a substantially discounted rate in order to take on any additional Second Amendment cases in the future.

12.     As such, I faced a dilemma during the early part of 2011.  I wanted to leave Duane Morris and return my law practice to New York City, I wanted to handle complex litigation matters, and I also wanted to begin handling more Second Amendment cases.  While I was well qualified to resume handling complex litigation in a large firm in Manhattan, it would not have been possible to handle Second Amendment cases in this environment, as there would have been no way to provide a fee structure that a membership organization such as SAF could afford to pay.  I decided to forego work as a litigation attorney in a large, "corporate" law firm so that I could handle cases that would seek to vindicate Second Amendment rights.

13.     As the time entries submitted herewith indicate, I began working on the present case in March 2011, very shortly after I had left Duane Morris and organized my firm.  In light of SAF's limited funds and my desire to donate towards the cause, I agreed to provide SAF with a very substantial discount from my standard rates.  My retention agreement with SAF expressly provides that the reasonable value of my legal services is $450 per hour, but that I have agreed to discount this rate substantially.  My retention agreement also memorializes the understanding that any 42 U.S.C. § 1988 fee award will be based on market rates, rather than the discounted rate that I have provided to SAF.  I have used this same arrangement – an agreement that the reasonable value of my services is $450, coupled with a substantial discount – to take on other cases related to the Second Amendment.

14.     However, I have refused to offer any similarly substantial discount in representations that do not implicate my desire to safeguard the Second Amendment rights of law-abiding Americans.  While I have on occasion offered discounts to established clients that pay promptly and provide a significant volume of work, these discounts have been in the range of 10% to 20%.

15.     I have contemporaneously kept records of my time and expenses spent handling this case.  Exhibit A shows my professional fees and associated expenses from March 2011 (when I began working on this case) through December 15, 2013.  As indicated, I spent a total of 236.6 hours handling this case, which equates to a total fee of $106,470.  In addition, I incurred $1,331.02 in expenses for postage, mileage, and one night's lodging expenses.  I chose to drive from New York to Illinois to attend argument in the District Court, and hence, I did not consider it appropriate to charge any amount for my travel time.

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746.

Dated: December 16, 2013

 /s/ David D. Jensen _____
David D. Jensen

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1.     On December 16, 2013, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2.     Pursuant to Fed. R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

Dated: December 16, 2013

 /s/ David D. Jensen _____
David D. Jensen