**E-FILED**
Monday, 05 May, 2014  05:04:36 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL MOORE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | )    No. 11-3134 |
| | ) |
| LISA MADIGAN, in her Official Capacity as | ) |
| Attorney General of the State of Illinois, et al., | ) |
| | ) |
| Defendants. | ) |

**FEE PETITION RESPONSE AND OBJECTIONS**

COME NOW defendants, Lisa Madigan and Hiram Grau, by their counsel, LISA MADIGAN, Attorney General of the State of Illinois, and hereby respond to the fee petition filed by plaintiffs.  In support thereof, it is stated:

The Supreme Court has reaffirmed the "American Rule" that each party in a lawsuit should ordinarily bear its own attorney's fees, unless there is express statutory authority to the contrary.  *Alyeska Pipeline Service Co. V. Wilderness Society*, 421 U.S. 240 (1975).  To be entitled to attorney's fees in a fee-shifting case, the party must first show that he or she is a prevailing party.   *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001).  *See also* 42 U.S.C. §1988.

If the plaintiff establishes that he or she is a prevailing party, attorney's fees are to be awarded, and the normal method of calculating a reasonable fee is to determine a "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This fee must be reasonable in light of market rates and market practices such that the fee would be deemed reasonable, if billed by an attorney to his own client.  *Hensley v. Eckerhart*, 461 U.S. 424.  Fees awarded in fee-shifting cases should not result in windfalls to prevailing counsel.  *Blum v. Stenson*, 465 U.S.

886, 893-94 (1984); *Hensley* at 430, n.4.

## A.    PLAINTIFFS ARE NOT PREVAILING PARTIES ENTITLED TO ATTORNEY FEES

Plaintiffs brought this action challenging provisions of the Criminal Code which prohibited the carrying of firearms in public, including a provision prohibiting the carrying of concealed weapons.  This Court dismissed the complaint for failure to state a cause of action.  Plaintiffs appealed and the Seventh Circuit reversed and remanded for entry of relief. The appellate court stayed its decision to give the legislature time to arrive at its own solution.  The Illinois General Assembly amended the statutes and overrode a gubernatorial veto.  On remand plaintiffs indicated that they were not seeking any additional relief on the merits.  Plaintiffs now seek an award of attorney's  fees, claiming to be prevailing parties, even though the case is moot and there has been no judicially ordered relief.

Plaintiffs are seeking fees pursuant to 42 U.S.C. §1988, which allows the court in its discretion to award attorney fees to prevailing parties in certain actions.  The Supreme Court held that parties cannot recover fees under what was known as "catalyst theory." *Buckhannon*, 532 U.S. 598.  Under the "catalyst theory" parties were able to recover fees, notwithstanding the lack of a formal judgment in their favor, if the litigation had caused the defendant to voluntarily change its behavior.  *Id.* at 601.  The *Buckhannon* court found that the term "prevailing party" means a party in whose favor a judgment is entered.  *Id.* at 603. "[E]nforceable judgment on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney fees.'"  *Id.* at 604 (*quoting Texas State Teachers Assn v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989).  A judicial pronouncement that the defendant has violated the Constitution, unaccompanied by judicial relief is insufficient to qualify a party

2

as a "prevailing party." *Buckhannon*, 532 U.S. at 605. Plaintiffs claim that *Buckhannon* should be overruled, but is controlling law at this time.

Notwithstanding the fact that plaintiffs acquired only a judicial pronouncement that the statute violated the Constitution and acquired no judicial relief, plaintiffs also argue that they are prevailing parties even under *Buckhannon*. Plaintiffs rely on individual quotes culled from various opinions, largely without explanation or analysis of the holdings of those cases. Plaintiffs also ignore the holding of contrary controlling authority of which plaintiffs are aware.

Plaintiffs rely on a Ninth Circuit decision for the proposition that, in holding that prevailing party status requires an enforceable judgment, "[T]he Buckhannon Court did not have reason to address how formal a judgment must be." *Citizens for Better Forestry v. United States Department of Agriculture*, 567 F.3d 1128, 1131 (9th Cir. 2009). Although plaintiffs do not mention it, the Court went on to note:

> The Supreme Court provided two "examples" of forms of relief that justify a fee award: enforceable judgments on the merits and settlement agreements enforced through a consent decree. *Buckhannon*, 532 U.S. at 604-5, 121 S.Ct. 1835. While we have identified other situations in which a party can qualify as a prevailing party [a legally enforceable settlement agreement and a preliminary injunction as the sole form of relief], we have never undermined the Court's basic requirement that "some relief" be granted." *Id.*

Plaintiffs also omitted mentioning the holding of *Citizens for Better Forestry,* which is factually indistinguishable from the instant case. That case found that the plaintiffs were not prevailing parties and reversed an award of attorney's fees. Plaintiffs brought the action seeking declaratory and injunctive relief with respect to a forestry rule promulgated by the USDA. *Id.* at 1129. The district court dismissed the action based upon standing and ripeness and the court of appeals reversed. *Id.* at 1129-30. In reversing, the Ninth Circuit held that the rule had been promulgated in violation of the National Environmental Policy

Act[1], and remanded for a ruling on the plaintiffs' motion for injunctive relief.  *Id.* at 1130.

Before the district court could consider injunctive relief, the USDA withdrew the rule and the

case was dismissed as moot.  *Id.*  In finding that plaintiffs were not prevailing parties, the

court noted that the plaintiff had not received any formal relief.  *Id.* at 1133-34.  In discussing

its prior decision that the rule had been improperly promulgated, the court stated, "[a]

favorable determination on a legal issue, even if it put the handwriting on the wall, is not

enough by itself.  A 'favorable judicial statement of the law' as [plaintiffs] obtained here,

cannot substitute for 'a form of judicial relief,' such as a declaratory judgment.  *Id.* at

1133(citing *Hewitt v. Helms*, 482 U.S. 755 (1987)).

     In *Hewitt.*, the district court granted summary judgment for defendants.  On appeal,

the Third Circuit reversed, finding that the defendants had violated the plaintiff's

constitutional rights.  *Id.* at 758.  After a stop in the Supreme Court to address another issue,

the case was remanded to the district court, which granted summary judgment to defendants

on the basis of qualified immunity.  *Id.*  The Supreme Court held that, to be a prevailing party,

a plaintiff must obtain some relief on the merits.  *Id.* at 759-60.  The Court noted that neither

a consent decree, nor a final declaratory judgment, injunction, or damage award had been

entered.  *Id.*  The Court found that the appellate court holding that plaintiff's rights were

violated could not be considered a declaratory judgment, because among other things the

defendant had to be given an opportunity to raise equitable defenses to a declaratory

judgment.[2]  *Id.* at 762-63.

---

[1]This was a basis on which the plaintiffs had challenged the rule.  *Citizens for Better Forestry v. United States Department of Agriculture*, 341 F.3d 961 (7th Cir. 2003).

[2]The Court noted the availability of fees without a judgment through the catalyst theory, but found this plaintiff could not rely on this theory because he had been

4

Plaintiffs do not cite *Hewitt*.  Instead they cite the one paragraph decision in *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000) for the proposition that "A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot a case after plaintiff has obtained the relief he sought."  *Id.* at 1000-01. Plaintiffs fail to acknowledge that *Young* predated *Buckhannon*, so that the catalyst theory was available; that the plaintiff in *Young* had obtained an enforceable injunction granting all the relief he sought; that the Seventh Circuit later narrowed the scope of *Young*; or that the court eventually rejected the proposition that a defendant cannot avoid fees by the mooting of a case after a finding of liability.

*Young* involved a case where the court granted injunctive relief to allow plaintiffs to protest at the Democratic convention in 1996.  *Id.*  The city waited until after the convention to appeal the injunction and the appeal was dismissed as moot.  *Id.*  The city then objected to fees. Thus, unlike the present case, the *Young* plaintiffs had obtained the relief they sought through an enforceable injunction.  The Seventh Circuit later explained, "In *Young* the litigation had manifestly come to an end despite the lack of a final judgment on the merits.  Furthermore, our decision in *Young*  was closely connected to our impression that the City deliberately had 'waited until the convention was over' in order to moot the case 'before a definition determination of its merits.'"  *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005).  In contrast, plaintiffs herein got relief through legislative action, not a court order.

The Seventh Circuit later held that, attorney's fees were not appropriate when a case became moot after summary judgment for plaintiff and before final judgment.  *Zessar v. Keith*, 536 F.3d 788 (7th Cir. 2008).  In that case a class action complaint was filed

_____

released and could not benefit from the alteration of defendants' behavior. *Buckhannon* later invalidated this theory.

challenging the fact that absentee voters whose ballots were rejected were not given an opportunity to challenge the rejection.  The court entered summary judgment for plaintiffs. *Id*. at 791.  The court held that the plaintiffs were entitled to injunctive relief and directed the parties to file proposed procedures.  *Id*.  While the court was considering the proposals, the legislature amended the statute.  The court refused to dismiss the case as moot, entered a declaratory judgment that the prior act was invalid, and held that the plaintiff was a prevailing party entitled to fees.  *Id*. at 792.

The Seventh Circuit reversed the declaratory judgment, finding that the case was mooted by the statutory amendment.  *Id*. at 793-95.  In rejecting the plaintiffs' claim for fees, the court held that the summary judgment order was not an enforceable judgment, because the defendants were not directed to do, or refrain from doing, anything.  *Id*. at 797.  While plaintiffs have lifted a quote from *Zessar*, they do not mention the holding, which is controlling law on the question before this Court.  The *Zessar* court distinguished at length the opinion in *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004), one of the cases on which the plaintiffs rely.  In *Palmetto Properties*, the plaintiff challenged the validity of an ordinance prohibiting him from opening an adult business.  *Id*. at 543.  The proposed business was 735 feet from a forest preserve, rather than the 1000 feet required by ordinance.  *Id*. at 545.  The district court entered summary judgment, finding that the zoning requirements were  invalid and violated the First Amendment because they were not narrowly tailored and did not leave open alternative means of communication.  *Id*. at 547. The court declared the ordinance unconstitutional.  *Id*.  The defendants informed the court that they would not appeal and asked the court to delay entering a final order until after they could amend the ordinance.  *Id*.  After the ordinance was amended and the plaintiff was free to open his nightclub, the court dismissed the case as moot, but awarded the plaintiff fees.

*Id.* The Seventh Circuit affirmed.

The *Zessar* court found that *Palmetto* was distinguishable. The court noted that both cases involved situations where, after finding a statute unconstitutional, the district court did not enter final judgment before the challenged provision was amended or repealed. *Zessar*, 536 F.3d at 796. The court added:

> This situation gives the plaintiff a hurdle to overcome if he is to show that he is a prevailing party because the Supreme Court has repeatedly held that, other than a settlement made enforceable by a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party. 536 F.3d at 796.

The *Palmetto* court found that there was sufficient finality to the summary judgment order because the ruling "was succinct and easily enforceable - the forest preserve provision was unconstitutional and the defendants were enjoined from enforcing it." *Zessar*, 536 F.3d at 797. Moreover, all parties were in agreement regarding the finality of the court's decision as evidenced by the defendant's statement of its intention not to appeal and its request for a continuance to amend or repeal the challenged provision. *Id.* The district court case in *Zessar* lacked such finality because the terms of any injunction had not been decided. *Id.* Accordingly, there was no way to enforce the *Zessar* decision, because the defendant had not been ordered to do, or refrain from doing, anything. *Id.* "The lack of enforceable terms and disputed nature of the district court's partial summary judgment order distinguish it materially from that in *Palmetto*." *Id.* Furthermore, unlike the plaintiff in *Palmetto,* who achieved the repeal of the only obstacle to his nightclub, the plaintiff in *Zessar* tried to challenge the new statute. *Id.* Accordingly, like in the instant case, the plaintiff in *Zessar* did not believe the case was over upon the amendment of the ordinance[3]. *Palmetto* must be

---

[3]Even if plaintiffs had not disputed mootness, both this Court, in denying the motion to dismiss, and the Seventh Circuit, in noting that the law was still on the books

7

read in conjunction with cases that normally require a final judgment or consent decree to be termed final. *Id.* at 798.

Another case where the court found sufficient finality, without a final order, was *National Rifle Association v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011). After the United States Supreme Court held that the Second Amendment barred a federal ban on the possession of handguns in the home, suit was brought challenging similar bans by Chicago and Oak Park. The suits were dismissed on the basis that the Second Amendment did not apply to the States and the Seventh Circuit affirmed. The United States Supreme Court granted *certiorari* and held that the Second Amendment applied to states. *Id.* at 993. After the Supreme Court decision, both defendants repealed the offending ordinances. *Id.* The Seventh Circuit found that the case had the finality necessary to make the decision final. The only question in that case, whether the Second Amendment applied to the states, had been definitively answered by the final arbitrator of such questions and nothing remained except for the court to enter an injunction prohibiting the cities from enforcing their prohibition on possession of handguns in the home. *Id.* at 994. Only this ministerial act remained undone at the time the ordinances were repealed. The *National Rifle Association* decision is, therefore, distinguishable from the present case for precisely the same reason as *Palmetto*.[4]

---

and being enforced, recognized that the litigation was not over. *See infra.*

[4] Plaintiffs also lift a quote from *Southworth v. Board of Regents of University of Wisconsin System*, 376 F.3d 757 (7th Cir. 2004). In that case, the district court, after remand by the United States Supreme Court, entered final judgment and an injunction in favor of plaintiffs. *Southworth v. Board of Regents of University of Wisconsin System*, 307 F.3d 566, 571 (7th Cir. 2002). Defendants appealed and the Seventh Circuit affirmed in part and reversed in part. *Id.* at 763-64. That was the last decision on the merits. *Id.* at 764. Plaintiffs, thus, obtained a final order and injunction granting part of the relief they sought. The issue concerned the defendants' claim that the plaintiffs were not prevailing

In the cases where the Seventh Circuit has found finality, without a final order, there was nothing left to be done except enter a final order granting injunctive relief. The terms of the final order that would be entered were definite and known without the final order. In *Palmetto*, the court had to merely enter an order enjoining enforcement of the provision regarding proximity to a forest preserve, which was the only part of the ordinance held unconstitutional. 375 F.3d at 546.

In *National Rifle Association*, the only thing remaining to be done was to enjoin the prohibition on possession of handguns in the home. That was the only issue in the case and the right to this relief had squarely been decided in *District of Columbia v. Heller*, 544 U.S. 570 n(2008) and *McDonald v. City of Chicago*, __ U.S. __, 130 S.Ct. 3020 (2010). *National Rifle Association*, 646 F.3d at 993. Thus in *Palmetto* and *National Rifle Association* all that remained to be done was performance of a ministerial act, entry of formal judgment the terms of which were known.

The litigation in the present case was not over before the legislation mooted the issue by amending the statutes. First, the time for filing a petition for a writ of *certiorari* had been extended to July 22, 2013. *See* Exhibit #1. Thus, had the legislature not amended the statutes the option of appealing the decision of the Seventh Circuit was available.

Second, the form of any relief to be granted by this Court had never been decided. Notwithstanding, plaintiffs' assertion that "[w]ithout question, the Seventh Circuit ordered a change in the parties' legal relationship, which achieved plaintiffs' litigation goal," that court, in fact, ordered nothing. The court remanded for this Court to determine relief. While the Seventh Circuit held that the prohibition of all public possession of operable firearms on all

---

parties because the judgment had not caused the defendants to alter their behavior in a manner that benefitted the plaintiffs.

streets and other public places was unconstitutional and ordered a remanded for entry of declaratory and injunctive relief, the Court did not mandate any specific form of injunctive relief.  The Seventh Circuit did not require, or even authorize, this Court to simply strike the statutes in their entirety without any regulation by the State, which was the relief sought by the plaintiffs.  In fact, the Seventh Circuit later termed such relief "unreasonable." *Shepard v. Madigan*, 734 F.3d 748, 750 (7th Cir. 2013).  If there was any question of the scope of the opinion whe it was issued, there is not now.  The Seventh Circuit, itself, recognized that the litigation was not over at the time of remand.   In discussing the effect of its decision, the Court stated, "The invalid law lives on. It will continue to be enforced until the new law is implemented by the making of the [concealed carry] license applications available to the public with a 90-day deadline for processing each application." *Id.*  That was the very reason this court denied the motion to dismiss as moot.  *Moore v. Madigan*, 2013 WL 5587289 (C.D. Ill. 2013).

As noted in the dissent from the denial of rehearing in the Seventh Circuit, there are numerous manners in which the State of Illinois may constitutionally regulate the possession of weapons outside the home, limiting the type of weapons that may be carried in public, the public places in which weapons can be carried, and the persons who can carry weapons in public. *Moore v. Madigan*, 708 F.3d 901 (7th Cir 2013)(Hamilton, J., dissenting).  In fact, the *Moore* Court noted, "[A] state may be able to require 'open carry' - that is, require persons who carry a gun in public to carry it in plain view rather than concealed." *Moore v. Madigan*, 702 F.3d 933, 938 (7th Cir. 2012); *see also Heller*, 554 U.S. at 626.

Once a federal court has found a constitutional violation, any injunctive relief must be tailored to the extent of the violation.  *Al-Alamin v. Gramley*, 926 F.3d 680, 685 (7th Cir. 1991); *see also Lewis v. Casey*, 518 U.S. 343, 359-60 (1996).  Any remedy must be narrowly

tailored. *Al-Alamin v. Gramley*, 926 F.3d at 685. "The power of federal courts to restructure the operation of local and state governmental entities is not plenary." *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 419-20 (1977) (school desegregation case). "Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Id.*

Thus, without legislative action, this Court would need to have fashioned a remedy, including determining whether there were places where, and persons against whom, the State could lawfully enforce its statutory prohibitions. Because the issue in both this Court and on appeal concerned the merits of plaintiffs' claim, neither side has had an opportunity to be heard on the scope of the relief to be awarded. If the case had reached that point, defendants would likely have urged the Court to follow the track of *Zessar* and ask the parties for proposed remedial plans. Because the State possesses regulatory power in this area, even after the *Moore* decision, the Court would have to consider the extent to which the statutes in question could lawfully be applied and balance public safety concerns. In any event, the question of relief was undecided when the case was remanded and, accordingly, the case falls squarely under the holdings of *Hewitt* and *Zessar*, which mandate a finding that plaintiffs are not prevailing parties.

*Zessar* held that, to be a prevailing party, a plaintiff must obtain some relief on the merits. Because the court, after declaring the statutes unconstitutional, was still weighing the proposed remedial plans, "[t]here was no way to enforce [the] grant of partial summary judgment because the defendants were not directed to do, or refrain from doing anything." *Zessar*, 536 F.3d at 797. "The lack of enforceable terms and disputed nature of the district court's partial summary judgment order distinguished it materially from *Palmetto*." *Id.* at 788.

This presents the exact posture of this case. Defendants were not ordered to do, or

11

refrain from doing, anything.  The terms of any relief had not been fashioned.  Like the unsuccessful plaintiff in *Hewitt*, all plaintiffs received was an appellate court opinion which did not grant relief against the defendants.  Such a judicial pronouncement of liability, without relief, is insufficient to make a plaintiff a prevailing party.  *Buckhannon*, 532 U.S. at 605.  As the *Zessar* Court noted, at the time the legislature amended the statute, "it was still acting on its own volition in response to the proceedings in the lawsuit."  536 F.3d at 798.  This case is indistinguishable from *Zessar* and that decision mandates a finding that plaintiffs are not prevailing parties.  They received no enforceable order or consent decree.  Defendants were never restrained or compelled in any fashion to alter their behavior to plaintiffs' benefit.  Accordingly, plaintiffs' motion for attorney fees should be denied.

**B.   DEFENDANTS ARE NOT ESTOPPED FROM DENYING THAT PLAINTIFFS ARE PREVAILING PARTIES**

Plaintiffs contend that the defendants are judicially estopped from denying that they are prevailing parties because, in asking the Seventh Circuit to stay its mandate for an additional 30 days, defendants stated that they wished to avoid a circumstance in which there is no law in place governing the carrying of guns in public places and that such a result would harm the public.  Plaintiffs argue that, defendants were seeking to "delay the inevitable" because an injunction would have issued.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion.  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  The Supreme Court has noted that for the doctrine to be appropriately invoked, the two positions must be "clearly inconsistent."  *Id.*  The Court should also ask "whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was mislead."

12

*Id.* A third consideration is whether a party would derive an unfair advantage. *Id.* A party can resist application of the doctrine by demonstrating that its earlier position was based on a mistake. *Id.* at 753. Judicial estoppel does not ordinarily apply to states. *Id.* at 755-56.[5] While acknowledging this, the Supreme Court did apply it to a suit between two states, "in which each owes the other a full measure of respect." *Id.* at 756.

Defendants have not taken two position that are "plainly inconsistent." Defendants do not now dispute that, had the legislature not amended the statute, this Court would have granted declaratory and/or injunctive relief in accordance with the directions of the Seventh Circuit. While defendants do not now, and did not previously, believe that it was inevitable that the Court would simply have enjoined enforcement of the law, rather than enter more narrow relief, that was the relief sought by plaintiffs. Defendants' position here is that relief was never formally entered. That is not inconsistent with any former position.

Further, plaintiff does not contend that any court was mislead by any position the defendants have taken. Plaintiffs cannot point to anything which would show that the Seventh Circuit was convinced to adopt a position inconsistent with the position now taken by defendants. The Court granted a 30 day extension without analysis.

The doctrine of judicial estoppel only applies to parties which have "prevailed" in prior proceedings. *Wells v. Coker*, 707 F.3d 756, 760-61 (7th Cir. 2013). Defendants unfortunately, did not prevail in the applicable proceedings. While defendants dispute that plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. §1988, they do not contend that defendants prevailed. Plaintiffs have cited no authority for extending the doctrine of judicial estoppel from positions taken on dispositive questions before the court to a search

---

[5]An official capacity suit, like the present one, is a suit against the state. *Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012).

for inconsistencies made in every procedural motion asking for an extension of time.  Plaintiff is asking the Court to elevate gamesmanship above the merits.

The doctrine of judicial estoppel does not apply in this case because none of the three factors outlined in *New Hampshire* weigh in favor of application of the doctrine, because defendants did not prevail on a theory and then switch positions, and because the doctrine does not generally apply to states.

## C.  FACTORS TO CONSIDER FOR ASSESSING FEES IF PLAINTIFFS ARE PREVAILING PARTIES

Defendants do not concede that plaintiffs are prevailing parties.  However, should this Court disagree, it may determine the reasonable fees to award.

Thus, for purposes of argument only, defendants object to the rate of counsel and the hours spent on the bases that they are neither reasonable nor appropriate.  As such, should this Court determine that some fees should be awarded, defendants request that the fees be reduced and that some of the costs should be reduced or denied.

### 1.    The Lodestar

In determining what attorney's fee award is appropriate, the starting point is the lodestar.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Id.* at 433.  This fee must be determined to be reasonable in light of market rates and market practices such that the fee would be deemed reasonable, if billed by an attorney to his own client. *Id*., at 434; *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989).

When calculating attorney's fees, the reasonable hourly rate is to be derived from the market rate for the services rendered.  *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003).  The attorney's actual billing rate for similar litigation is presumed to be the appropriate

14

market rate in a fee-shifting case.  *Denuis v. Dunlap*, 330 F.3d at 930.

      The starting point for determining an attorney's market rate is his opportunity cost; that is, the rate the attorney could have received from a client whom he charged by the hour for the same type of work.  *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996).   Any hours claimed that the court believes are based upon inaccurate or misleading records should be excluded.  *Abkowicz v. West Bend Co.*, 789 F.2d 540, 550 (7th Cir. 1986).

      The best evidence of an attorney's market rate is his or her actual billing rate for similar work.  *Johnson v. GDF, Inc.,* 665 F.3d 927, 933 (7th Cir. 2012).  The court must look to the rate the attorney actually charges his paying clients.  *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992).  In any determination of the rate to be used for attorneys, the court should use the market rate.  *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999).  The rate attorneys charge their paying clients is presumptively the market rate.  *Id.*  Those fees, however, are capped at the prevailing rate in the community for comparable attorneys.  *Cooper*, 97 F.3d at 920.  Only if the court is unable to determine an actual billing rate for plaintiffs' counsel, the court should look to the next best evidence of the market rate, which includes the rate charged by other attorneys in the area.  *Muzikowski v. Paramont Pictures* Corp., 477 F.3d 894, 909 (7th Cir. 2007); *Uphoff*, 176 F.3d at 407. While it is proper to look to the rates charged by other lawyers, this is to establish a cap upon the allowable rate set at the prevailing market rate.  *Cooper*, 97 F.3d at 920.  Thus, plaintiffs' counsel is presumptively entitled to the rate he would charge his paying clients, but no more than the prevailing market rate.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

      *Cooper* and *Barrow* establish that the market rate for an attorney is set at what he can collect from a paying client.  "Judges have to be careful when they are spending other

people's money." *Cooper*, 97 F.3d at 920.  Thus, the market rate is set at what a client will pay willingly, not what the taxpayers are billed in another case.  *Id.*  Reasonable fees pursuant to 42 U.S.C. §1988 are to be calculated according to the prevailing market rates in the relevant community.  *Blum v. Stenson*, 465 U.S. at 895.

The fee applicant bears the burden of producing satisfactory evidence that the requested rates are similar to those in the prevailing community.  *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011). Plaintiffs bear the burden of producing satisfactory evidence "in addition to the attorney's own affidavits" that the requested rates are in line with those prevailing in the community."  *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011).  The Seventh Circuit has indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys. *Id.*  "If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate."  *Id.*  The prevailing community represents the place where the parties engaged in the litigation, not where the attorneys representing the plaintiffs reside.  *See Perdue v. Kenny A*., 559 U.S. 542, fn.7 (2010)(attorneys from New York and Washington, D.C. represented claimants in Atlanta, Georgia, and the court noted that the district court determined the lodestar to be "'eminently fair and reasonable' and 'consistent with the prevailing market rates in Atlanta for comparable work.'")

However, if the actual hourly billing rate is not available, the "next best evidence" of the market rate is 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work."  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).  Although fees may not be capped at a percentage of the plaintiff's

recovery in a judgment, a court may base fees on the percentage of the lawyer's bill. *Richardson v. City of Chicago*, 740 F.3d 1099, 1102 (7th Cir. 2014).  In determining which method to use, the court should "provide a concise but clear explanation of its reasons for the fee award."  *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 776 F.2d 646, 658 (7th Cir. 1985).

Here, plaintiffs' counsel have responded to interrogatories.  In their responses, each attorney claims that he does not, regularly and customarily charge his clients one hourly rate and that he does not handle exclusively constitutional cases, but rather they each handle other types of matters.  Each attorney also has responded that he has an arrangement with the plaintiffs  to bill at a set rate.  *See* Answers to Interrogatories 1, 2, 3.  Attorney Gura is billing for this litigation at a rate of $300 per hour.  Attorney Sigale is billing at a rate of $250 per hour.  Attorney Jensen is billing at a rate of $250 per hour.  This is the rate that the Court should use in awarding fees, if any fees are awarded.  Plaintiffs' counsel have demonstrated that they are willing to accept this rate from a paying client in this case.

The Seventh Circuit has held that, "the best evidence of the value of the lawyer's services is what the client agreed to pay him."  *Assessment Technologies of Wisconsin, LLC v. Wiredata, Inc.*, 361 F.3d 434, 438-39 (7th Cir. 2004).  In the case, the Seventh Circuit adopted the view of the Third Circuit that "controlling weight" must be given to the retainer contract, "in the sense that the contract places a ceiling on what the court can award the lawyer."  *Id.* at 439, (relying on *Lieb v. Topstone Industries*, 788 F.2d 151, 156 (3d Cir. 1986).  The court distinguished situations in which the parties have an agreement for a contingent fee that results in a fee lower than market rate.  *Assessment Technologies,*

17

361 F.3d at 439, *see also JCW Investments, Inc. v. Novelty Inc.*, 482 F.3d 910, 921 (7th Cir.

2007).  While *Assessment Technologies* was a copyright case, this principle has been cited

in cases under Title VII, and ERISA.  *Tate v. Ancell*, 2012 WL 2521614 (S.D. Ill. 2012);

*Hines v. Hartford Insurance Co.*, 2012 WL 6004149 (S.D. Ill. 2012).[6]

These are also the rate counsel have charged for similar second amendment cases.

Plaintiffs are asking the Court to award fees based on a rate of $640 an hour for Gura (a

rate he says he began charging for commercial litigation in 2014 after the work in this case

was over); $450 an hour for Jensen (a rate he claims that he charges for complex

litigation[7]; and $500 an hour for Sigale (a rate which he charges no paying clients).

Plaintiffs have offered no evidence of the rates in this community.  *Gura* attached

documents from the internet with no foundation as to how the information was obtained or

the type of work involved.  Even if this was proper evidence, it does not reflect rates in the

community.  Plaintiffs' other evidence relates to fee awards in cases that have no bearing"

on the rate in this community.

Plaintiffs were asked to produce the contracts they had with their respective clients.

Plaintiffs refused to do so, claiming that the information was protected by the attorney-

client privilege.  However, fee information is not protected by such a privilege.

A privilege extends to confidential communications between a client and his attorney

for the purpose of obtaining legal assistance.  *Fisher v. United States*, 425 U.S. 391, 403

---

[6]The Supreme Court has held that the definition of "prevailing party" varies depending on the statute involved.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  The undersigned could find no authority that the loadstar analysis also depends on the wording of these statutes.

[7]While the issue in this case may have been novel, this single issue case raises only a question of law cannot be termed "complex litigation."

(1976).  Because that privilege is in derogation of the search for the truth, it is limited to "only those communications which reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance."  *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)(internal quotation marks and citations omitted).  "The attorney-client relationship does not create a 'cloak of protection draped around all occurrences and conversations which have any bearing , direct of indirect, upon the relationship of the attorney with his client.'" *In re: Subpoenaed Grand Jury Witness*, 171 F.3d 511, 513 (7th Cir. 1999), *quoting United States v. Goldfarb*, 328 F.2d 280, 281-82 (6th Cir. 1964).  Because attorney's fees are incidental to the substance of representation, they are not privileged.  *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013).  "[A]s a general principle, . . . 'information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and client.'" " *In re: Subpoenaed Grand Jury Witness*, 171 F.3d at 513.  The "proper invocation of the privilege is limited to that which is necessary to achieve its purpose, which is to protect confidential disclosures made within the context of an attorney-client relationship."  " *In re: Subpoenaed Grand Jury Witness*, 171 F.3d at 513, *citing Fisher v. United States*, 425 U.S. 391, 403 (1976).

In *In re: Subpoenaed Grand Jury Witness*, 171 F.3d 511 (7th Cir. 1999) and in *In the Matter of Grand Jury Proceeding*, 898 F.2d 565 (7th Cir. 1990), the appellate court found that if disclosure of the fee information reveals the client's motive for seeking legal advice or conveys the substance of a confidential communication, a special exception may exist to withhold the fee information.  However, in both of those cases, the attorney who sought to withhold the fee information first obtained an *in camera* review of the fee information and

facts which supported the argument to withhold the discovery.

In this case, plaintiffs' counsel have refused, on the grounds that the information is protected by the attorney-client privilege, to provide any documentation of fee agreements that they have with their clients.  No such privilege exists.  Thus, plaintiffs have failed to meet their  burden of producing satisfactory evidence that the requested rates are similar to those in the prevailing community.  To the contrary, the affidavits of attorneys in the Springfield, Illinois, area who have experience and practice constitutional law in the United States District Court for the Central District of Illinois are evidence that the appropriate market rate for Kaufmann is $140 to $295 per hour and for Reed is $175 to $225 per hour, although both attorneys charged $200 per hour for civil litigation involving constitutional issues in the U.S. District Court for the Central District of Illinois.  *See* Affidavits of Kaufmann and Reed.  These rates are consistent with the rate that plaintiffs were actually billed in this case.  Accordingly, plaintiffs actual billing rate should be used.

## 2.      Claims Upon Which Plaintiff Does Not Prevail

When awarding attorney's fees pursuant to 42 U.S.C. §1988, the appropriate fee is the market rate for legal services reasonably devoted to the successful portion of the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (2003).  A prevailing plaintiff is not entitled to fees for time expended pursuing unsuccessful claims that were unrelated to those claims on which the plaintiff ultimately prevailed.  *Hensley*, 461 U.S. at 434. "[U]nrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.".  *Hensley*, 461 U.S. at 434-35.  Thus, a reduction of a fee award is appropriate on claims raised in which the plaintiff was unsuccessful.  *Estate of Borst v. O'Brien*, 979 F.2d 511, 516-17 (7th Cir.

20

1992).  In reducing such an award, the district court may "identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

When a fee petition is vague or inadequately documented, the court may strike the entries or reduce the proposed fee by a reasonable percentage.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000).  If the lawyer's billing records do not indicate the time  allocated between successful and losing claims, the court may estimate the time spent on unsuccessful claims and reduce any fee award accordingly.  *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014).  Thus, where an attorney clusters or groups several different activities into one description making it impossible to determine the individual activities" to determine whether the time spent was reasonable, it is appropriate to reduce entirely or estimate that portion upon which the plaintiff was successful.  *Harper*, 223 F.3d at 604.

Plaintiffs filed a motion for a preliminary injunction asking that this Court enter a preliminary injunction restraining defendants from enforcing state laws that prohibit plaintiffs' "and other persons qualified to possess firearms" from carrying firearms in public.  This motion was denied.  The filing of this motion did not contribute to any relief on the merits.

Furthermore, the Seventh Circuit's ruling on the merits cannot be deemed a rejection of the denial of a preliminary injunction by this Court.  The Seventh Circuit has not held that the State of Illinois cannot prohibit concealed weapons or otherwise regulate the possession of firearms in public, even by those authorized to possess firearms.  In fact, even after the *Moore* decision, the Seventh Circuit held that a request for such a broad

21

injunction was "unreasonable." *Shepard*, 734 F.3d at 750.  If a request for such relief was unreasonable after the *Moore* decision by the Seventh Circuit, is was even more unreasonable as a request for a preliminary injunction.  Accordingly, plaintiffs should not recover attorney fees for the time spent preparing the preliminary injunction motion and memorandum, preparing for a hearing on the motion, traveling to that hearing and arguing the motion.  Because the request was unreasonable and did not contribute to the award of any relief, this motion served only to unnecessarily increase litigation expenses.

Plaintiff should also be denied time for their objection to dismissal of the case as moot after the Seventh Circuit decision and travel to and participation in the status conference that resulted from the denial of the motion to dismiss.  While the Court denied the motion to dismiss, it did so because of the possibility that plaintiffs could obtain some sort of relief on the merits.  If plaintiffs were seeking additional relief and these post remand proceedings contributed to the award of such relief, the time would be appropriately included in a motion for attorney fees. Plaintiffs were not, however, seeking any additional relief.  Thus, those post remand proceedings did not contribute to any relief and only served to increase litigation expenses without any benefit to plaintiffs.

The same is true with respect to time spent monitoring or reviewing the filings in the second Shepard appeal.  Plaintiffs were seeking no more relief on the merits and this time did not contribute to this case.  While counsel was naturally curious about the status of the companion case, the satisfaction of this curiosity would not be billed to a client as part of this case in the exercise of billing judgment.

Further, David Jensen has clustered or grouped several activities each day.  It is apparent from the brief explanations for each entry that some of these activities are not

related to successful claims, are secretarial in nature, or are not related to the litigation (*i.e.*, they are related to legislative matters).  For these reasons, the award should be reduced.

### 3.    Adequate Documentation

The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed*.  Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Where the documentation of hours is inadequate, the court can reduce the award accordingly. *Id.* at 433.  Incomplete or imprecise billing records preclude any meaningful review by the district court and therefore should be reduced.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *Greenfield Mills, Inc. v. Carter*, 569 F.Supp.2d 737, 760 (N.D. Ind. 2008).  Estimation of time which may be awarded in a fee petition is inevitable, if the records provided do not demonstrate an allocation of hours spent on winning and losing claims.  *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014).

When a losing claim seeks different or additional relief, a judge may estimate how much time should be discounted.  *Richardson*, 740 F.3d at 1103.  However, as an alternative, if such an attempt would be futile, the district court judge may "make an across-the-board" reduction that seems appropriate in light of the ratio between winning and losing claims."  *Richardson*, 740 F.3d at 1103.

Defendants have noted where plaintiffs provide inadequate documentation.  *See* Exhibit ## Charts 6, 7, 8.  Additionally, defendants object to the time claimed by David Jensen on the appeal from February 8, 2012, to May 10, 2012, when he was terminated as counsel.  Plaintiff failed to provide any documentation to explain what role  David Jensen had in the appeal while he was terminated.

**4.       Duplication and Excessive Hours**

Where the attendance by more than one attorney at the same conference, deposition, court proceeding, or trial is not justified, the fees should be reduced. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1160 (7th Cir. 1989). Counsel for the prevailing party should make a good-faith effort to exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Collaboration that inevitably leads to duplicative work and excessive billing should be reduced. *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.* 574 F.3d 852, 857 (7th Cir. 2009). The court should scrutinize a fee petition carefully for duplicative time. *Jardien,* 888 F.2d at 1160.

In this case, plaintiffs' counsel have duplicated the time they spent on many tasks. For these reasons, defendants have submitted charts proposing reductions for duplicative time requested by plaintiffs' counsel. *See* Exhibit ##6, 7, 8.

Fees also are claimed for preparing press releases and secretarial duties. Such fees are not compensable. In *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994), in denying attorney's fees associated with public relations, the court stated that "[t]he legitimate goals of litigation are almost always attained in the courtroom, not the media." In *Halderman v. Pennhurst State School and Hospital*, 49 F.3d 939, 942 (3d Cir. 1995), the court denied hours related to writing press releases, speaking with reporters, and engaging in public relations with the media. The court stated that "[t]he fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees." In *Greater Los Angeles Council on Deafness v.*

24

*Community Television of Southern California*, 813 F.2d 217, 221 (9th Cir. 1987), fees for lobbying were determined to be properly denied by the district court.

In this case, there are several entries in which plaintiffs claim they engaged in legislative-related functions or matters involving the media.  However, neither of these activities advanced this litigation (they may have advanced plaintiffs' cause, but not the litigation).  These claimed fees also should be reduced.

### 5.  Secretarial Duties Should Not be Included

Tasks that are secretarial in nature, but performed by an attorney or paralegal are not compensable.  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999).  The relevant inquiry is whether the work is sufficiently complex to justify the efforts of a paralegal or attorney, as opposed to someone who is clerical.  *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1315 (7th Cir. 1996).

### 6.  Some Costs Should Not Be Assessed

David Sigale claims costs for unidentified photocopying in the amount of $176.48 on May 29, 2012, and $360.02 on January 25, 2013.  No documentation was provided to substantiate these charges.  Likewise, Sigale seeks to charge $10 for parking in Springfield on August 4, 2011 (presumably for preliminary injunction hearing at which plaintiffs did not prevail) and $10 for parking on January 28, 2013 (although there was no hearing on this date).  Sigale provides no documentation for these charges.  The charge for parking for the preliminary injunction hearing is exorbitant in Springfield, considering that the hearing was less than two hours.  Sigale also seeks to charge $32.00 for parking on June 7, 2011, and $14.00 for parking on June 8, 2011, but provides no documentation to substantiate these charges.

In addition, the defendants should not be required to bear the costs for David Jensen to become admitted to practice in this bar.  David Jensen also claims that he traveled 1904 miles round trip between New York, New York, and Springfield, Illinois, at a rate of $0.55 per mile.  The State mileage rate at the time was $0.51 per mile (*see* Exhibit #9, Boots affidavit) which should be used to calculate the appropriate rate, and Mapquest indicates that the mileage is actually 1834 miles (*see* Exhibit #10, mapquest).  In light of the airplane ticket purchased by Alan Gura, automobile mileage is certainly not the most economical mode of transportation.  As such, this cost should be reduced.

Similarly, some of the charges of Alan Gura are excessive.  For example, the hotel expense in Chicago is higher than the standard State rate, which is capped in Cook County at $130.00 plus tax per night.  Additionally, defendants should not be required to pay the tips provided by Gura for the cab fare and his meals.  The lunch on June 8, 2012, is excessive and the amenities purchased by Gura on June 7-8, 2012, should be reduced to the standard per diem reimbursed to State employees at $8 per quarter or $32 per day for out-of-state travel.  *See* Exhibit #6.

As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)*,* the claim for costs must be supported.  If imprecise billing records are submitted, the costs should be reduced.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000).  For these reasons, the costs as addressed more fully in Exhibits ##6, 7, 8 should be reduced or denied.

### 7.   The Fee Petition

A fee petition "should not result in a second major litigation."  *Hensley v. Eckerhart,* 461 U.S. at 437.  *See also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 654 (7th

Cir. 2011).  Nonetheless, between the three law firms, their lawyers claim to have spent 35.7 hours preparing the fee petitions.  As such, this does not include their unsuccessful attempt to defeat having to provide discovery or their paltry responses to the discovery requests.  Plaintiffs' counsel knew they would claim fees if they prevailed.  The time claimed should have been kept contemporaneously.  At the conclusion of this litigation, it should not take counsel an extraordinary number of hours to draft a fee petition.  As such, the hours claimed should be reduced.

It is impossible to tell from the fee petition what if any time was spent on clerical tasks related to producing time records by nonattorneys.  Further, some of the time is duplicative and excessive.  As demonstrated in Exhibit ##6, 7, 8 if fees are awarded at all, they should be reduced accordingly.

WHEREFORE for the above and foregoing reasons, defendants object to the fee petitions filed by the plaintiffs.  If however, this Court determines that fees are appropriate, defendants object to portions of the claimed fees and respectfully request that the fee petition requests be reduced.

Respectfully submitted,

LISA MADIGAN and HIRAM GRAU
     Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,
     Attorney for Defendants.

Karen L. McNaught, #6200462
Terence J. Corrigan, #6191237
500 S. Second Street
Springfield, IL 62706
Telephone:   (217) 782-5819
Fascimile:    (217) 524-5092     s/Karen L. McNaught_____
tcorrigan@atg.state.il.us     Karen L. McNaught
kmcnaught@atg.state.il.us     Assistant Attorney General

**Certificate of Service**

I hereby certify that on May 5, 2014, I presented the foregoing Defendants' Motion to Dismiss to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

dsigale@sigalelaw.com

david@djensenpllc.com

s/Karen L. McNaught
Karen L. McNaught
Assistant Attorney General