## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 3:11-CV-3134 |
| v. | ) ) | |
| LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR PETITION FOR ATTORNEY'S FEES**

## INTRODUCTION

Notwithstanding Defendants' claim that they needed time to discuss settlement, they did not counter or even discuss Plaintiffs' fee demand, which is one-third what the *Shepard* Plaintiffs are seeking.  Instead, Defendants proceeded directly to taking discovery, the inconvenient results of which they either misrepresent or ignore in the context of a largely frivolous and petty opposition.  Among the more far-fetched arguments:

- Defendants devote half their space to the frivolous argument that Plaintiffs did not prevail in this litigation;

- Without the faintest basis, they question whether counsel even represented the Plaintiffs;

- They offer the billing rates of local insurance defense attorneys who are beholden to the state as comparators, as though this was a case suited to or handled by insurance defense practitioners rather than attorneys with a strong Second Amendment and strategic litigation background;

- Label as "duplicative" every task, such as an email or phone call, that inherently involved the participation of more than one attorney; and

- Raise patently silly objections to the reasonable costs of litigation, such as ordinary tips for cab drivers and waiters and the cost of process servers. Defendants even go so far as to complain that parking garages near the Seventh Circuit, in Chicago, should charge no more than lots in Springfield (a long walk to the appellate argument), and seek to limit counsel's hotel rates to those that, in downtown Chicago, would restrict attorneys who lack the benefit of the state's bargaining power to a hostel.

The Defendants' objections are baseless and made in bad faith, for the sole purpose of harassing Plaintiffs' counsel and dragging out this litigation.  Defendants' counsel may claim to be acting in the taxpayers' financial interest, but their Response makes clear that said interest is secondary to "sticking it" to Plaintiffs' counsel.  In no way does litigating to the mat, without even so much as a phone call or email, over a cab driver's tip, or counsel's cup of airport coffee, save the taxpayers any money, as the forthcoming supplemental fees-on-fees petition will demonstrate.

**ARGUMENT**

**(I)     Defendants' Prevailing Party Argument is Meritless**

Absent the Seventh Circuit ruling (for which its mandate issued), the Firearms Concealed Carry Act would never have been enacted.  Defendants' claim that "plaintiffs herein got relief through legislative action, not a court order," Opp. 5, is farcical.  Legislative action occurred *because the Seventh Circuit struck down the law Plaintiffs challenged.*  Here is how the Seventh Circuit described the outcome of this case:

"[O]ur decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) . . . invalidated provisions of the Illinois gun law . . . ."  *Shepard v. Madigan*, 734 F.3d 748, 749 (7th Cir. 2013). "The panel majority (Judge Williams dissenting) held that so strict a ban—unique among the states—on carrying a gun violates the Second Amendment . . . ." *Id.*  "[W]e held [the law] to be unduly severe."  *Id.*  "[T]he stay of our decision expired, and our mandate, declaring the old law unconstitutional and enjoining it, issued, in accordance with the last paragraph of our opinion." *Id.* at 750. "[T]he provisions of the Illinois gun law that the plaintiffs in this and the companion case challenge have been invalidated."  *Id.*  "We made no order regarding relief except to specify a deadline for the state to enact a new law."  *Id.* at 752.

This case is indistinguishable from *Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011), and analogous to *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542, 549-50 (7th Cir. 2004) ("[i]t would defy reason and contradict the definition of 'prevailing party' under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case--a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance--*Palmetto* somehow did not obtain a 'judicially sanctioned change' in the parties' legal relationship."). Indeed, the legislature recognized that not passing a law before the mandate issued would leave the State without regulation of the carry of firearms. *See* Audio of Senate Floor Debate at 11:30, H.B. 183, May 31, 2013 (cited at p. 18 of Doc. 57).

Defendants attempt to distinguish *NRA* on the ground that the decision there came from the Supreme Court, whereas here, they could still have petitioned for certiorari. *See* Opp. 8-9. Similarly, Defendants attempt to distinguish *Palmetto Properties* on the ground that the parties in that case advised the district court that they would not seek to appeal. *See id.* at 6-7. However, Plaintiffs' prevailing party status does not defend on whether Defendants chose to further appeal or received a further appeal. *Palmetto Properties* itself teaches this, for there the Seventh Circuit observed that its precedents established that "a plaintiff who obtains a favorable summary-judgment ruling, *unchallenged by an appeal*, would qualify for an award of attorney's fees under Buckhannon and 42 U.S.C. § 1988." *Palmetto Props.*, 375 F.3d at 551 (emphasis added). Indeed, a defendant is liable for attorney's fees even when it does seek to appeal, but the appeal fails for technical reasons. *See Kinney ex rel. NLRB v. Fed. Sec., Inc.*, 272 F.3d 924, 925 (7th Cir. 2001); *McCormack v. Zero*, 134 F. Supp. 2d 978, 979 (N.D. Ill. 2001).

Defendants contend (p. 7) that *Zessar v. Keith*, 536 F.3d 788 (7th Cir. 2008), supports their claim that the Seventh Circuit's ruling was not sufficiently final.  But the issue in *Zessar* was the open-ended nature of the district court's order. *Zessar* did not present a situation where, as here, where the court simply needed to enjoin enforcement of specified statutes.  Indeed, the court in *Zessar* distinguished *Palmetto Properties* as a case where "the court's ruling was succinct and easily enforceable – the forest preserve provision was unconstitutional, and the defendants were enjoined from enforcing it." *Id.* at 797.  *Zessar* stands for the proposition that "[w]hen a challenged statute is repealed or significantly amended pending review, and a plaintiff seeks only prospective relief, a question of mootness arises." *Id.* at 793 (quotation omitted).  Here, the statute was live when the Seventh Circuit struck it down.

Defendants' other theories of non-prevailment also fail.  In *Citizens for Better Forestry v. United States Department of Agriculture*, 567 F.3d 1128 (9th Cir. 2008), plaintiffs were not awarded attorney's fees because no court ever considered the preliminary injunction motion the plaintiffs had filed.  The Ninth Circuit ruled on ripeness and standing issues, and then remanded to the District court for initial consideration of that motion.  Before that could happen, the USDA withdrew the challenged regulation. *Better Forestry* plaintiffs never received a ruling on the merits of their claim. *Id.* at 1130.  Plaintiffs here, did.  In *Hewitt v. Helms*, 482 U.S. 755 (1987) plaintiff was denied attorney's fees because he lost the case.  Here, plaintiffs won.

Contrary to Defendants' claim (pp. 2-3), the Supreme Court's decision in *Buckhannon Board & Care Home v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001), is readily distinguished because in *Buckhannon*, there had been *no* court ruling on the merits when the state amended its laws in a manner that mooted the plaintiff's claim – indeed, the lawsuit was still in discovery. *See id.* at 601.

Plaintiffs are prevailing parties because the court "reached a judgment on the merits" even though "the procedural step of entering final judgment" never became necessary. *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005) (construing *Palmetto Properties*).  Contrary to Defendants' arguments, attorney's fees can be recovered "when a case has been declared moot if, prior to the change in circumstances, the court made a decision on the merits in favor of the plaintiff."  *Walker v. Calumet City*, 565 F.3d 1031, 1034 (7th Cir. 2009).

Defendants argue that Plaintiffs are not prevailing parties because the Seventh Circuit "did not mandate any specific form of injunctive relief."  Opp. Br. p. 10.  Defendants erroneously claim that "the relief sought by the plaintiffs" was "simply [to] strike the statutes in their entirety without any regulation by the State."  *Id.*  From this errant premise, they discuss ways in which the State might regulate the carry of guns and conclude that "this Court would need to have fashioned a remedy, including determining whether there were places where, and persons against whom, the State could lawfully enforce its statutory prohibitions."  *Id.* at 10-11. Contrary to Defendants' claim, the relief the Seventh Circuit's decision required was clear:  had the State not established its new law by the deadline, this Court would have needed to enjoin enforcement of the three specific provisions of the Illinois Criminal Code that the Amended Complaint identifies, as to individuals otherwise qualified to possess firearms.  Plaintiffs' suit is specific in identifying three discrete parts of two statutes – 720 ILCS 5/24-1(a)(4), (10) & -1.6(a) – that prohibited the general act of carrying a gun away from one's home.  *See* Amended Complaint (Doc. No. 5) ¶¶ 40-41, 43-45; Prayer (i)-(ii).  And indeed, the Seventh Circuit recognized that it was "720 ILCS 5/24-1(a)(4), (10), -1.6(a)" that were at issue in the case.  *See Moore*, 702 F.3d at 934.  Moreover, Plaintiffs sought relief only in respect of individuals who were otherwise qualified to possess and use firearms in Illinois – that is, those with valid Firearm

Owners Identification ("FOID") cards.  *See* Amended Complaint ¶¶ 1, 12, 15, 20, 23, 44-45;

Prayer (i)-(ii).  Defendants' claim that the Seventh Circuit left it to this Court to enact a scheme

regulating the carry of firearms is wrong.

**(II)   Plaintiffs Achieved Full Success, Not Partial Success**

There is no basis for Defendants' claim that the Court should reduce Plaintiffs' fee award

on the ground that Plaintiffs only achieved partial success.  *See* Opp. Br. pp. 20-21.  Plaintiffs

prevailed on their single cause of action, achieving precisely the relief sought in their suit:  an

end to the State's complete prohibition on carrying guns.  Amended Complaint ¶¶ 3-5.

Defendants' claim for a "partial success" reduction pursuant to *Hensley v. Eckerhart*, 461 U.S.

424 (1983), rests on the errant premise that a motion is tantamount to a separate and independent

claim on which Plaintiffs failed is unfounded.  But even if Plaintiffs' motion were characterized

as "unsuccessful" – which it was not, given the Seventh Circuit's order to issue an injunction on

remand – *Hensley* concerned claims, not arguments.

The standard that governs arguments "is not whether a particular argument was

successful, but rather whether it was *reasonable*."  *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th

Cir. 1998) (emphasis added); *see also Garner v. Wade*, 1998 U.S. Dist. LEXIS 12504, *14 (N.D.

Ill. Aug. 6, 1998) ("the relevant inquiry is whether the motion or argument was reasonable").

Indeed, "[i]f arguments that do not contribute to a plaintiff's ultimate success were not eligible

for compensation for that reason alone, then attorneys might be discouraged from raising novel

but reasonable arguments in support of their clients' claims and a disincentive for strong

advocacy could result."  *Jaffee*, 142 F.3d at 417.

**(III)     Plaintiffs' Counsel Have Established Their Hourly Rates**

Plaintiffs established that their standard billing rates for comparable cases are $640 for Alan Gura, $500 for David G. Sigale, and $450 for David Jensen.  *See* Plaintiffs' Br. pp. 13-14. Defendants' arguments to the contrary merely ignore Plaintiffs' documentation , which both substantiates counsel's hourly rates and also establishes rates in the relevant marketplace.

A.     The Discounted Rates Provided Here Do Not Establish Counsel's Market Rates

Where, as here, lawyers donate their legal services to provide assistance to favored or charitable causes at discounted rates, those lawyers can recover attorney's fees on the basis of their market rates, rather than their discounted rates.  *See* Plaintiffs' Br. pp. 11-12.  Defendants respond by *ignoring* this showing, and instead just arguing that the discounted rates that Plaintiffs' counsel have agreed to provide in this case establish the *ceiling* of their market value and are the most that can be recovered.  *See* Opp. Br. pp. 14-17.  For example, Defendants invoke *Assessment Tech. of Wis., LLC v. Wiredata, Inc.*, 361 F.3d 434 (7th Cir. 2004), a Copyright Act case in which the Seventh Circuit ruled that a court must give "controlling weight" to the fee provided in the retention agreement that governs the representation at issue. *See id.* at 438-39.  But Defendants ignore that this case did not involve attorneys who had agreed to provide their services at a discount in order to support a cause; rather, it was a copyright infringement case in which the rate provided in the retention agreement would be a fair reflection of an attorney's market rate.  *See id.*

Although Defendants might prefer to ignore it, "lawyers who donate their services at bargain rates to legal aid organizations may collect under § 1988 the fees they could obtain if the charitable element were removed."  *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992); *accord Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir. 1993).  For example, when the district court awarded fees on remand in *NRA*, it based its award of attorney's fees not on the

discounted rate that one attorney had provided as a matter of public interest ($225 per hour), but

instead, on the basis of (what the court found was) his market rate ($450 per hour).  *See NRA of*

*Am., Inc. v. Vill. of Oak Park*, 871 F. Supp. 2d 781, 787-88 (N.D. Ill. 2012).

      B.      Plaintiffs' Counsel Have Established their Market Rates

      Contrary to Defendants' claim (p. 17), the declarations and interrogatory responses

establish the rates that Plaintiffs' counsel charge to paying clients.  As Defendants acknowledge

(p. 15), the "starting point" of finding fair market value is "opportunity cost," which is "what that

attorney could earn from paying clients."  *Gusman*, 986 F.2d at 1150.  Defendants also

acknowledge (pp. 15-16) that an attorney's "actual billing rates" are the "best evidence" of his or

her market value.  *See, e.g.*, *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012).

      Defendants ignore the information that Plaintiffs' counsel provided in their declarations

and responses to Defendants' interrogatories – and indeed, they attach only selected pages from

these interrogatory responses.  Plaintiffs submit complete copies of these responses along with

this reply.  These responses identify the fees paid to counsel in specified other matters, and they

also identify prior fee awards – all of which justify the rates that have charged in the present

matter.

      While Defendants object (pp. 15-16) to considering counsels' fee awards from other

cases, the only authority they cite is *Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996), which did not

address prior fee awards at all.  Plaintiffs previously showed, and Defendants have provided no

authority to refute, that "evidence of fee awards that the applicant has received in similar cases"

can be used to establish an attorney's "market rate" when other evidence of an attorney's actual

billing rates is lacking, "such as when the attorney maintains a contingent fee or public interest

practice."  *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *see*

Plaintiffs' Br. p. 12.  Indeed, prior fee awards are among the "next best evidence of an attorney's market rate."  *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999).

Considered in light of the correct governing principles, the evidence shows the fair market value of the services of each of Plaintiffs' counsel:

Alan Gura.  Mr. Gura has billed and collected at his $640/hour rate established for this year, as well as at his previous rate of $600/hour established in 2012.  This information was contained in the discovery responses provided Defendants, which they omitted from their filing, but which are submitted here.  *See* Supp. Dec. of A. Gura ¶¶ 1-4, 8-10 & Exs. 1, 3. Mr. Gura's professional activities supporting this rate have continued since the filing of this fee motion, including publication of a commentary in the *Harvard Law Review Forum*, and joining the faculty of the Georgetown University Law Center as an Adjunct Professor of Law.  *Id.* ¶ 18.

Moreover, Defendants also omitted Mr. Gura's interrogatory responses showing that the only cases in which he provided the reduced rates given SAF here are Second Amendment cases involving SAF as a client, and furthermore, that in the past five years, Gura has not billed on an hourly basis at any rate other than his declared $640 and $600 hour rates.  *Id.* ¶¶ 11-12.  Plainly, Mr. Gura discounted his market rate in this case, because he is committed to the clients' cause of securing Second Amendment rights. And Defendants omitted Gura's discovery response setting forth, again, his highly relevant 2011 award at $539/hour, which reflected an agreed amount, in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).  Supp. Gura Dec. ¶ 13.

Furthermore, as set forth in Mr. Gura's response to interrogatory 1, his fee agreement with the Foundation here expressly stated that the rate charged the Foundation was below

market and that Mr. Gura undertook the representation with the express purpose, as allowed by law, to recover the true market rate upon prevailing. *Id.* ¶ 16. Mr. Gura's high level of experience and expertise in Second Amendment litigation saved Defendants a great deal of money; insurance defense counsel would not have handled this case as effectively, and certainly not as efficiently. *Id.* ¶ 22.

David G. Sigale. Mr. Sigale has had two clients pay him the rate of $500.00/hour. They retained Sigale to investigate and defend them regarding potential criminal actions and/or prosecutions. Since neither individual has been charged with wrongdoing, and Sigale's work has been in an investigatory and research capacity, their identities are withheld due to potential incrimination. *See In the Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 568 (7th Cir. 1990) ("A client's motive for seeking legal advice is undeniably a confidential communication . . . Accordingly, the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice."); *see also Tillotson v. Boughner*, 350 F.2d 663 (7th Cir. 1965). Supp. Sigale Dec. at ¶ 2.

Further, nine individuals have agreed (in signed Retainer Agreements) to pay Sigale's $500.00/hour rate should they face criminal prosecution for certain acts. Due to potential incrimination, their identities are withheld. *See Grand Jury Proceeding, Cherney*, 898 F.2d at 568; *See also Tillotson*, 350 F.2d 663. Sigale Supp. Dec. at ¶3.

Sigale's $500.00/hour rate has three times been agreed upon with governmental entities and approved by United States District Courts, including this District (*Winbigler v. Warren County Housing Authority*, 4:12-CV-4032). The others were the District of Nebraska in *Nino de Rivera Lajous v. Sankey*, 4:13-CV-3070 (D.Neb.), and the District of

New Mexico in *Jackson v. Eden*, 1:12-CV-421 (D.NM).  Sigale Dec. at ¶ 11; Supp.

Sigale Dec. at ¶ 4.

Additionally, Sigale received Section 1988 fees from the State of Arkansas in the

amount of $10,000.00.  Though not listed in the Court's Order, the amount was

specifically based on his demand of 20.0 hours of time at $500.00/hour.  Supp. Sigale

Dec. at ¶5.

The above information is in Sigale's Answers to Interrogatories, as periodically

supplemented, all versions of which are submitted to the Court.

This is the rate at which Sigale should be compensated.  As of this time, said rate is at

or below the market rate for similar work by attorneys of similar expertise, as co-counsel

Alan Gura has demonstrated to the Court.  *See* Exhibits A-E and G of Gura Declaration.

Sigale Dec. at ¶ 12.  It is improper to use the insurance defense bar, or the government

defense bar, as the benchmark by which Sigale's rates are determined, when their

respective areas of practice are very different.  Supp. Sigale Dec. at ¶ 10.

Sigale has lectured on the Second Amendment, as well as the newly-enacted Firearms

Concealed Carry Act, for groups such as IICLE and the Chicago Bar Association.  Sigale

Dec. at ¶ 8; Supp. Sigale Dec. at ¶14.

Since Sigale's serving as co-counsel in *McDonald v. City of Chicago*, a significant

portion of his practice has been focused on Second Amendment issues.  He has

litigated/is litigating Chicago's firing range ban and subsequent regulations, Chicago's

and the Village of Norridge's (outside of Chicago) gun store bans and subsequent

regulations, bans on home firearm possession in public housing (for which he was

awarded $500.00/hour in this District), illegal citizenship requirements for concealed

carry permits in multiple states, appeals of denials of FOID cards and Illinois concealed carry permits, and criminal defense of AUUW charges following the Seventh Circuit's *Moore* ruling. Supp. Sigale Dec. at ¶ 13.

It is this specialized experience and knowledge that enables Sigale to work more efficiently in this matter, thus expending fewer hours to achieve a successful result in this case, and to seek a higher billing rate in these matters as opposed to someone (such as an insurance defense attorney) who does not practice in this area. Supp. Sigale Dec. at ¶ 15.

<u>David Jensen</u>. David Jensen's declaration and interrogatory responses identify specific matters and clients that paid his prior standard hourly rate of $325 - $435 per hour while he worked at large law firms in the New York area. *See* Dec. of D. Jensen (Doc. No. 61) ¶¶ 6-7 & ex. 1 (Jensen Interrogatory Responses) at ¶¶ 2-3. Mr. Jensen's declaration explains that he left these practices so that he could substantially focus his practice on Second Amendment advocacy. *See* Jensen Dec. ¶¶ 10-12. As such, his opportunity cost is the amount charged for an attorney of Mr. Jensen's skill, experience, and reputation in a large law firm. *See id.* ¶¶11-12. In addition, Mr. Jensen's interrogatory responses explain that while this case was pending, he worked as part-time of-counsel at a smaller firm in New York, where his standard hourly rate was $350 per hour. *See* Jensen Interrogatories at ¶¶ 2-3. Finally, Mr. Jensen's interrogatory responses recite the pertinent terms of his retention agreement in this case, which provides a substantial discount, but under which the client has "agreed that reasonable market value" of his service is $450 per hour, has further agreed to share any reduction of Mr. Jensen's market fee *pro rata*. *See id.* at ¶ 1.

Defendants' suggestion that affidavits from Plaintiffs' counsel are insufficient to establish counsel's hourly rates is incorrect.  *See* Opp. Br. p. 16.  An attorney needs to provide evidence "in addition to the attorney's own affidavits" not to establish the attorney's own rates, but rather, when the attorney seeks to establish markets rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 596 (7th Cir. 1999).  And there is competent evidence of market rates in the community.

C.      Plaintiffs Have Established Market Rates in the Relevant Community

While the Court only needs to consider market rates in the relevant community if it is unable to determine the actual market billing rates of Plaintiffs' counsel, *see* Plaintiffs' Br. p. 12; *see also Gusman*, 986 F.2d at 1149, Plaintiffs have shown that the relevant community of Second Amendment litigation is a niche practice that consists of a few specialized attorneys who operate in a nationwide marketplace.  The appropriate "community" for assessing the reasonableness of fees is therefore the community of practitioners on the national market.  *See* Plaintiffs' Br. pp. 12-13 (citing *Jeffboat, LLC v. Dir., OWCP*, 553 F.3d 487, 491 (7th Cir. 2009), and *Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D. Ill. 2013)).  Plaintiffs have also provided evidence showing the market rates within this marketplace, notably the hourly rates that attorneys representing NRA claimed in *NRA v. Chicago* in 2011 – many of which rates, approved by the court, substantially exceed the rates the attorneys in the present case are charging.  *See* Plaintiffs' Br. p. 14 & ex. B; Dec. of A. Gura (Doc. No. 60) ¶ 10.  In addition, Plaintiffs also submitted "Billing Rate Surveys" from the *National Law Journal*.  *See* Plaintiffs' Br. p. 14 & ex. C-E; Gura Dec. ¶ 11.  The rates of Plaintiffs' counsel fall well within these norms.

Defendants' objection (p. 18) that this documentation lacks foundation is baseless. Both court records and periodicals are self-authenticating evidence under FRE 902, and further, Mr. Gura's declaration explains the source of both of these documents. *See* Gura Dec. ¶¶ 10-11. The contents of any of these exhibits – if doubted – could be readily verified, either by checking the *National Law Journal*, or by checking Doc. No. 95 in *NRA of Am., Inc. v. Vill. of Oak Park*, no. 08 CV 3696 (C.D. Ill.).

Defendants also assert that the applicable "community" is "the place where the parties engaged in the litigation, not where the attorneys representing the plaintiffs reside," but Defendants rely solely on footnote 7 in *Perdue v. Kenny A.*, 559 U.S. 542 (2010) to support this contention. *See* Opp. Br. p. 16. Defendants then point to the hourly rates of two Springfield attorneys. *See id.* at 20. However, *Perdue* concerned the circumstances under which a court can increase counsel's compensation to reflect "superior performance and results." *See Perdue*, 559 U.S. at 546. Aside from observing that the pertinent market rate is the one "in the relevant community," *see id.* at 551 (quotation omitted), the decision did not address the determination of this community. The footnote quoted by Defendants served only to recount that the district court had accepted counsel's rate as being "consistent with" local market rates. *See id.* at 557 n.7. Notwithstanding this dicta, the rule is that local geographic rates do not establish the market rates of attorneys that practice in specialized areas on large or nationwide markets. *See, e.g.*, *U.S.A. ex rel. Liotine v. CDW-Gov't, Inc.*, no. 3:05-cv-33, 2013 U.S. Dist. LEXIS 138509, *15-17 (S.D. Ill. May 17, 2013) (False Claims Act); *Olson v. HMS Westpac Express, Inc.*, no. 4:06-cv-154, 2008 U.S. Dist. LEXIS 68750, *10 (S.D. Ind. Sept. 8, 2008) (maritime attorneys).

The two Springfield attorneys offering affidavits are not similarly experienced with Plaintiffs' counsel and are not part of the relevant community. Their backgrounds appear to

reflect insurance and government tort defense, which are saturated fields that do not command

very high rates. *See, e.g.*, Herbert Kritzer, The Commodification of Insurance Defense Practice,

59 VAND. L. REV. 2053 (2006). This is not comparable to formulating and pursuing cases in a

developing area of constitutional law.

Since Plaintiffs submitted their fee petition, the attorneys in *Shepard* submitted their own

petitions for fees, which provides another place that this Court can look to determine reasonable

rates within the community of attorneys handling similar cases. As Defendants acknowledge,

"evidence of rates similarly experienced attorneys in the community charge paying clients for

similar work" is "next best evidence" of reasonable market rates. *See* Opp. Br. p. 16 (quotation

omitted). The fee petition in *Shepard* indicates that the 11 attorneys involved in handling

*Shepard* have hourly rates ranging from $340 to $925 per hour. *See* Dec. Of D. Thompson (Doc.

No. 106-1) at p. 4-9 & 18 (rates of $925, $625, $585, $495, $425, and $355 per hour for 6

attorneys); Dec. of W. Howard (Doc. No. 106-2) at pp. 3-4 (rates of $545-$565, $440, $420, and

$340-$395 per hour for 4 attorneys); and Dec. of S. Halbrook (Doc. No. 106-3) at p. 4 (rate of

$540 per hour), in *Shepard v. Madigan*, no. 11-cv-405 (C.D. Ill.). The rates of Plaintiffs' counsel

in the present case – ranging from $450 to $640 per hour – are well within the marketplace

norms that these submissions reflect.

> D.    The Court Did Not Authorize Requests for Production of Documents

Defendants' claim (pp. 18-20) that Plaintiffs refused to produce retention agreements and

other documents on the ground of privilege is unfounded and irrelevant. The Court's January 7,

2014 text order specifically "allowed [Defendants] to conduct discovery limited to

interrogatories and, if necessary, depositions." This "limited discovery" did not include requests

for production of documents. Accordingly, Plaintiffs responded to Defendants' requests for

production by objecting, correctly, that they were unauthorized.  Defendants do not include

copies of Plaintiffs' actual responses, which Plaintiffs' submit herewith.

No less significant is that Defendants never raised any discovery objection to these

responses since their production on March 3, 2014.  Defendants never asked the Court to grant

them further discovery, nor did Defendants ever request the "good faith" conference required

before moving to compel discovery.  *See* Fed. R. Civ. P. 37(a)(1).  Instead, Defendants have *first*

asserted their objection in a brief they filed two months after receiving the responses.

Defendants' arguments about the scope of the attorney-client privilege (pp. 18-20) are

irrelevant and misplaced.  Plaintiffs asserted the attorney-client privilege only out of an

abundance of caution, to avoid any suggestion of waiver, and then only in response to three

specific requests.  Defendants' attempt at distraction does not get around the fact that Defendants

were not entitled to demand documents – nor are these documents remotely necessary here.

**(IV)    Plaintiffs Have Appropriately Documented their Fee Claim**

Counsels' declarations respond in detail to the various attacks on their time entries, but

discussion of same basic principles is in order here.

Defendants contend that various billing entries are "vague or inadequately documented"

or are otherwise "[i]ncomplete or imprecise."  Opp. Br. pp. 21, 23.  Defendants also object to the

grouping of multiple billing activities from a single day together.  *See id.* at 22.  These objections

are meritless.  All of these bills were submitted to a paying client, who paid them, and when bills

have "the level of detail that paying clients find satisfactory, a federal court should not require

more."  *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (quoting *In re*

*Synthroid Mktg. Lit.*, 264 F.3d 712, 722 (7th Cir. 2001)).  Moreover, in evaluating Defendants'

line-by-line objections, the Court should take note that the charts submitted by Defendants

contain *summaries* of the actual billing entries of Plaintiffs' counsel.  Many of Defendants' objections about vagueness, duplication, inadequate documentation, and insufficient description become baseless when the actual billing entries (previously submitted to the Court) are considered.

      A.      Vagueness

      The billing entries provide an adequate level of detail, especially when viewed in context. The Supreme Court itself has admonished that counsel "is *not* required to record in great detail how each minute of his time was expended" and instead needs only to "identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.12 (emphasis added).  "To require Plaintiffs to outline the exact nature of the research or the substance of the motions would be excessive detail."  *Johnson v. Bd. of Educ.*, 2011 U.S. Dist. LEXIS 58641, *23 (C.D. Ill. Jun. 1, 2011).  The question is whether a fee petition has "set forth a *sufficient* description of the type of work performed."  *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992) (emphasis added).  And a description is sufficient if it is "detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent on the case."  *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2010).  For example, in one case the court found that time entries that referenced only unspecified work on "motions" were impermissibly vague, but that entries from "other attorneys [that] listed the type of motions they were preparing" were adequate.  *See Johnson*, 2011 U.S. Dist. LEXIS 58641 at *23.

      In addition, to determine whether an individual time entry is vague, a court must look "in the context of the surrounding documentation."  *See Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985).  Specific time entries may be "vague when read in isolation," but not when read in the context of the other time entries.  *See id.*  Moreover, the court can also consider additional documentation that counsel provides to respond to objections that Defendants raise in response

to their fee petition.  *See Skelton v. Gen. Motors Corp.*, 661 F. Supp. 1368, 1386 (N.D. Ill. 1987),

*aff'd in part and rev'd in part*, 860 F.2d 250 (7th Cir. 1988).

    B.    Grouped billing entries are permissible

    Contrary to Defendants' objection, "[t]here is nothing inherently wrong with combining

multiple tasks into one entry."  *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009)

(quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 936 (N.D. Ill.

2009)) (alteration omitted).  "Although 'block billing' does not provide the best possible

description of attorneys' fees, it is not a prohibited practice."  *Farfaras v. Citizens Bank & Tr.*,

433 F.3d 558, 569 (7th Cir. 2006).  Indeed, in large cases in which attorneys may be performing

multiple tasks on any given day, "this sort of timekeeping is the norm in the marketplace."

*Phoenix Bond & Indem. Co. v. Bridge*, no. 05 C 4095, 2012 U.S. Dist. LEXIS 173721, *27 (N.D.

Ill. Dec. 7, 2012); *see also* Supp. Jensen Dec. ¶ 3.

    The clustering of activities on an invoice is not problematic if "the entries are detailed

enough to allow the opposing party and the court to determine that the time billed accurately

reflects the time spent on the case."  *Dupuy*, 648 F. Supp. 2d at 1029.  "So long as the billing

statement reasonably sets forth the dates of work, description of work, total hours expended, and

total cost for task, the use of block billing does not preclude an award of fees."  *Chao v. Current

Dev. Corp.*, 2007 U.S. Dist. LEXIS 11653, *7 (N.D. Ill. Aug. 27, 2007).  Indeed, on many

occasions Seventh Circuit courts have awarded attorney's fees on the basis of "block billed" time

entries.  *See Garcia v. R.J.B. Props., Inc.*, 756 F. Supp. 2d 911, 919 (N.D. Ill. 2010) ("counsel's

activities are described in detail and amply justify the number of hours assigned"); *Phoenix

Bond*, 2012 U.S. Dist. LEXIS 173721 at *27; *Eagle Servs. Corp. v. H2O Industrial Servs., Inc.*,

2012 U.S. Dist. LEXIS 111303, *9 (N.D. Ind. Aug. 8, 2012); *Trs. of Teamsters Union Local No.

142 Pension Tr. Fund v. Actin, Inc.*, 2010 U.S. Dist. LEXIS 103434, *22-23 (N.D. Ind. Sept. 28,

2010); *Pace v. Pottawattomie Country Club, Inc.*, 2009 U.S. Dist. LEXIS 117320, *35 (N.D. Ind. Dec. 11, 2009). And Plaintiffs dispute that their billing entries are indeed generally, truly of a "block" nature.

**(V)    Plaintiffs Reasonably Undertook the Activities that Defendants Single Out**

Defendants' picayune objections to specific time entries and litigation activities attempts to split hairs. The test for whether time is compensable is whether it was "reasonably expended" in the litigation, a question essentially of billing judgment. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Plaintiffs are entitled to recover for actions they undertook so long as the actions were "not unreasonable at the time." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996). Plaintiffs easily meet this standard.

A.    Motion for Preliminary and/or Permanent Injunction

Defendants' claim that this motion "did not contribute to any relief on the merits," Opp. Br. p. 21, is simply wrong. This was the only motion that Plaintiffs made for relief on the merits, and it succeeded in putting the keystone legal issue squarely in front of both this Court and the Seventh Circuit. *See generally Thornburgh v. Am. College of Obstetricians and Gynecologists*, 476 U.S. 747, 756-57 (1986) (appellate jurisdiction reaches constitutional questions bound up with the merits of a preliminary injunction). Moreover, the denial of Plaintiffs' motion formed part of the basis of Plaintiffs' appeal to the Seventh Circuit. *See* 28 U.S.C. § 1292(a)(1); *see also Moore*, 702 F.3d at 934 (appeal "challenge[s] denials of declaratory and injunctive relief"). Indeed, Plaintiffs' motion supplied the basis for the relief that the Seventh Circuit granted: a remand with instructions "for the entry of declarations of unconstitutionality and permanent injunctions." *Moore*, 702 F.3d at 942. The Seventh Circuit would not have been able to grant this relief had Plaintiffs not moved for an injunction and then appealed its denial. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999).

-19-

B.      Responding to Defendants' Motions to Dismiss

Defendants contend that Plaintiffs should not recover fees for responding to their motion to dismiss following the Seventh Circuit's remand because "post remand proceedings did not contribute to any relief and only served to increase litigation expenses without any benefit to plaintiffs." Opp. Br. p. 22. Again, Defendants cite no authority to support their argument. While it was clearly *reasonable* for Plaintiffs to respond to the motion that Defendants chose to bring, Defendants' argument ignores that it is Defendants' own actions that have caused this expense. Even though Plaintiffs stated that the only remaining issue in this case was their claim for attorney's fees, Defendants insisted on bringing two motions to dismiss, one of which is currently pending. It may have been unreasonable to bring these motions – they did indeed contribute nothing and serve only to increase costs – but it was not unreasonable to respond to them.

C.      This Fee Petition

Defendants object that the 35.7 hours the three attorneys on this case spent preparing the *prima facie* fee petition is "extraordinary," and they further contend that Plaintiffs should not be compensated for the time spent pursuing their objections to Defendants' discovery demands or preparing (what Defendants call) "paltry responses." Opp. Br. pp. 26-27. Defendants do not contend that Plaintiffs are not entitled to their fees for pursuing this fee petition – nor could they, as it is well established that "prevailing plaintiffs under the Act are properly entitled to fee awards for time spent litigating their claim to fees." *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); *see also Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001); *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 438 (7th Cir. 1989); Text Order of Jan. 7, 2014 ("The Court recognizes that this limited discovery will prolong the case and generate additional fees.").

It is not unreasonable for three attorneys to spend a total of 35.7 hours preparing a fee petition and its supporting documentation, and Defendants make no showing that it is anything other than reasonable to do so.  Moreover, the fees have increased significantly since Plaintiffs submitted their initial motion – due in large part to Defendants' insistence on asserting multiple objections.  As such, Plaintiffs will need to make a later submission to finalize this aspect of their claim.  *See, e.g.*, *Delgado v. Mak*, 2009 U.S. Dist. LEXIS 131241, *2 (N.D. Ill. Apr. 23, 2009) (after ruling on fee petition, court allowed plaintiff additional time submit a supplemental claim). Suffice it to say that a defendant that asserts "strenuous and far reaching" objections to a prevailing plaintiff's fee claim should anticipate causing the plaintiff to incur the expense of an appropriate response.  *See Greyhound Fin. Corp. v. TSM Fin. Group, Inc.*, no. 92 C 3750, 1995 U.S. Dist. LEXIS 13807, *21 (N.D. Ill. Sept. 21, 1995); *see also Delgado*, 2009 U.S. Dist. LEXIS 131241 at *3.

D.      Researching Potential Claims

Defendants make specific objections to some time entries associated with interviewing potential plaintiffs who did not participate in the case and with researching claims that were not ultimately asserted, but Defendants cite no authority to support their claims. Time spent reasonably researching and investigating potential claims that are not ultimately asserted is recoverable.  *See Kurowski v. Krajewski*, 848 F.2d 767, 776-77 (7th Cir. 1988); *see also Jaffee v. Redmond*, 142 F.3d 409, 415 (7th Cir. 1998).

E.      Travel Costs

Defendants object that certain travel costs are unreasonable.  *See* Opp. Br. p. 26.  The governing standard is that a fee award properly includes out-of-pocket travel expenses that were incurred "reasonably."  *See Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984).  Attorneys

are also entitled to compensation for their time spent traveling.  *See In re Maurice*, 69 F.3d 830, 834 (7th Cir. 1995); *Henry*, 738 F.2d at 194.

    David Jensen's Mileage.  Defendants object to David Jensen's use of a $0.55 per mile mileage rate in August 2011 and assert that the "State mileage rate" was $0.51 per mile on that date.  *See* Opp. Br. p. 26.  However, contrary to Defendants' understanding, IRS set the mileage rate at $0.55 per mile effective July 1, 2011.  *See* IRS Announcement 2011-40, *available at* http://www.irs.gov/pub/irs-drop/a-11-40.pdf (last visited Jun. 2, 2014).  Moreover, the "State mileage rate" is the same as the IRS rate.  *See* 30 ILCS 105/12-2(b).  Defendants' objection to the number of miles claimed relates to the fact that this trip began from Mr. Jensen's home, not his office.  *See* Supp. Jensen Dec. ¶ 5.  Defendants' claim that it would have been more economical for Mr. Jensen to travel by air ignores that because he drove, he did not charge for his travel time, and the combined cost of airfare and travel time would have been significantly greater.  *See id.* ¶ 6.

    Alan Gura's Hotel, Food, and Cab Expense.  Defendants assert that the Court should reduce the rate for Mr. Gura's hotel to the rate provided to employees of the State employees, which is reportedly "capped" at $130 per night in the Chicago area.  *See* Opp. Br. p. 26.  However, Mr. Gura's supplemental declaration shows that the amount he incurred for a hotel was reasonable, and that  $130 per night is not a realistic rate for downtown Chicago—at least, not for the general public (as opposed to state employees).  *See* Supp. Gura Dec. ¶¶ 37-40.  Defendants cite no authority to support their claim that rates provided for State employees should cap private litigants.  Similarly, Defendants cite no authority that would support their claim that "*per diem*" limits for State employees establish the reasonable bounds of food expense, nor do they cite any authority to support their claim that tips provided to cabs and food servers are not

recoverable. Supp. Gura Dec. ¶¶ 24-32, 41.  IRS regulations provide that deductible business

expenses include tips.  *See* IRS Pub. 463, *Travel, Entertainment, Gift, and Car Expenses* p. 5

(Jan. 14, 2014), *available at* http://www.irs.gov/pub/irs-pdf/p463.pdf (last visited Jun. 2, 2014).

      F.      Tasks that are Allegedly Secretarial

      Defendants object that certain time entries reflect activities that are clerical.  *See* Opp. Br.

p. 25.  Plaintiffs respond to Defendants' specific objections individually, but note here that a task

is not "clerical" when it "involve[s] some exercise of judgment" on the part of a lawyer.  *See*

*Phoenix Bond & Indem. Co. v. Bridge*, 2012 U.S. Dist. LEXIS 173721, *30 (N.D. Ill. Dec. 7,

2012).  It is often the case that lawyers will need to perform some arguably "clerical" tasks in

order to keep an extensive file organized.  *See id.* at *30-31.  Moreover, filing documents via the

ECF system normally requires the attention of an attorney.  *See Young v. Accounts Recovery*

*Bureau, Inc.*, 2012 U.S. Dist. LEXIS 122904, *12-13 (S.D. Ind. Aug. 8, 2012); *Williams v. Z.D.*

*Masonry Corp.*, 2009 U.S. Dist. LEXIS 11554, *15 (N.D. Ill. Feb. 17, 2009).

      G.      Monitoring Developments in *Shepard*

      Defendants contend that time spent monitoring the related *Shepard* case  "did not

contribute to this case" and instead served only to satisfy the curiosity of counsel.  *See* Opp. Br.

p. 22.  However, counsel's supplemental declarations explain that it was reasonable to monitor

developments in this case because (among other things) it helped keep Plaintiffs abreast of

arguments that could be used in the present matter , defenses that the State was likely to assert,

and evidence that could potentially be used in the present case.  *See* Supp. Jensen Dec. ¶ 6.

Defendants cite no authority that would indicate it categorically unreasonable to monitor

developments in a related case.  Instead, it would arguably have been professionally negligent to

ignore them.

H.      Monitoring Legislative Developments

Defendants object that certain time entries should not be allowed because they relate to "legislative matters."  *See* Opp. Br. p. 23.  But the supplemental declarations submitted herewith explain that it was both reasonable and necessary to monitor legislative developments in order to determine both whether it was appropriate to bring this case, and whether the legislature had taken action that did indeed resolve Plaintiffs' claims in a manner that made an injunction unwarranted.  *See* Supp. Jensen Dec. ¶ 7.  Again, Defendants cite no authority to support their claim that it is unreasonable for counsel to monitoring related legislative developments.  Like monitoring the *Shepard* case, counsel ignored relevant legislative happenings at their peril.

I.      Work on Press Releases

Part of counsel's job is to advise clients on how to present their case to the public, so as not to hurt their case in court.  It is not reasonable, in a case like this, to adopt a strict "no comment" position to every inquiry.  Counsel are not billing for every media interview or speaking event surrounding the issues in this case, only for advice in crafting the clients' prepared position.

**CONCLUSION**

Wherefore, Plaintiffs respectfully request that their motion be granted.

Dated: June 3, 2014

By:  s/ David D. Jensen
     David D. Jensen
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2014, I electronically filed the foregoing Plaintiffs' Reply in Support of their Petition for Attorney's Fees with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to the following individuals:

Terence Corrigan [tcorrigan@atg.state.il.us]
Karen L. McNaught [kmcnaught@atg.state.il.us]
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62706

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated:  May 20, 2014

 s/ David D. Jensen
David D. Jensen