UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE; et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Case No. 3:11-cv-3134 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SUPPLEMENTAL DECLARATION OF DAVID D. JENSEN, ESQ.

I, David D. Jensen, declare as follows:

1. This Declaration responds to certain contentions that Defendants have made in opposition to Plaintiffs' motion for attorney's fees and supplements my previous declaration of December 17, 2013 (Doc. No. 63).

2. My responses to Defendants interrogatories are Exhibit 1 to this Declaration, and my responses to the requests for production of documents that Defendants sent are Exhibit 2.

3. Defendants have objected to the practice of "grouping" or "blocking" different activities into the same billing entry. In my current practice, and also when working for the law firms Healy & Baillie, Blank Rome, Duane Morris, and DeOrchis & Partners I have regularly prepared statements for legal services by grouping different tasks that I have performed over the course of a day into a single, consolidated time entry. Clients have generally paid bills prepared in this manner without objection. The only exception is that on some occasions in the past, I have billed activities separately when working for insurance company clients that required this practice. Separate billing entries generally result in the bill being higher. (For example, if during the course of a day I spend 9 minutes performing 3 discrete tasks, then consolidated billing entries will result in a bill for 0.2 hour, while three separate entries will often result in a

bill containing 3 entries of 0.1 hour each, for a total of 0.3 hour.) As a result, I would not separately enter different activities performed over the course of a day unless a client specifically requested it.

4. Defendants object to my claim for mileage from New York to Springfield for the argument before this Court and contend that an airplane ticket would have been more economical. However, it is significant that in light of the fact that I traveled by automobile, I did not charge any amount for my travel time. Had I traveled by airplane, I would have billed for my time at 50% of my rate. An airline ticket plus travel time would have been significantly more than the $1,056.72 in mileage expense.

5. Defendants also object to the number of miles (1,904) and to the mileage rate of $0.55 per mile. It appears that my mileage figure is slightly higher than Defendants because I measured from my home in Beacon, New York, rather than my office in New York City. I used the mileage rate of $0.55 per mile because I determined it was the IRS rate in force at the time.

6. I felt it was necessary to monitor the *Shepard v. Madigan* matter pending in the Southern District of Illinois because that case was substantially similar with this case and developments in *Shepard* had a substantial potential to impact this case. Reviewing selected filings in *Shepard* provided the opportunity to learn about additional defenses that Defendants might assert, and also about alternative arguments or authority that we might also be able to rely on in the present case.

7. At certain times it was also necessary to monitor legislative developments. In particular, I needed to monitor legislative developments during the first half of 2011 because the legislature was close to passing a bill that would have licensed the carry of firearms. This directly impacted decisions to move forward with this case. I also needed to monitor legislative

developments at the time the legislature enacted the Firearms Concealed Carry Act in order to determine whether that legislation complied with the Seventh Circuit's ruling.

8. I do not know the basis for Defendants' statement that I was "terminated as counsel" from February 8, 2012 to May 10, 2012. I was never terminated as counsel, and during this period I was involved in preparing the appellate brief and appendix.

9. Regarding Defendants' statement that the present matter is not an example of complex litigation, I characterize litigation as "complex" when it requires a degree of specialized knowledge and predictive judgment that "normal" cases do not. This case was "complex" because it concerned a developing area of the law in which analogous cases are few and required counsel to both synthesize legal principles and to predict the outcome of other cases.

10. Defendants' objection that time entries should have been kept contemporaneously does not apply to me because I kept my time records contemporaneously.

11. Finally, Defendants have attached a chart to their Opposition that objects to a number of my time entries. While both Plaintiffs' Reply and this Declaration address many of these objections, some require a further response:

   i. March 13-17, May 8, 2011, time spent researching equal protection, state law, and other claims: This research was reasonably undertaken to investigate potential claims that would have sought the same relief that was ultimately obtained.

   ii. March 16-17, 2011, letter detailing potential claims: It is reasonable and customary to review and revise several drafts of a lengthy letter before finalizing it.

   iii. May 6, 2011, review of news reports and legislative materials: It was necessary these materials in order to determine that a prior version of the Concealed Carry Act was not likely to be enacted such that it was likely that the issue raised in this lawsuit would remain "live" for a sufficiently long period of time that judicial rulings could be obtained.

   iv. May 9-10, 2011, telephone conferences: These telephone conferences were necessary to discuss the contents of the final drafts of the complaint and the

|       | |
|-------|-|
| | involvement or potential involvement of various individuals and organizations as parties in the case. |
| v.    | May 12, 16-19, 2011, interviewing potential plaintiffs: It is both customary and reasonable to interview individuals who propose to become plaintiffs in Second Amendment cases. |
| vi.   | May 19, 2011, admission fee: It is customary for clients to pay the cost of becoming admitted to a new court in which an attorney does not regularly practice. The client in this case reimbursed this expense. |
| vii.  | May 24-25, 27, 31, June 1, 5-6, 28, 30, July 1-8 2011, researching and drafting preliminary injunction motion and supporting papers: These activities were reasonably undertaken so that a motion would be ready when the Seventh Circuit handed down its decision in *Ezell v. City of Chicago*. It was reasonable and necessary to review the briefs and oral argument from *Ezell* because a central issue in that case was injunctive relief for Second Amendment violations. |
| viii. | June 8, 2011, review and discussion of recusal order: It was neither duplicative no unreasonable for the attorneys to have a short discussion of the ramifications of the order received that day. |
| ix.   | June 21-22, 2011, conferences with counsel: The time entries are not duplicative because the conference call was to involve all attorneys involved in the case. |
| x.    | July 7-8, 2011, sending documents by U.S. mail and contacting the Attorney General's office by telephone: It was not possible to send documents by email because we did not have email addresses for the attorneys in the Attorney General's office and they had not appeared in the case. |
| xi.   | August 4, 2011, 4.5 hours billed for oral argument: This is in no way unreasonable as counsel needed to prepare for the argument, deliver it, speak with clients and other individuals who had come to the hearing, and report the results to other clients. Defendants provide no basis for their claim that only 2 hours would be reasonable to undertake these activities. |
| xii.  | August 8, 2011, preparing status update for individual plaintiffs and reviewing an ECF notice from the court: It was imminently reasonable to spend 0.3 hour on these activities, and contrary to Defendants' claim, the minute entry for the motion hearing was transmitted on this date. |
| xiii. | August 13-15, 2011, responding to Defendants' motion to dismiss: This time was not excessive as it took a considerable about of research to respond to the various objections that Defendants' waived. Moreover, most of these time include work on other aspects of the case, rather than just the brief opposing Defendants' motion. |

xiv. August 20-22, 2011, time spent addressing how to address the state law "clarification" that Defendants had promised to file, but did not: This time was reasonably spent. It appeared that Defendants' failure to file the clarification document they had promised could delay the issuance of a decision. Defendants offer no explanation for why this was "Unnecessary."

xv. November 8, 2011, researching transcript procedures and contacting reporter for copy of same: Researching Local Rules and Standing Orders is a task that calls for the judgment of an attorney, and very little time was spent making the actual request.

xvi. February 3, 2011, preparing notice of appeal: It is not a "secretarial" task to prepare a notice of appeal because it is imperative that a notice of appeal correctly identify both the orders appealed from and the bases for appellate jurisdiction. It would be unreasonable to delegate this task to a secretary or assistant.

xvii. February 27-29, March 2-3, 2012, 11 hours spent reviewing draft briefs: This time was reasonably spent and covered the review of multiple drafts. This review included closely checking all citations to ensure their accuracy and conformity with Blue Book requirements.

xviii. March 22, April 9, 13, 20, 26, May 14, 2012, alleged discrepancies with entries of other attorneys: I accurately recorded the time I spent on these activities. It is possible that other attorneys spent less time discussing issues by email or sent or responded to referenced emails on different days.

xix. November 30, December 2, 2012, preparing notice of supplemental authority: This notice of authority did not pertain to a state-law theory, but instead concerned the Second Circuit's related decision in *Kachalsky v. Westchester*.

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746.

Dated: June 3, 2014

       /s/ David D. Jensen  
       David D. Jensen

-6-

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On June 3, 2014, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2. Pursuant to Fed. R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

Dated: June 3, 2014

                                                 /s/ David D. Jensen
                                                 David D. Jensen