## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 11-03134 |
| | ) | |
| LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Plaintiffs' Motion for Attorney's Fees (d/e 58), Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 (d/e 84), and Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 (Corrected) (d/e 86). Also before the Court is Defendants' Motion to Dismiss Renewed (d/e 72). Plaintiffs' Motion for Attorney's Fees (d/e 58) is GRANTED IN PART and DENIED IN PART. For the

reasons detailed in this opinion, Plaintiffs' Attorneys are entitled to attorney's fees totaling $153,871.00. Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29. Plaintiffs' Motions for Sanctions (d/e 84; d/e 86) are DENIED. Defendants' Motion to Dismiss Renewed (d/e 72) is GRANTED.

## I.  FACTUAL BACKGROUND.

In May 2011, individual Plaintiffs Michael Moore, Charles Hooks, Peggy Fechter, and Jon Maier, along with organizational Plaintiffs the Second Amendment Foundation ("SAF") and Illinois Carry filed suit under 42 U.S.C. § 1983 against Defendants Illinois Attorney General Lisa Madigan and Director of the Illinois State Police Hiram Grau for violations of Plaintiffs' rights under the Second Amendment. Plaintiffs alleged that certain Illinois gun laws, the Unlawful Use of Weapons statute, 720 ILCS 5/24-1 [hereinafter "UUW" statute], and the Aggravated Unlawful Use of a Weapon statute, 720 ILCS 5/24-1.6 [hereinafter "AUUW" statute], violated Plaintiffs' right to keep and bear arms because they restricted possession of guns outside the home under certain circumstances. Plaintiffs sought a declaratory judgment that the gun laws were

unconstitutional as well as preliminary and permanent injunctions against the laws' enforcement.

This Court denied Plaintiffs' injunctions and granted Defendants' Motion to Dismiss. Moore v. Madigan, 842 F. Supp. 2d 1092 (C.D. Ill. 2012), rev'd 702 F.3d 933 (7th Cir. 2012).  On appeal, this case was consolidated with Shepard v. Madigan.  See 863 F. Supp. 2d 774 (S.D. Ill. 2012).  The Seventh Circuit Court of Appeals reversed and remanded both cases for entry of a declaration of unconstitutionality and a permanent injunction, but stayed its mandate for 180 days to permit the Illinois General Assembly to "craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment." Moore, 702 F.3d at 942.  After Defendants' Petition for Rehearing En Banc was denied and the stay was extended an additional 30 days to accommodate the General Assembly's legislative process, the Firearm Concealed Carry Act, 430 ILCS 66/1 et seq., was passed over gubernatorial veto on July 9, 2013.  See Shepard v. Madigan, 734 F.3d 748, 749 (7th Cir. 2013).  The same day, Defendants filed a Motion to Dismiss on the grounds that Plaintiffs' claims were moot.  (D/e 51.)  This Court denied

Defendants' Motion, (d/e 57), and Plaintiffs filed the present Motion for Attorney's Fees claiming $219,808.00 in fees and $3,193.29 in costs.  (D/e 58.)

Subsequently, this Court permitted limited discovery including interrogatories and depositions of Plaintiffs' Attorneys in light of the substantial sum Plaintiffs sought in fees and costs in this case, which did not proceed beyond the preliminary injunction stage in this Court.  (See Text Order of Jan. 2, 2014; Text Order of Jan. 7, 2014.)  On May 5, 2014, Defendants filed their response to Plaintiffs' Motion for Attorney's Fees, (d/e 70), and the renewed Motion to Dismiss as Moot now before the Court.  (D/e 72.)  Finally, Plaintiffs filed their Motions for Sanctions, (d/e 84; d/e 86), in July 2014.

## II.  DEFENDANTS' RENEWED MOTION TO DISMISS AS MOOT IS GRANTED.

Now that the Illinois General Assembly has passed the Firearm Concealed Carry Act and the Illinois State Police have begun accepting, processing, and granting concealed-carry licenses, Defendants assert that no live controversy persists in this case.

Accordingly, Defendants move again to dismiss this case as moot.
(D/e 72.)

The case at bar no longer presents a case or controversy and
must be dismissed as moot.  The case-or-controversy requirement
applies through all stages of federal proceedings, trial and appellate.
Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  "When a
challenged statute is repealed or significantly amended pending
review, and a plaintiff seeks only prospective relief, a question of
mootness arises."  Rembert v. Sheahan, 62 F.3d 937, 940 (7th Cir.
1995) (citing Associated Gen. Contractors v. Jacksonville, 508 U.S.
656 (1993)).  The general rule is that "repeal, expiration, or
significant amendments to challenged legislation ends the ongoing
controversy and renders moot a plaintiff's request for injunctive
relief."  Fed'n Adver. Indus. Representatives, Inc. v. City of Chicago,
326 F.3d 924, 929 (7th Cir. 2003) (citing Lewis, 494 U.S. 472).  To
determine whether the Firearm Concealed Carry Act's amendments
to the statutory provisions at issue have rendered the instant case
moot, this Court must look at the plain language of the Firearm
Concealed Carry Act along with "the environment, association and
character of the statute in its field of operation, the history of

previous legislation, the legislative history of the act, the nature of the defect sought to be remedied by its enactment, . . . and the time of taking effect."  1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction:  Interpretation of Repealing Statutes § 23.6 (7th ed. 2009).

As more fully detailed in this Court's denial of Defendants' first Motion to Dismiss as Moot, the General Assembly did not repeal the UUW and AUUW statutes.  See Moore v. Madigan, No. 11-cv-3134, 2013 WL 5587289, at *2 (Oct. 10, 2013).  Rather, as of July 9, 2013, the General Assembly significantly amended the statute providing exemptions to criminal liability under the UUW statute, see 720 ILCS 5/24-2, and the AUUW statute itself, 720 ILCS 5/24-1.6, to provide a defense to prosecution for these offenses where the defendant has been issued a currently valid license under the Firearm Concealed Carry Act.

From the outset of this case, Plaintiffs sought an end to the ban on private citizens carrying any firearms outside the home—and they expressly reserved support for any new law in Illinois to regulate the carrying of firearms in public, including a constitutional licensing program.  (See Am. Compl., d/e 5, p. 2,

¶ 4.)  They prevailed at the Court of Appeals, whose mandate required the entry of declarations of unconstitutionality and permanent injunctions against the UUW and AUUW statutes as they existed prior to their amendment.  702 F.3d at 942.  But the Court of Appeals stayed its mandate, first for 180 days and then for an additional 30 days at Defendants' request to accommodate the General Assembly.  Subsequently, the General Assembly in the Firearm Concealed Carry Act materially altered the text of the AUUW statute and the "the environment, association and character of the statute in [the] field of operation" of both the UUW statute and the AUUW statute, making the issuance of a currently valid license under the Firearm Concealed Carry Act a defense to prosecution for violating these statutes.  See Singer & Singer, supra, at § 23.6.

All this was just as true at the time this Court denied Defendants' initial Motion to Dismiss as Moot on October 9, 2013, as it is now.  Last October, however, this Court held that this case still presented a live controversy, and was not moot, for two reasons.  First, Plaintiffs had initially sought the end to the ban on carrying any firearms in public, while the Firearm Concealed Carry

Act authorized the licensed carrying of a "pistol, revolver, or handgun."  See Moore v. Madigan, No. 11-cv-3134, 2013 WL 5587289, at *6–*9 (C.D. Ill. Oct. 10, 2013).  Accordingly, this Court reasoned that issues raised in Plaintiffs' Amended Complaint remained live.  Second, this Court noted that, as of October 9, 2013—just 92 days after passage of the Firearm Concealed Carry Act[1]—no one in Illinois had yet been issued a license under the Act, and, therefore, no relief had yet been provided.  Id. at *9.

Since October 9, 2013, two significant events have changed the "environment, association, and character" of the challenged statutes in their field of firearm regulation, rendering the present case moot.  See Singer & Singer, supra, at § 23.6.  First—as Defendants point out and Plaintiffs concede—the Illinois Department of State Police has begun processing applications for and issuing licenses under the Firearm Concealed Carry Act.  (See Defs.' Mem. Supp. Mot. Dismiss Renewed, d/e 73, p. 2; Pls.' Mem.

---

[1] The Act specifically provided the Illinois Department of State Police up to 180 days to establish application rules and to make license applications available.  430 ILCS 66/10(d).  The Act further provided up to an additional 90 days after receiving a completed application for the Department of State Police to issue or deny an applicant a license.  Id. 66/10(e).

Opp. Defs.' Renewed Mot. Dismiss, d/e 78, p. 7.)  Defendants

dispute the relevance of the Department of State Police's actions

because the issuance of licenses was the anticipated outcome of

passage of the new Firearm Concealed Carry Act and,

fundamentally, the anticipated outcome of Plaintiffs' lawsuit.  But

the issuance of actual licenses provides the relief sought, an end to

the flat ban on carrying any firearms outside the home, by

permitting the licensed carrying of concealed pistols, revolvers, and

handguns.  The Firearm Concealed Carry Act remedied the

unconstitutional defect of the UUW and AUUW statutes.  In light of

the relief now provided, the environment, association, and character

of criminal liability under the UUW and AUUW statutes have

changed.

Second, the Seventh Circuit Court of Appeals has affirmed the

dismissal of this suit's companion case out of the Southern District

of Illinois as moot.  See Shepard v. Madigan, 734 F.3d at 751–52.

In Shepard, plaintiffs pointed out on remand that the timeline the

Firearm Concealed Carry Act permitted to the Department of State

Police to make applications available to the public and thereafter to

issue licenses to qualified applicants totaled 270 days.  Id. at 750;

see 430 ILCS 66/10(d), (e).  Dissatisfied with this delay, the
Shepard plaintiffs asked the district court to order the State of
Illinois to allow any Illinois resident with a Firearm Owner ID (FOID)
to carry any gun outside the home pending the issuance of the first
licenses under the Firearm Concealed Carry Act, notwithstanding
the restrictions on concealed carrying the Act imposed consistent
with the Court of Appeals' mandate.  Id.; see also Moore, 702 F.3d
at 942 (staying the mandate to permit the Illinois Assembly time to
"craft a new gun law that will impose reasonable limitations,
consistent with the public safety and the Second Amendment").

The United States District Court for the Southern District of
Illinois rejected the plaintiffs' proposed remedy and dismissed the
case as moot, and the Court of Appeals affirmed on the grounds
that plaintiffs' proposed remedy was unreasonable.  Shepard, 734
F.3d at 750.  Moreover, the Court of Appeals noted, the Firearm
Concealed Carry Act was consistent with its mandate, which "did
not forbid the [S]tate to impose greater restrictions on carrying a
gun outside the home than existing Illinois law . . . imposes on
possessing a gun in the home."  Id. at 751.  Nor was the district
court's dismissal actionable for declining to direct declaratory or

injunctive relief against the operation of the UUW and AUUW statutes before the enactment and implementation of a new law to correct the statutes' constitutional defect.  Id.  Accordingly, if the plaintiffs wished to challenge the 270-day delay, or anything else about Illinois's regime of firearm regulation under the Firearm Concealed Carry Act, the plaintiffs would have to bring another lawsuit.  Id. at 752.  The Court of Appeals affirmed the district court's dismissal, which held that the plaintiffs' complaint addressed statutes which have since been significantly amended.  See Fed'n Adver. Indus. Representatives, Inc., 326 F.3d at 929.

In light of the Seventh Circuit's affirmance of the dismissal of Shepard as moot, the "environment, association, and character" of the UUW and AUUW statutes in their field of firearm regulation have changed:  As amended, these statutes are no longer the proper subject of a live controversy in this case.  Moreover, just like in Shepard, this Court cannot provide any additional relief in the case at bar because the UUW and AUUW statutes have been substantially amended, consistent with the mandate of the Court of Appeals.  See Shepard, 734 F.3d at 751.

To be sure, Plaintiffs, here, do not ask this Court for declaratory or other further relief, as in <u>Shepard</u>.  Instead, Plaintiffs simply oppose the motion to dismiss as moot on the grounds that they seek attorney's fees in this case.  Plaintiffs further assert that Defendants' Motion to Dismiss as Moot is intended to bolster Defendants' position opposing Plaintiffs' Motion for Attorney's Fees.  And, indeed, in opposing an award of attorney's fees, Defendants have attempted to characterize Plaintiffs as non-prevailing parties, unentitled to attorney's fees.  (More on this later.)  But Plaintiffs confuse Defendants' Motion to Dismiss as Moot for an attempt to strip this Court of all authority to wind up this case, including the authority to award attorney's fees.  Even Defendants concede this Court's authority to award fees after dismissal for mootness, notwithstanding Defendants' arguments on the issue of Plaintiffs' status as prevailing parties.  (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss Renewed, d/e 73, p. 4 ("[T]he request for attorney['s] fees presents an ancillary issue and seeks relief that can properly be granted after judgment."); <u>see also</u> <u>Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago</u>, 646 F.3d 992 (7th Cir. 2011) [hereinafter <u>NRA v. Chicago</u>] (holding that plaintiffs were prevailing parties entitled to attorney's fees

because of their victory at the Supreme Court, notwithstanding mootness upon repeal of unconstitutional gun-control ordinance at issue).)  Moreover, Plaintiffs' prayer for attorney's fees in their Amended Complaint does not save this case from its present mootness; as Defendants argue, an interest in attorney's fees is insufficient to create a case or controversy when none exists on the merits.  <u>Lewis</u>, 494 U.S. at 480; <u>Breneisen v. Motorola, Inc.</u>, 656 F.3d 701, 706 (7th Cir. 2011).

In summary, the Firearm Concealed Carry Act has substantially amended the UUW and AUUW statutes challenged in this case, ending the flat ban on carrying firearms outside the home in Illinois.  Because the Department of State Police has begun issuing licenses under the Act, relief has been granted on the merits of Plaintiffs' Amended Complaint.  Moreover, the defenses to criminal liability for UUW or AUUW provided under the Firearm Concealed Carry act have changed the environment, association, and character of gun regulation in the State of Illinois, consistent with the Court of Appeals mandate.  The gun laws' unconstitutional defect has been remedied.  Therefore, the controversy on the merits over Illinois gun laws has come to an end in this case.  Accordingly,

this Court must dismiss this case as moot. Yet, this Court retains jurisdiction to resolve the ancillary issues raised in Plaintiffs' Motion for Attorney's Fees and Motion for Sanctions, which this opinion now addresses in turn.

## III. PLAINTIFFS ARE PREVAILING PARTIES ENTITLED TO $153,871.00 IN ATTORNEY'S FEES.

At the true center of the parties' dispute concerning mootness is a dispute as to whether Plaintiffs are prevailing parties entitled to recover attorney's fees. But, just like Plaintiffs' concern that this case is not moot, Defendants' argument that Plaintiffs are not prevailing parties is incorrect.

### A. Plaintiffs are prevailing parties.

Defendants assert that Plaintiffs are not prevailing parties entitled to recover attorney's fees. Defendants argue that, given that this case is moot, Plaintiffs have received "no judicially ordered relief" in their challenges to the UUW and AUUW statutes. (Defs.' Fee Pet. Resp. & Objections, d/e 70, p. 2.) In support of this position, Defendants seem to imply—though they do not say so outright—that the judicially ordered relief Plaintiffs must obtain to qualify as prevailing parties is a declaratory judgment or an

injunction from this Court.  (See, e.g., id., p. 5 ("Thus, unlike the present case, the Young plaintiffs had obtained the relief they sought through an enforceable injunction."))  Defendants further contend that Plaintiffs' claim to be prevailing parties hinges on the "catalyst theory," which has been rejected by the Supreme Court. See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Servs., 532 U.S. 598 (2001).  Because the Illinois General Assembly's legislation changed the gun-control regulations, Defendants assert that Plaintiffs obtained no judicial relief. Plaintiffs contend that they are prevailing parties because the Illinois General Assembly passed the Firearm Concealed Carry Act only once the Seventh Circuit had struck down the gun laws that Plaintiffs challenged as unconstitutional.  (See Pls.' Reply Supp. Pet. Att'y's Fees, d/e 80, p. 3.)  Therefore, Plaintiffs assert, they are entitled to recover attorney's fees.

Plaintiffs seek to recover their attorney's fees under 42 U.S.C. § 1988(b), which provides that, in an action to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  A party prevails in litigation where it obtains a

favorable, judicially sanctioned change in the legal relationship between the parties.  See Buckhannon, 532 U.S. at 605; Zessar v. Keith, 536 F.3d 788, 795 (7th Cir. 2008).  As Defendants correctly note, Buckhannon rejected the "catalyst theory," which posited that a plaintiff is a prevailing party if it achieves its desired result because its lawsuit prompted defendants' voluntary change in conduct.  532 U.S. at 601.  But such a voluntary change is not enough; rather, the defendants' change in conduct must evince the necessary "judicial imprimatur" for the plaintiff to be said to prevail. Id.; Zessar, 536 F.3d at 796.

Entry of final judgment on the merits is the hallmark instance of such judicial imprimatur, though the Buckhannon Court also recognized settlement agreements enforced through consent decrees as another "example[]" of judicially sanctioned change.  532 U.S. at 795–96.  The Seventh Circuit has also held that a favorable decision on the merits at the Supreme Court carries the necessary judicial imprimatur for the prevailing party to collect attorney's fees, notwithstanding mootness on remand.  NRA v. Chicago, 646 F.3d at 994 ("If a favorable decision of the Supreme Court does not count as the necessary judicial imprimatur on the plaintiffs' position, what

would?" (citations omitted)).  A decision in favor of a plaintiff that is continued or stayed before entry of final judgment, pending a defendant's promised repeal of an overturned law, also carries the necessary judicial imprimatur to change the legal relationship between the parties.  Palmetto Props., Inc. v. Cnty. of DuPage, 375 F.3d 542 (7th Cir. 2004).

In NRA v. Chicago, after the Supreme Court held in District of Columbia v. Heller, 554 U.S. 570 (2008), that the Second Amendment barred the federal district's ban on operable handguns in the home, the NRA and others filed suit against the City of Chicago (and the Village of Oak Park, see Nat'l Rifle Ass'n v. Vill. of Oak Park, 871 F. Supp. 781 (N.D. Ill. 2012) [hereinafter NRA v. Oak Park]) seeking to overturn similar bans.  NRA v. Chicago, 646 F.3d at 993.  NRA was unsuccessful at the district court and court of appeals, but its case was granted certiorari and remanded after the Supreme Court held that the Second Amendment also applied to states and municipalities as a matter of due process.  Id. (citing McDonald v. Chicago, 561 U.S. 742 (2010)).  On remand, NRA sought attorney's fees under § 1988, but the district court at first denied the fee petition on the grounds that, if the City of Chicago's

repeal of its unconstitutional ordinance rendered NRA's claims moot, NRA was not a prevailing party.  Id.

The Seventh Circuit reversed the district court's denial of NRA's fee petition.  While the district court had correctly observed that NRA did not obtain a favorable judgment at the district court, the Seventh Circuit noted that NRA "did better:  They won in the Supreme Court, which entered a judgment in their favor.  When the Supreme Court rendered its decision, the controversy was live."  Id. The Supreme Court had entered judgment in NRA's favor that overturned the ordinances NRA had challenged, a decision that "alters the legal relationship of the parties."  Id. at 994.  Moreover, the Supreme Court's decision did not simply address the purportedly preliminary legal issue of the district court's denial of a preliminary injunction; rather, the "litigation was over except for the entry of an injunction by the district court."  Id.  Only once NRA had its Supreme Court judgment in hand did the City of Chicago give in, making entry of the injunction unnecessary as moot.  Id. Accordingly, NRA had the necessary judicial imprimatur to claim prevailing-party status and was entitled to attorney's fees.  Id. at 995.

In <u>Palmetto Properties</u>, an adult entertainment developer challenged the constitutionality of a DuPage County, Illinois, ordinance and an Illinois law that restricted the locations where adult entertainment venues could be constructed.  375 F.3d at 543–45.  The district court issued an order concluding that parts of these laws violated the First and Fourteenth Amendments.  <u>Id.</u> at 546.  But defendants informed the district court that they did not intend to appeal and requested a continuance, during which time defendants repealed the offensive parts of the laws.  <u>Id.</u>  The district court then dismissed the case as moot and awarded attorney's fees to the adult entertainment developer over defendants' objection.  <u>Id.</u> The Seventh Circuit Court of Appeals affirmed, noting that the district court had abstained from entering a final order formally closing the case only because defendants had promised to repeal the overturned laws.  <u>See id.</u> at 549–50.  This sequence of events still carried the mark of a judicially sanctioned change in the parties' legal relationship.

Except for the identity of the reviewing court, the case at bar is indistinguishable from <u>NRA v. Chicago</u>.  Here, Plaintiffs successfully appealed this Court's denial of their preliminary injunction and

grant of Defendants' Motion to Dismiss, obtaining a judgment in
their favor at the Seventh Circuit Court of Appeals.  <u>See</u> Final J. at
1, <u>Moore v. Madigan</u>, 702 F.3d 933 (7th Cir. 2012) (No. 12-1269),
d/e 46.  Only then did the Illinois General Assembly capitulate,
passing the Firearm Concealed Carry Law and rendering moot
Plaintiffs' claims.  To paraphrase <u>NRA v. Chicago</u>, if the favorable
decision of the Court of Appeals does not count as the necessary
judicial imprimatur on Plaintiffs' claim, what would?  <u>See</u> 646 F.3d
at 994.  Moreover, like in <u>Palmetto Properties</u>, the change in
Illinois's gun laws in the case at bar occurred before this Court
could enter final judgment only because Defendants requested and
received a stay of the Seventh Circuit's mandate precisely in order
to change the challenged laws, thereby mooting Plaintiffs' case.

Plaintiffs in the case at bar are not "catalyst theory" victors.
They did not win over the Illinois General Assembly without the
coercive force of a court's judgment.  They had the Seventh Circuit's
judgment.  <u>Compare</u> <u>Buckhannon</u>, 532 U.S. at 601 (challenged
state regulations amended voluntarily during pendency of litigation,
thereby mooting plaintiffs' claims without any judicial order).  Nor is
their relief anything other than judicially-ordered.  They did not

need a complex injunction to enforce the terms of their win; the Seventh Circuit declared Illinois's gun-control laws flatly unconstitutional.  Compare Zessar, 536 F.3d at 790 (district court opinion declared challenged absentee-voter statute violated plaintiffs' due process rights but no final judgment could issue without parties' input on terms of injunction, and Illinois General Assembly amended State's Election Code to moot plaintiffs' claim before entry of final judgment).  They did not win at the Seventh Circuit on a mere procedural or preliminary issue.  This Court's granting of Defendants' Motion to Dismiss was reversed.  Compare Sole v. Wyner, 551 U.S. 74 (2007) (grant of preliminary injunction in plaintiffs' favor does not make them prevailing parties when case is resolved against them on the merits); Hanrahan v. Hampton, 446 U.S. 754 (1980) (appellate holding that plaintiffs presented triable issue does not make plaintiffs prevailing parties because they may still lose on the merits at trial).  The sole obstacle to this Court's entry of final judgment in Plaintiffs' favor was the Seventh Circuit's stay of its mandate—given at Defendants' request.  Compare Palmetto Props., Inc., 375 F.3d 542.

The judgment of the Seventh Circuit in Plaintiffs' favor carried all the judicial imprimatur necessary to designate Plaintiffs prevailing parties. Accordingly, Plaintiffs are entitled to reasonable attorney's fees under 42 U.S.C. § 1988(b).

### B. Plaintiffs are entitled to $153,871.00 in attorney's fees.

Having determined that Plaintiffs are prevailing parties, the Court must resolve the issue of a reasonable sum. Prevailing parties in federal court are entitled to recover costs other than attorney's fees as a matter of course. Fed. R. Civ. P. 54(d)(1) ("[C]osts—other than attorney's fees—should be allowed to the prevailing party."). A prevailing party in an action under § 1983 may also recover reasonable attorney's fees as part of the costs. 42 U.S.C. § 1988(b).

To determine the value of a reasonable attorney's fee, courts use the "lodestar" method: A reasonable attorney's fee is reached by initially multiplying the hours the prevailing party's lawyers have reasonably expended on the case by a reasonable hourly rate. See, e.g., Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014). The resulting lodestar figure is presumptively reasonable, but courts may nevertheless adjust the fee based on factors not included in the

initial computation.  Id.; see also Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).  Such factors may also be subsumed within the initial calculation of hours reasonably expended.  Id. at 434 n.9; accord Montanez, 755 F.3d at 553 n.2.  One significant factor is the degree of success on the merits, especially where the prevailing party succeeded on only some of his claims for relief.  Id. at 553. The ultimate guiding inquiry is whether the prevailing party "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  Hensley, 461 U.S. at 434.

### 1. The Court reduces Plaintiffs' Attorneys' claimed hours to those hours reasonably expended in this case.

Plaintiffs' Attorneys Alan Gura, David Sigale, and David Jensen have submitted documentation to show that they worked 88.1 hours, 101.8 hours, and 236.6 hours in this case, respectively.[2]  Mr. Gura also submits documentation of 5.4 hours of

---

[2] Mr. Gura and Mr. Jensen have also filed affidavits in support of the fact that they each kept contemporaneous records of their hours expended in this case.  Mr. Sigale also submitted an affidavit, but he makes no representation as to contemporaneous timekeeping.  Defendants do not object to Mr. Sigale's hours on this basis, however, and the Court notes that the quality of detail in Mr.

compensable travel time at half his claimed hourly rate, and Mr. Sigale does the same for 17.3 hours of compensable travel; Mr. Jensen chose not to seek compensation for his travel time because he drove to the Central District of Illinois from his home in New York.  Defendants submitted objections to these figures, seeking to reduce Mr. Gura's compensable hours to 64.4; Mr. Sigale's hours to 73.0; and Mr. Jensen's hours to 41.0.

Hours that an attorney would not properly bill to his client in the private sector cannot be properly billed to the adverse party under a fee-shifting statute.  See Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 552 (7th Cir. 1999); accord Hensley, 461 U.S. at 434. Therefore, a prevailing party should exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary. Spegon, 175 F.3d at 552.  Additional time that ought to be excluded includes those hours an attorney expends on "tasks that are easily delegable to non-professional assistance," including tasks that are secretarial in nature.  See id.

---

Sigale's timesheets is the highest of any lawyer in this case, suggesting contemporaneous timekeeping.

### a. Plaintiffs' Attorneys have expended excessive hours in preparation of the fee petition.

Defendants' most meritorious objection to time billed is that Plaintiffs' Attorneys have expended excessive hours in preparation of the present fee petition.  Defendants assert that Plaintiffs' Attorneys' 35.7 hours preparing the fee petition is excessive, and the Court would be tempted to agree flatly if not for its own calculation of Plaintiffs' Attorneys' time actually spent on the fee petition at 50.0 hours.  Cf. NRA v. Oak Park, 871 F. Supp. at 790 n.5 (noting that calculating attorney's hours devoted to specific tasks is "work that is really for the lawyers to perform in the first instance, to provide grist for this Court's mill").  Mr. Gura alone claims 25.8 hours spent on the fee petition out of his total of 88.1 hours claimed, suggesting that nearly thirty percent of his contribution to his clients' success was the act of totting up the value of his contribution to his clients' success.  Defendants specifically challenge 7.8 hours of Mr. Gura's time expended on the fee petition as excessive, unnecessary at the time because no fee petition was yet due, or duplicative of the work of co-counsel.  Defendants further challenge 3.8 of the 12.5 hours claimed by Mr.

Sigale and 10.7 of the 11.7 hours claimed by Mr. Jensen on the same grounds.

Before evaluating these numbers alone, however, the Court must pause to note Defendants' reasoning in support of their objections to these hours. To the Court's confusion, Defendants object to certain time entries as duplicative and argue for their exclusion, yet they object to other time entries as duplicative and nevertheless accede to Plaintiffs' Attorneys' full time demanded. (See, e.g., Defs.' Fee Pet. Resp. & Objections, d/e 70, Ex. 1, p. 44 (several entries marked "Duplicative").) Additionally, Defendants give no reason for differences in the exclusions proposed for each of Plaintiffs' Attorneys, asserting that Mr. Gura's hours should be cut from 25.8 to 18.0 while Mr. Sigale's hours are cut from 12.5 to 8.7 and Mr. Jensen's hours from 11.7 to 1.0.[3] Moreover, Defendants attempt to characterize hours expended as unreasonable in light of Plaintiffs' Attorneys' limited responses in discovery ordered by this

---

[3] These are the reductions Defendants seek as far as the Court can tell, at any rate, given Defendants' confusing table of objections appended to their opposition to the fee petition and Defendants' failure to show their work or draw concrete conclusions outside of that table.

Court on January 2, 2014, even though all of Plaintiffs' Attorneys'
claimed hours (thus far) predate the filing of their fee petition on
December 16, 2013.  (Defs.' Fee Pet. Resp. & Objections, d/e 70, p.
27.)  Plaintiffs' Attorneys fare little better, in turn, when they
rationalize hours expended in preparation of the fee petition filed
December 16, 2014, by reference to the need to respond to
Defendants' later discovery requests and objections to their fee
petition.

Of course, by no means is 50.0 hours a reasonable amount of
time for Plaintiffs' Attorneys to expend in their initial request for
fees, nor is the 35.7 hours the parties dispute.  Plaintiffs' Attorneys
have no doubt known since the outset of this § 1983 suit that they
would seek fees under § 1988 if their clients prevailed.  (Plaintiffs'
Attorneys all but say as much in their responses to Defendants'
interrogatories, in which they detail their reduced-fee agreements
with Plaintiffs that provide for the apportionment of court-awarded
attorney's fees.  (See, e.g., Supplemental Declaration Alan Gura, d/e
81, Ex. 1, p. 2.))  Plaintiffs' Attorneys have averred that they
documented hours expended in this case contemporaneously,
eliminating the need for substantial time to prepare a fee petition.

And Plaintiffs' Attorneys had no objections to overcome or discovery
requests to address in December 2013 when they filed their fee
petition.  The vindication of constitutional rights can be done
economically, and the documentation of work done in litigation can
be done both economically and clearly.  See, e.g., Ustrak v.
Fairman, 851 F.2d 983, 987–88 (7th Cir. 1988) (reducing hours
spent on fee petition from approximately 140 hours by two-thirds
[to approximately 47 hours] in case requiring approximately 575
hours attorney work time); Kurowski v. Krajewski, 848 F.2d 767,
776 (7th Cir. 1988) (affirming prevailing party's 1.6-hour billing on
fee petition in case requiring approximately 140 hours attorney
work time).  At the same time, the Court will not seek to
substantiate Defendants' objections for them.  Cf. NRA v. Oak Park,
871 F. Supp. at 793 ("[I]t is not this Court's appropriate role to
delve into matters not teed up by the litigants for its
consideration.").

   The Court finds that the reasonable number of hours
Plaintiffs' Attorneys should have expended on the fee petition is
obtained by splitting the difference between the 35.7 hours the
parties contemplate and the reduced total Defendants would allow

after their objections, 13.4 hours, and then rounding the resulting difference to permit an equal award on fee petition hours among Plaintiffs' Attorneys.  In short, the midway point between 35.7 hours and 13.4 hours is 24.55 hours, which shall be rounded up to 24.6 hours and apportioned among Plaintiffs' Attorneys in 8.2-hour blocks.  The result is a reduction of 17.6 hours in Mr. Gura's time, a reduction of 4.3 hours in Mr. Sigale's time, and a reduction of 3.5 hours in Mr. Jensen's time.

*b. Mr. Gura's hours are reduced from 88.1 hours to 70.5 hours.*

Defendants challenge 23.7 hours billed by Mr. Gura, seeking to reduce his total reasonable hours expended from 88.1 hours to 64.4 hours.  Defendants challenge 7.8 hours of Mr. Gura's time spent on the fee petition as excessive, which the Court has already reduced from 25.8 hours to 8.2 hours and does not consider further.  Defendants also characterize approximately 6.3 hours as "duplicative" and therefore excludable, though Defendants continue their baffling practice of characterizing other time as "duplicative" while not actually objecting to it, as previously noted.

Multiple lawyers may reasonably work on a single case.  See NRA v. Oak Park, 871 F. Supp. at 789 ("Of course there is nothing

wrong with having multiple lawyers work on a single case."). Staffing multiple lawyers may permit a more efficient distribution of work, see Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 661 (7th Cir. 2007), but the practice also leads to the potential for waste. See, e.g., Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 858–59 (7th Cir. 2009).

Defendants have not explained what about Mr. Gura's work duplicated the efforts of co-counsel.  Rather, Defendants have generally objected to approximately half the time Mr. Gura spent in each of several telephone conferences with co-counsel, many of which lasted between 0.1 and 0.2 hours—that is, between 6 and 12 minutes—as well as other 0.1-to-0.2-hour entries in which Mr. Gura reviewed email correspondence from co-counsel.  This Court can imagine no justification for allowing time to one party to a phone call but not another, or for cutting each party's time in half simply because the other party was on the other end of the line. Moreover, Mr. Gura adequately documented the subject matter of these telephone and email correspondences, or else the subject matter is apparent from the surrounding entries.  (See, e.g., Mem. P. & A. Supp. Pls.' Mot. Att'y's Fees & Expenses [hereinafter Pls.'

Mot. Fees], d/e 59, Ex. 6, p. 2 (Entry of April 11, 2012: "Review Shepard brief, consolidation motion / Emails co-counsel re same").) And, more fundamentally, the Court finds that it is reasonable to staff three lawyers on a case addressing the constitutionality of Illinois gun laws for roughly 400 total hours.

The Court will not rehearse all of Defendants' further objections but will provide only a few further illustrative examples. Defendants label as "duplicative with [Mr.] Sigale" certain hours Mr. Gura spent drafting Plaintiffs' brief in opposition to en banc rehearing at the Court of Appeals, even though Defendants' petition for en banc rehearing occasioned the brief, and even though Mr. Gura expended approximately 15 hours on the brief while Mr. Sigale expended just 5.5 hours.[4]  The Court concludes that Mr. Gura must have been the lead author of this brief, and that his hours writing and Mr. Sigale's hours reviewing the brief were reasonable.  Defendants also object to 2.1 hours Mr. Gura expended prior to the appeal of this Court's original decision dismissing Plaintiffs' complaint.  (See Defs.' Fee Pet. Resp. &

---

[4] Mr. Jensen appears to have expended 1.3 hours on this brief, also reasonable.

Objections, d/e 70, Ex. 1, p. 21–22.)  The Court concludes that 2.1
hours of pre-appeal consultation on a case such as this one—all
but foreordained to be appealed, regardless of the result at the
district court—is likewise reasonable.

The Court has already reduced Mr. Gura's hours by 17.6
hours—from 25.8 hours to 8.2 hours—while addressing hours
reasonably expended to prepare the fee petition.  In response to
Defendants' other objections, the Court need not go further.  See
Fox v. Vice, --- U.S. ---, 131 S. Ct. 2205, 2216 (2011) ("[T]rial courts
need not, and indeed should not, become green-eyeshade
accountants.  The essential goal in shifting fees (to either party) is
to do rough justice, not to achieve auditing perfection.")
Accordingly, the Court finds that Mr. Gura reasonably expended
70.5 hours in this case.  The Court also finds that Mr. Gura
reasonably expended 5.4 hours in travel associated with this case,
to be billed at half Mr. Gura's awarded rate.

  c. *Mr. Sigale's hours are reduced from 101.8 hours to 95.9
      hours.*

Turning next to Mr. Sigale's hours:  Defendants challenge 28.8
hours billed by Mr. Sigale, seeking to reduce his total reasonable

hours expended from 101.8 hours to 73.0 hours. In adjusting the hours expended on the fee petition, the Court has already reduced Mr. Sigale's hours by 4.3 hours—from 12.5 hours to 8.2 hours. Defendants raise two principal objections to Mr. Sigale's hours, already discussed with reference to Mr. Gura. First, Defendants object to roughly half of Mr. Sigale's hours spent in telephone or email correspondence with Mr. Jensen. Though these correspondences were occasionally longer—sometimes as long as 0.7 hours (see Pls.' Mot. Fees, d/e 59, Ex. 7, p. 4 (Entry of Nov. 2, 2011))—nothing about the correspondences suggests that they were excessive or duplicative merely because more than one lawyer was involved. Rather, the precision with which Mr. Sigale documented his hours expended in this case—broken down first into hours per day and then hours per task—reveals the relevance and the economical duration of his correspondences as well as the contributions he made in representing Plaintiffs. Second, Defendants object to some of Mr. Sigale's hours as duplicative of other lawyers' work, but without further explanation. In the absence of any argument from Defendants, the Court rejects these objections because the staffing of more than one lawyer is not

presumptively unreasonable.  See NRA v. Oak Park, 871 F. Supp. at 789.

In total, Defendants' meritorious objections to Mr. Sigale's time expended total 1.6 hours—time spent in correspondence with the Clerk of Court in this district and the Clerk of Court for the Seventh Circuit Court of Appeals, and time spent on administrative tasks better suited for a non-professional or secretary, such as preparing and shipping hard copies of court filings.  Accordingly, the Court finds that Mr. Sigale reasonably expended 95.9 hours in this case.  The Court also finds that Mr. Sigale reasonably expended 17.3 hours in travel associated with this case, to be billed at half Mr. Sigale's awarded rate.

> *d. Mr. Jensen's hours are reduced from 236.6 hours to 182.6 hours.*

Turning finally to Mr. Jensen's hours:  Defendants challenge 195.6 hours billed by Mr. Jensen, seeking to reduce his total reasonable hours expended from 236.6 hours to 41.0 hours.  In adjusting the hours expended on the fee petition, the Court has already reduced Mr. Jensen's hours by 3.5 hours—from 11.7 hours to 8.2 hours.

If the reduction Defendants seek in Mr. Jensen's hours seem different in kind, not just in degree, from the challenges to Mr. Gura's and Mr. Sigale's hours, a brief discussion of Mr. Jensen's documentation practices may be illuminating.  In support of his portion of the fee demand, Mr. Jensen submitted time sheets that exemplify the disapproved practice of so-called "block" billing.  Each entry on Mr. Jensen's time sheets contains a line for the date, the total hours claimed for that date, and a serial listing of the work done on that date, all followed by a dollar figure representing the total hours multiplied by the claimed hourly rate.  For example, on May 24, 2011, Mr. Jensen claims 5.80 hours for the following tasks:

> Complete swearing-in for admission to Central District and prepare cover letter and registration form for clerk; telephone conference with Springfield Division clerk regarding judicial assignment and recusal procedures; research Central District decisions that concern or address recusal and reassignment of cases; complete written assessment to clients and review, revise and finalize same and send; telephone conference with M. Tempski regarding how to proceed; review of briefs and oral argument in Ezell for use in preliminary injunction motion; confer with D. Sigale by email regarding notice of recusal and status of service of process

(Pls.' Mot. Fees, d/e 59, Ex. 8, p. 6.)  A busy day, to be sure.  The entry does not differentiate the various tasks from one another in

any meaningful way, whether with respect to relevance of the task

to the core issues of the clients' claims or even the amount of time

spent on each task.  Such documentation practices drastically

increase the difficulty of the already trying task before the Court, to

determine what hours have been reasonably expended in this case.

Obviously, tasks such as preparing a registration form or calling the

Clerk's office are not compensable at a lawyer's rates.  These tasks

are secretarial and, therefore, not compensable.  Moreover, the

Seventh Circuit has made clear that such billing practices simply

will not do.  <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93, 94, 98 (7th Cir.

1986) (affirming trial court's reduction in attorney's fees, by

reducing hours claimed from 117.25 hours to 80 hours, because fee

applicant's time entries gave vague descriptions of legal work done

and total number of hours attributable to discrete tasks was

uncertain).

Such documentation practices are especially unforgivable in

the context of fee-shifting statutes.  As a sister district court within

our Circuit has observed,

> It is one thing to submit invoices of this kind to a client,
> who will ordinarily take at face value the assertions made
> and pay the amount requested, trusting that it is

> reasonable.  It is another thing, however, to submit
> copies of such invoices in support of a motion to compel
> payment by the adversary in litigation, who ordinarily
> would be expected to contest the reasonableness of the
> claim.

Bretford Mfg., Inc. v. Smith Sys. Mfg. Co., 421 F. Supp. 2d 1117,

1122 (N.D. Ill. 2006) (footnote omitted).  And, indeed, even a paying

client of one's own may reject one's block-billed invoices and

demand task-based billing instead if that client is a sufficiently

sophisticated consumer of legal services who is seeking to manage

costs.  See id. at 1122 n.1.  In light of these practices, this Court

has the discretion to apply across-the-board reductions where the

total number of hours attributable to compensable work is

uncertain.  See, e.g., Tomazzoli, 804 F.2d at 97–98.

Defendants have challenged some of Mr. Jensen's hours that

are obviously excludable on many of the same grounds as were

hours submitted by Mr. Gura and Mr. Sigale:  unnecessary,

administrative, or untimely.  Mr. Jensen appears to have submitted

hours that are obviously excludable on these grounds at roughly

the same rate as his co-counsel.  By this Court's reckoning,

approximately 1.7 hours of Mr. Jensen's time was secretarial or

administrative in nature.  Another 2.2 hours of Mr. Jensen's time

will also be excluded because it was time devoted to interviewing potential plaintiffs who never joined this case.  Subtracting these figures along with the Court's reduction in hours claimed to prepare the fee petition, Mr. Jensen's time is initially reduced to 229.2 hours.  Applying a 20% across-the-board reduction to this figure— in order to disentangle the hours that cannot be surgically removed from Mr. Jensen's block-billing—the Court finds that Mr. Jensen reasonably expended 183.4 hours on this case.  This figure is in line with the hours Mr. Jensen reports having expended for proceedings in this Court prior to appeal, during which time his time entries and those of his co-counsel indicate that he took the most prominent role in representing Plaintiffs.

## 2. Plaintiffs' Attorneys' reasonable hourly rates are determined with reference to the prevailing market rate in the relevant community of lawyers.

The second half of the lodestar calculation is the determination of reasonable hourly rates.  The best evidence of a lawyer's reasonable hourly rate, as borne out by the market, is the rate he actually charges clients for similar work.  Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012).  But where the court is unable to determine the lawyer's billing rate because he maintains

a contingent-fee or public-interest practice, then the court should look to the next best evidence, the rate charged by lawyers in the relevant community.  People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996); accord Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Reasonable hourly rates are determined by reference to the prevailing market rates in the relevant community of lawyers, regardless of whether plaintiff is represented by private or nonprofit counsel.  Blum, 465 U.S. at 895.

In the context of § 1988 and other fee-shifting statutes, of course, the term "prevailing market rates" is a misnomer:  Rather than determine a rate to be paid in victory or defeat (or perhaps contingently) by the prevailing lawyers' own clients after extensive discussion and negotiation, as would occur in a market, the Court must instead determine a reasonable hourly rate to be paid by the losing party, without the benefit of the bargaining.  In the Seventh Circuit, the determination of the reasonable hourly rate may be made by reference to a lawyer's opportunity cost in taking the case at hand instead of another, more remunerative case, but the rate is nevertheless capped at the prevailing market rate for lawyers

engaged in the type of litigation in which the fee is sought.  <u>Cooper v. Casey</u>, 97 F.3d 914, 920 (7th Cir. 1996).  The burden is on the fee applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation."  <u>Blum</u>, 465 U.S. at 895 n.11; <u>accord</u> <u>Pickett v. Sheridan Health Care Ctr.</u>, 664 F.3d 632, 640 (7th Cir. 2011).

In this case, Plaintiffs' Attorneys collectively rely on the <u>National Law Journal</u>'s billing rate survey from 2012, attached to their fee petition and indicative, Plaintiffs' Attorneys assert, of the billing rates in the relevant litigation community.  After filing the fee petition, Plaintiffs' Attorneys provided supplemental authority to show that the City of Chicago agreed to pay rates between $300 and $975 per hour to plaintiffs' lawyers in <u>Illinois Association of Firearms Retailers v. City of Chicago</u>, many of whom also represented plaintiffs in <u>Shepard v. Madigan</u>, the case from the Southern District of Illinois with which this case was consolidated on appeal.  (Notice Supplemental Authority, d/e 89, Ex. 2, p. 1 (Joint Statement at 1, No. 10-CV-4184 (N.D. Ill. June 25, 2014).)

Plaintiffs' Attorneys provided further supplemental authority to show a rate of $638.75 awarded under a fee-shifting statute to a prevailing lawyer of similar qualifications to Plaintiffs' Attorneys in a commercial defamation case in Washington, D.C., in June 2014. (See Notice Supplemental Authority, d/e 94.)  Finally, the Court notes that plaintiffs' lawyers in Shepard v. Madigan were awarded rates between $355 and $925, Mem. & Order at 12–15, No. 11-cv-0405 (S.D. Ill. Sept. 29, 2014), though plaintiffs appealed that fee award in a case currently pending before the Seventh Circuit.

Turning at last to the first set of Plaintiffs' Attorneys' individualized arguments, Plaintiffs' Attorney Mr. Gura claims a rate of $640 per hour.  In support of this rate, Mr. Gura submitted an affidavit to show that he set his "standard hourly rate" for the first time in 2012 at $600 per hour and rose to $640 per hour in 2014.  (Decl. Alan Gura, d/e 60, p. 3)  Mr. Gura averred that he was awarded $539 per hour in an agreed motion for fees in the U.S. District Court for the Northern District of Illinois in McDonald v. City of Chicago, and $435 per hour in the U.S. District Court for the District of the District of Columbia, using the "Laffey Matrix" methodology, in District of Columbia v. Heller.  (Id.)  Mr. Gura also

averred that seven lawyers in the National Rifle Association's companion case to <u>McDonald</u>, <u>NRA v. Chicago</u>, were awarded fees equal to or higher than his $640 hourly figure. (<u>Id.</u>, p. 4.) Mr. Gura provided an additional affidavit to show that he billed and collected at $640 per hour for consultation in a First Amendment matter in September 2014, though he does not say where the matter arose or how far it proceeded. (<u>See</u> Supplemental Decl. Alan Gura, d/e 93.)

Defendants assert that Plaintiffs' Attorneys have not carried their evidentiary burden to corroborate their claimed rates and that the claimed rates do not reflect the relevant community. In principal part, Defendants argue that Plaintiffs' Attorneys should have produced contracts with their paying clients under the purported aegis of this Court's grant to conduct limited discovery. (<u>See</u> Text Order of Jan. 2, 2014 (permitting Defendants to propound interrogatories and conduct depositions if necessary).) Defendants further point out that Mr. Gura answered Defendants' interrogatory that Mr. Gura had billed Plaintiff SAF $300 an hour in this case. Defendants also suggest that the relevant community of lawyers is limited to those lawyers practicing constitutional law in and around Springfield, Illinois. <u>But see</u> <u>Jeffboat, LLC v. Dir., Office of Workers'</u>

Comp. Programs, 553 F.3d 487, 490 (7th Cir. 2009) (interpreting

relevant community to mean "community of practitioners[,]

particularly when . . . the subject matter of the litigation is one

where the attorneys practicing it are highly specialized and the

market for legal services in that area is a national market").

     The Court is not altogether convinced that Plaintiffs' Attorneys

have carried their burden to produce satisfactory evidence that

their requested rates are in line with those prevailing in the relevant

community.  To be sure, Plaintiffs' Attorneys were not required to

produce contracts or other documentary evidence under this

Court's permission to conduct limited discovery.  Perhaps, however,

Plaintiffs' Attorneys would have been wise to produce such

documentary evidence of their own volition—albeit in redacted form

to conceal any matters covered by the attorney–client privilege—in

order to carry their burden by producing the best evidence of the

rate they actually charge clients for similar work.  Or perhaps

Plaintiffs' Attorneys could have submitted third-party affidavits

providing evidence as to what comparable lawyers charge for similar

services, as is the preference in the Seventh Circuit.  See, e.g.,

Pickett, 664 F.3d at 647.  Plaintiffs' Attorneys' affidavits, on their

own, are not sufficient.  See Blum, 465 U.S. at 895 n.11; Pickett,

664 F.3d at 640.  Nor are Plaintiffs' Attorneys' responses to

Defendants' interrogatories any more enlightening than the

affidavits for this Court to determine Plaintiffs' Attorneys' actual

hourly rate.

Still, the Court will not simply award Mr. Gura $300 per hour,

the discounted rate he has charged SAF, for fear of imposing a

disincentive on future litigation in vindication of constitutional

rights.  Lacking any other evidence of the rate Mr. Gura actually

charges clients for similar work, the Court must turn to the next

best evidence, the rate charged by lawyers in the relevant

community.  People Who Care, 90 F.3d at 1310.  This Court finds

the following evidence relevant to its determination:  In 2011, the

Heller court awarded $435 per hour and the McDonald court

awarded $539 per hour to Mr. Gura.  The Illinois Association of

Firearms Retailers court awarded lawyers of varying experience

$300 to $975 per hour in another Second Amendment case in

Illinois.  (Notice Supplemental Authority, d/e 89, Ex. 2, p. 1.)

Taking the total award in Illinois Association of Firearms Retailers

and dividing by the total lawyer hours reported, a weighted average

of the hourly rate in that case works out to roughly $520 per hour.
The Shepard court detailed awarding various hourly rates of $340,
$355, $375, $395, $425, $440, $450, $475, $507.50, and $925.
Additionally, the Court acknowledges that the tables Plaintiffs'
Attorneys have submitted from the National Law Journal survey are
illustrative of prevailing billing rates of lawyers around the nation.
These rates are ultimately of limited persuasive value, however,
because Plaintiffs' Attorneys have done little to show the similarity
of their work to the work of the attorneys who answered the survey.

Finally, the Court acknowledges the limited persuasive weight
of the billing rates established in affidavits Defendants have
submitted from Springfield-area lawyers litigating other
constitutional claims.  Local lawyers and affiants Stephen R.
Kauffman, who has defended multiple § 1983 claims against the
Illinois Department of Transportation for political-viewpoint
employment discrimination at a rate of $200 per hour, and Russell
L. Reed, who has defended two § 1983 claims against the Illinois
Department of Corrections for deliberate indifference to prisoners'
medical needs at the same hourly rate, would no doubt be
competent to handle cases like this one.  These local lawyers' skill

and experience in § 1983 litigation would be transferable in significant measure, as the primary focus of proceedings before this Court in this case was the appropriateness of a preliminary injunction—a common tactical step in § 1983 cases.  Cf. Cooper, 97 F.3d at 920–21 (discussing the significance of transferrable litigation skills to a district court's determination of a fee petitioner's reasonable hourly rate).

Moreover, the local lawyers' § 1983 experience is all the more transferable given the limited complexity of the claims in this case, which required the discussion of just two Supreme Court cases, two controlling Seventh Circuit precedents, and four cases of persuasive authority from the Southern District of California, the Delaware Superior Court, and two nineteenth-century state courts—between the complaint and the Plaintiffs' Motion for Preliminary and/or Permanent Injunction—to address all Second Amendment-specific issues.  (See d/e 5; d/e 14; see also Ezell v. City of Chi., 651 F.3d 684 (7th Cir. 2011); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010); Peruta v. Cnty. of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), rev'd, 742 F.3d 1144 (9th Cir. 2014); In re McIntyre, 552 A.2d 500 (Del. Super. Ct. 1988); Nunn v. State, 1 Ga. 243

(1846); <u>State v. Chandler</u>, 5 La. Ann. 489 (1850).)  Finally, to

supplement their knowledge of Second Amendment subject matter,

the local lawyers would have benefited from the same opportunity

that Plaintiffs' Attorneys had to compare their Second Amendment-

specific work to that of the lawyers in the Southern District of

Illinois's parallel case, <u>Shepard</u>.  (<u>See, e.g.</u>, Pls.' Mot. Fees, d/e 59,

Ex. 6, p. 1 (Entry of May 13, 2011, detailing Mr. Gura's review of

<u>Shepard</u> complaint); <u>id.</u>, Ex. 7, p. 3 (Entry of Aug. 17, 2011,

detailing Mr. Sigale's review of NRA's response opposing defendants'

motion to dismiss in <u>Shepard</u>); <u>id.</u>, Ex. 8, p. 10 (Entry of July 11,

2011, detailing Mr. Jensen's review of injunction papers filed in

<u>Shepard</u>).)  In the end, only the local lawyers' lack of experience

representing parties in Second Amendment-specific § 1983 cases

limits the persuasive weight of their $200 hourly rates.

Further, this Court does not consider relevant the following

submissions because they are insufficiently substantiated or

because they do not focus adequately on the relevant community of

lawyers or the kind of litigation in this case:  Mr. Gura's asserted

standard hourly rates of $600 and $640; the award of $638.75

awarded in the commercial defamation case in Washington, D.C.;

and Mr. Gura's supplemental affidavit concerning a First

Amendment matter billed and paid at $640.  The Court also does

not consider relevant the fees Mr. Gura avers were awarded to the

NRA's lawyers in <u>NRA v. Chicago</u> because he has not shown why his

experience or expertise merits an award at that the same level as

the NRA's lawyers when he was awarded only $539 in <u>McDonald</u>.

The Court is left with the following rates to consider as most

persuasive:  $435 (Mr. Gura's awarded rate in <u>Heller</u>), roughly $520

(the weighted average of rates awarded to lawyers in the similar

case <u>Illinois Association of Firearms Retailers</u>), and $539 (Mr.

Gura's agreed rate in <u>McDonald</u>).  These rates all fall reasonably

within the range of rates awarded to lawyers in <u>Illinois Association

of Firearms Retailers</u> and <u>Shepard</u>.  For this reason, the Court finds

that an average of these three rates is a reasonable hourly rate to

award to Mr. Gura.  The average is $497.39, which the Court

rounds to $500 to avoid the appearance of improbable precision.

<u>Cf.</u> <u>Ustrak</u>, 851 F.2d at 989.

Turning to the individualized arguments of Mr. Sigale and Mr.

Jensen, Defendants have offered no additional grounds to oppose

these Plaintiffs' Attorneys' requested rates.  Therefore, the Court will

lean on the foregoing analysis of the materials Plaintiffs' Attorneys collectively rely on, with specific reference only to the evidence Mr. Sigale and Mr. Jensen have provided individually.

Mr. Sigale claims a rate of $500 per hour. In support of this rate, Mr. Sigale submitted an affidavit to show that he charges $325 per hour to high-volume commercial litigation clients but estimates his time at $500 per hour when charging his customary flat rate to other clients. (Decl. David G. Sigale, d/e 62, p. 3). Mr. Sigale avers that in 2011, he was awarded $300 per hour in McDonald and $450 per hour in Pliego Gonzalez v. City of Omaha, No. 11-CV-335 (D. Neb.), another case regarding the Second Amendment. Mr. Sigale further avers and attaches court orders as exhibits to show that he was awarded $500 per hour in agreed orders for attorney's fees in three other Second Amendment cases, Winbigler v. Warren County Housing Authority, No. 12-CV-4032 (C.D. Ill.), in 2013, Nino de Rivera Lajous v. Sankey, No. 13-CV-3070 (D. Neb.), in 2013, and Jackson v. Eden, No. 12-CV-421 (D.N.M.), in 2014. Finally, Mr. Sigale averred that he was paid $500 per hour in the Second Amendment case Pot v. Witt, No. 13-CV-03102 (W.D. Ark.), because

the parties stipulated to his $10,000 fee in a matter in which he expended 20.0 hours.

Defendants counter that Mr. Sigale responded in interrogatories that he charged Plaintiff SAF $250 an hour in this case, and that Mr. Sigale has produced no evidence of a rate of $500 per hour charged to any paying client. Indeed, Mr. Sigale's only matters in which he was awarded $500 per hour are those in which defendants stipulated to this rate in an agreed order under a fee-shifting statute. The Court concludes that Mr. Sigale is entitled to a reasonable hourly rate of $420. This figure is well within the range of acceptable rates as considered in the more extensive analysis of market rates above. This figure also reflects the fact that Mr. Sigale was awarded a lower rate in <u>McDonald</u> and billed SAF at a lower rate as compared with Mr. Gura. Finally, this rate stands in roughly the same proportion to the $500 per hour this Court awards Mr. Gura as does Mr. Sigale's $250 hourly rate charged to SAF to Mr. Gura's rate of $300 per hour.

Mr. Jensen claims a rate of $450 per hour. In support of this rate, Mr. Sigale submitted an affidavit to show that he charges $350 per hour for less complex, general commercial matters and $450

per hour for complex litigation.  (Decl. David D. Jensen, d/e 61, p.

3).  Mr. Jensen also averred that he first represented Plaintiff SAF

while an associate at Duane Morris, LLP, where his standard hourly

rate was $325 but the firm used a flat-fee arrangement to

accommodate SAF's cost concerns.  (Id. at 3–4.)  Finally, Mr. Jensen

averred that his retention agreement with SAF memorializes an

understanding that the market rate of his services with SAF is $450

but that he offers SAF a discount, unlike other clients, because of

his desire to work on Second Amendment plaintiffs' cases.  (Id. at

5.)

Defendants counter that Mr. Jensen responded in

interrogatories that he charged Plaintiff SAF $250 an hour in this

case.  Defendants also argue that Mr. Jensen may charge $450 per

hour in complex litigation, but that the claims asserted in this case

raised a single question of law that, though novel as previously

noted, were not complex, in that the parties had little case law to

speak of.  The Court concludes that Mr. Jensen is entitled to a

reasonable hourly rate of $400.  This figure is well within the range

of acceptable rates as considered in the more extensive analysis of

market rates above.  This figure also reflects the fact that Mr.

Jensen has less experience in Second Amendment litigation than either Mr. Gura or Mr. Sigale, as shown by a review of each of Plaintiffs' Attorneys' affidavits in this case.

Applying an hourly rate of $500 to the 70.5 hours reasonably expended by Alan Gura (for a subtotal of $35,250.00); an hourly rate of $420 to the 95.9 hours reasonably expended by David Sigale (subtotal $40,278.00); and an hourly rate of $400 to the 183.4 hours reasonably expended by David Jensen (subtotal $73,360.00), the Court arrives at a figure of $148,888.00.  An additional $1,350.00, for 5.4 hours of necessary travel billed at $250 per hour, is awarded to Mr. Gura, and an additional $3,633.00, for 17.3 hours of necessary travel billed at $210 per hour, is awarded to Mr. Sigale.  The final lodestar total is $153,871.00.

### 3. The Court makes no adjustment to the lodestar figure because Plaintiffs' Attorneys achieved complete success.

Defendants' final argument to oppose the amount of Plaintiffs' Attorneys' claimed fees is a broad challenge to the degree to which Plaintiffs prevailed on the merits in this case.  Defendants assert that Plaintiffs did not prevail on various legal grounds including an Equal Protection argument and a Due Process argument, and that

Plaintiffs did not secure a Motion for Preliminary Injunction in this Court.  Confusingly, Defendants also assert that Plaintiffs did not prevail on Defendants' first Motion to Dismiss as Moot in this Court, which was denied following Plaintiffs' opposition.

The Court will not apply any reduction to the lodestar figure as calculated based on the degree to which Plaintiffs prevailed.  "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee."  Hensley, 416 U.S. at 435.  The Seventh Circuit has recognized this principle in holding that a court ought to "subtract time for losing claims, but a losing argument in support of a successful claim for relief is fully compensable time." Kurowski, 848 F.2d at 776 (emphasis added).  Defendants seek to exclude Plaintiffs' Attorneys' time on the Motion for Preliminary Injunction, for example, because this Court denied that motion, but in the end, Plaintiffs prevailed at the Court of Appeals.  Meanwhile, Defendants have made no attempt to distinguish among Plaintiffs' claims because the thrust of the complaint was a single claim, that the challenged Illinois gun laws violated the Second Amendment. On this point, Plaintiffs achieved a total victory that reached its acme in the Illinois General Assembly's passage of the Firearm

Concealed Carry Act.  Indeed, the extent of Plaintiffs' victory is the
very basis of this Court's ruling today—in Defendants' favor—that
Plaintiffs' claims are now moot.

Because Plaintiffs achieved a complete success in this suit, no
reduction in the lodestar figure is warranted.  Accordingly, the
Court awards the full $153,871.00 as calculated.

## IV.  REASONABLE COSTS OF $3,008.29 ARE ALLOWED TO PLAINTIFFS UNDER FEDERAL RULE OF CIVIL PROCEDURE 54 AND § 1988.

Federal Rule of Civil Procedure 54(d)(1) provides that costs—
other than attorney's fees—should be allowed to the prevailing
party.  Rule 54(d) "establishes a presumption in favor of a cost
award."  Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 427 (7th Cir.
2000).  A motion to recover costs under § 1988 encompasses all
reasonable out-of-pocket expenses the prevailing party has incurred
in order to effectuate the purpose underlying the statute's shifting
of fees, namely, to eliminate any cost disincentive to pursuing the
vindication of constitutional rights.  See Henry v. Webermeier, 738
F.2d 188, 192 (7th Cir. 1984).  Plaintiffs' Attorney Mr. Gura has
submitted documentation to show compensable expenses of
$928.79; Mr. Sigale, $933.48; and Mr. Jensen, $1,331.02.

Plaintiffs' Attorneys' claimed expenses total $3,193.29.  Defendants
object to certain of these expenses as excessive, insufficiently
documented, or otherwise noncompensable.

Defendants' objections miss the mark.  Defendants object to
photocopying costs claimed by Mr. Sigale of $176.48 incurred May
29, 2012, and $360.02 incurred January 25, 2013, asserting that
"[n]o documentation was provided to substantiate these charges."
(Defs.' Fee Pet. Resp. & Objections, d/e 70, p. 25.)  But the docket
in this case includes receipts substantiating each of these charges
for photocopying.  (See Pls.' Ex. re Mot. Atty.'s Fees, d/e 64, pp. 19–
21.)  Moreover, a cursory review of the appellate docket in this case
reveals that paper copies of Plaintiffs' Appellants' Brief and
Plaintiffs' Answer to the Petition for Rehearing En Banc were due on
May 31, 2012, and January 28, 2013, respectively, justifying
Plaintiffs' claimed photocopying costs.  See Appellants' Reply Br.,
Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012) (No. 12-1269), d/e
37; id. d/e 69; see also Fed. R. App. P. 31(b) (Serving and Filing
Briefs; Number of Copies).  Defendants similarly object to parking
costs that Plaintiffs' Attorneys incurred in connection with court
dates in Springfield and Chicago, which have been properly

documented with copies of receipts in the petition for fees and costs.

Defendants also object to paying hotel and meal rates above the rates approved for employees of the State of Illinois and to paying gratuities on Plaintiffs' Attorneys' travel expenses.  (See Defs.' Fee Pet. Resp. & Objections, d/e 70, p. 26.)  Plaintiffs' Attorneys do not enjoy the bargaining position the State of Illinois does to obtain discounted or tax-free hotel accommodations or meals that may become necessary in the course of litigation. Accordingly, the State of Illinois's rates are not an appropriate baseline against which to judge the reasonableness of Plaintiffs' Attorneys' expenses.  In addition, the gratuities Plaintiffs' Attorneys paid were not only reasonable but necessary in the modern service economy.  For these reasons, the Court finds Plaintiffs' Attorneys' claimed travel expenses reasonable and compensable.

Not all of Defendants' objections are baseless, however. Plaintiffs' Attorney David Jensen cannot reasonably hold Defendants accountable to pay the fee for his admission to practice in the Central District of Illinois, $185.00.  Subtracting this cost

from Plaintiffs' Attorneys' total claimed expenses of $3,193.29
results in an award of costs of $3,008.29.

## V. PLAINTIFFS' MOTIONS FOR SANCTIONS ARE DENIED.

Plaintiffs finally bring Motions for Sanctions against the State
of Illinois's attorneys under the Court's inherent supervisory powers
and under 28 U.S.C. § 1927.  Federal courts have the inherent
power to impose sanctions upon parties for abusive litigation.  See
Carr v. Tillery, 591 F.3d 909, 919 (7th Cir. 2010).  Appropriate
sanctions include an award of reasonable attorney's fees or other
monetary sanction, as well as injunctions to prevent future lawyer
misconduct.  Id.  But the inherent power to sanction is limited to
"cases in which a litigant has engaged in bad-faith conduct or
willful disobedience of a court's orders."  Chambers v. NASCO, Inc.,
501 U.S. 32, 41 (1991); see also Grochocinski v. Mayer Brown Rowe
& Maw, LLP, 719 F.3d 785, 799 (7th Cir. 2013).  The Seventh
Circuit Court of Appeals has recognized that no single litmus test is
used to determine what constitutes bad faith, but more than mere
negligence is required.  Id.

Section 1927 supplements federal courts' inherent authority,
providing for sanctions against attorneys who "multipl[y] the

proceedings . . . unreasonably and vexatiously."  Sanctions are appropriate under § 1927 when "counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders."  <u>Kotsilieris v. Chalmers,</u> 966 F.2d 1181, 1184–85 (7th Cir. 1992).

Plaintiffs contend that attorneys for the State of Illinois have acted in bad faith in their filings to oppose Plaintiffs' fee petition. Plaintiffs deem "frivolous" several of Defendants' arguments opposing the fee petition, which can be roughly categorized as follows:  opposition to Plaintiffs' prevailing-party status; opposition to some of Plaintiffs' Attorneys' hours as duplicative; the request in limited discovery that Plaintiffs' Attorneys produce documentary evidence; arguments about the proper hourly rate to award Plaintiffs' Attorneys; and objections to certain of Plaintiffs' Attorneys' necessary expenses.  (<u>See</u> Mem. P. & A. Supp. Pls.' Mot. Sanctions, d/e 87, pp. 3–5.)  Plaintiffs also accuse Defendants of misrepresenting Plaintiffs' Attorneys' responses to court-ordered interrogatories.  (<u>Id.</u>, p. 4.)  As a remedy, Plaintiffs seek an award of

additional fees and costs pursuant to their "forthcoming 'fees on fees' motion."  (See Pls.' Mot. Sanctions, d/e 86, p. 1.)

The Court finds that Defendants have not engaged in bad-faith conduct or willful disobedience of this Court's orders such that they are subject to sanctions under this Court's inherent supervisory powers.  Defendants have raised objections in good faith to Plaintiffs' Motion for Attorney's Fees in a proceeding under § 1988, one in which all parties could fully anticipate the losing party to contest the reasonableness of the winner's claimed fee.  See Bretford Mfg., Inc., 421 F. Supp. 2d at 1122.  The Court has fully addressed the mixed quality of both parties' arguments on the issue of fees.  Some of Defendants' objections missed the mark, while on others Defendants' aim was true.  Likewise, Plaintiffs' Attorneys' efforts to substantiate their hours and hourly rates were adequate in some respects and inadequate in others.  Along these same lines, Defendants did not willfully disobey any order of this Court in requesting documentary evidence during limited discovery.  Even though the interrogatories and depositions authorized did not compel Plaintiffs to divulge documentary evidence, neither did Plaintiffs carry their burden to prove up their claimed hourly rates.

Redacted documentary evidence of the sort Defendants requested would have easily met this burden.  Perhaps Defendants should not have asked for the documentary evidence, but equally, perhaps Defendants should not have had to ask.  Defendants did not, however, directly contravene any order of this Court in the asking.

Similarly, Defendants did not multiply proceedings in this court unreasonably or vexatiously such that they are subject to sanctions under § 1927.  Defendants' first Motion to Dismiss as Moot was denied by this Court, but today the Court grants Defendants' Motion to Dismiss Renewed.  Defendants' opposition to Plaintiffs' Petition for Attorney's Fees is neither unreasonable nor vexatious, but rather, as mentioned, entirely to be expected. Moreover, the Court finds that Defendants' arguments opposing Plaintiffs' prevailing-party status, though ultimately unpersuasive, were made using good-faith interpretations of controlling case law and good-faith attempts to distinguish the case at bar from those cases in which courts found prevailing-party status.  Accordingly, Defendants' arguments were not baseless, frivolous, or otherwise indifferent to controlling statutes or case law.

Nonetheless, the Court must address Defendants' omission of portions of Plaintiffs' Attorneys' answers to authorized interrogatories cited in opposition to an award of attorney's fees. The Court is troubled by this omission but ultimately credits Defendants' representation that it was inadvertent.  (See Mem. Law Supp. Defs.' Resp. Pls.' Mot. Sanctions, d/e 90, at 7.)  The Court instead believes that this mistake was the product of the persistent state of insufficient resources in Illinois's state agencies, especially in light of the consistent good-faith conduct of the Office of the Illinois Attorney General in proceedings before this Court.  See Johnson v. C.I.R., 289 F.3d 452, 456–57 (7th Cir. 2002) (noting that lower court would have been remiss not to consider lawyer's previous conduct before it, and that a good record may redound to the lawyer's benefit, when considering sanctions under § 1927). Accordingly, the Court ascribes no malice to Defendants' omissions, though they should not be repeated.

Plaintiffs' Attorneys may be entitled to fees on fees in their promised motion, but the Court hopes to see both parties substantiate their positions more soundly and more efficiently the next time round.  "A request for attorney's fees should not result in

a second major litigation." <u>Hensley</u>, 461 U.S. at 437.  The Court notes with approval the procedures for determining and assessing attorney's fees in the U.S. District Court for the Northern District of Illinois under Local Rule 54.3 and encourages the parties, in the strongest of terms, to attempt to reach an agreed motion following the wisdom of those procedures and implementing the findings of this opinion.

Because Defendants did not engage in bad-faith conduct, willfully disobey this Court's rules or orders, or advance baseless or frivolous arguments to multiply proceedings in this Court unreasonably and vexatiously, the Court denies Plaintiffs' Motions for Sanctions.

## VI.   CONCLUSION.

For the forgoing reasons, Plaintiffs' Motion for Attorney's Fees (d/e 58) is GRANTED IN PART and DENIED IN PART.  Plaintiffs' Attorneys are entitled to attorney's fees totaling $153,871.00. Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29. Plaintiffs' Motions for Sanctions (d/e 84; d/e 86) are DENIED. Defendants' Motion to Dismiss Renewed (d/e 72) is GRANTED. Under Federal Rule of Civil Procedure 54(d)(2)(B), any supplemental

fee petition in this case shall be filed no later than 14 days after the entry of judgment.  The Court will treat liberally any joint motion for extension of time to file a supplemental fee petition so that the parties may resolve the issue amicably.  This case is CLOSED.

IT IS SO ORDERED.

ENTER:  November 24, 2014

FOR THE COURT:                    s/ Sue E. Myerscough
                                          SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE